Jonathan M. James
jjames@perkinscoie.com
Christopher M. Schultz (*pro hac vice* pending)
cschultz@perkinscoie.com
David M. LaSpaluto, State Bar No. 211276
dlaspaluto@perkinscoie.com
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue
Post Office Box 400
Phoenix, Arizona 85001-0400
Telephone: (602) 351-8000
Facsimile: (602) 648-7000

Kenneth B. Wilson, State Bar. No. 130009
kwilson@perkinscoie.com
Stefani E. Shanberg, State Bar No. 206717
sshanberg@perkinscoie.com
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Attorneys for Proposed Intervenor
MICRON TECHNOLOGY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

INFINEON TECHNOLOGIES NORTH AMERICA CORPORATION,

Plaintiff,

v.

MOSAID TECHNOLOGIES INCORPORATED,

Defendant.

Case No. 5:02-cv-05772-JF (RS)

**MICRON'S MOTION TO INTERVENE OR, IN THE ALTERNATIVE, REQUEST FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*, AND OPPOSITION TO JOINT MOTION TO VACATE**

## TABLE OF CONTENTS

Introduction ........ 2

Statement of Facts ........ 3

A. Background of the Parties and the DRAM Industry ........ 3

B. MOSAID's Enforcement of Its Patents Against Samsung and Infineon ........ 4

C. MOSAID's Demonstrated Intent to Continue Enforcing the Patents-in-Suit ........ 7

Argument ........ 8

I. MICRON SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULES 24(A) OR 24(B), OR, IN THE ALTERNATIVE, TO PARTICIPATE IN AN *AMICUS CURIAE* CAPACITY ........ 8

A. Micron Should Be Permitted to Intervene as of Right Under Rule 24(a) ........ 8

B. In the Alternative, Micron Should Be Permitted to Participate as *Amicus Curiae* ........ 9

II. THE *VACATUR* MOTION SHOULD BE DENIED ........ 10

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Dey, L.P.*,
110 F. Supp. 2d 667 (N.D. Ill. 2000) .......... 10

*Allen-Bradley Co. v. Kollmorgen Corp.*,
199 F.R.D. 316, 320 (E.D. Wis. 2001) .......... 12

*Am. Games, Inc. v. Trade Prods., Inc.*,
142 F.3d 1164 (9th Cir. 1998) .......... 10, 11, 13

*Aqua Marine Supply v. Aim Mach., Inc.*,
247 F.3d 1216 (Fed. Cir. 2001) .......... 12, 13

*Chamberlain Group, Inc. v. Interlogix, Inc.*,
2004 WL 1197258 (N.D. Ill. May 28, 2004) .......... 12

*Clever Devices, Ltd. v. Digital Recorders, Inc.*,
2004 U.S. Dist. LEXIS 10494 (N.D. Tex. June 3, 2004) .......... 12

*Dilley v. Gunn*,
64 F.3d 1365 (9th Cir. 1995) .......... 11

*Haworth, Inc. v. Steelcase, Inc.*,
12 F.3d 1090 (Fed. Cir. 1993) .......... 8

*In re MOSAID Techs., Inc. Patent Litig.*,
283 F. Supp. 2d 1359 (J.P.M.L. 2003) .......... 5

*In re Roxford Foods Litig.*,
790 F. Supp. 987 (E.D. Cal. 1991) .......... 9

*Louisville Bedding Co. v. Pillowtex Corp.*,
2006 WL 2052062 (Fed. Cir. July 25, 2006) .......... 12

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*,
362 F. Supp. 2d 526 (D.N.J. 2005) .......... 4, 5, 13

*Nat'l Union Fire Ins. Co. v. Seafirst Corp.*,
891 F.2d 762 (9th Cir. 1989) .......... 8, 9

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
355 F. Supp. 2d 1061 (N.D. Cal. 2005) .......... 9

*Nikon Corp. v. ASM Lithography B.V.*,
222 F.R.D. 647 (N.D. Cal. 2004) .......... 9

*Nilssen v. Motorola, Inc.*,
2002 WL 31369410 (N.D. Ill. Oct. 21, 2002) .......... 12

*PolyMASC Pharms., Plc. v. Alza Corp.*,
2004 WL 633256 (D. Del. Mar. 26, 2004) .......... 12

*Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*,
686 F.2d 720 (9th Cir. 1982) .......... 10, 11

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 8

*TM Patents, L.P. v. IBM Corp.*,
72 F. Supp. 2d 370 (S.D.N.Y. 1999) .......... 10

*U.S. Bancorp Mtg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994) .......... 10, 11, 13

*United States v. Oregon*,
839 F.2d 635 (9th Cir. 1988) .......... 8

**Rules**

Federal Rule of Civil Procedure 24 .......... 1, 8, 9

**Codes**

28 U.S.C. § 2201-2201 .......... 9

28 U.S.C. § 1331 .......... 9

28 U.S.C. § 1338 .......... 9

## NOTICE OF MOTION AND MOTION

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 24 and this Court's instructions during the July 24, 2006 status conference in this case, potential intervenor Micron Technology, Inc. ("Micron") hereby moves for an Order allowing it to intervene in the above-captioned litigation between Infineon Technologies North America Corporation ("Infineon") and MOSAID Technologies Incorporated ("MOSAID") (the "*Infineon v. MOSAID* Case"), or, in the alternative, for leave to participate as *amicus curiae*, in order to permit Micron to oppose the pending Joint Motion to Vacate the claim construction rulings, the summary judgment of non-infringement, and the final judgment in this case. Micron's motion is made on the grounds that in light of litigation now pending between Micron and MOSAID in both California and Texas involving the same patents at issue in this lawsuit, Micron clearly has an interest in the Joint Motion to Vacate and the rulings at issue in that motion. Specifically, an Order granting the Joint Motion to Vacate may as a practical matter impair or impede Micron's ability to utilize these rulings for collateral estoppel in its litigation against MOSAID, and at the very least, the issues involved in the rulings that are the subject of the Joint Motion to Vacate (e.g., the construction of the claims of the patents-in-suit and findings of non-infringement) are common to the pending patent litigation between Micron and MOSAID.

Micron's motion is based on the following Memorandum of Points and Authorities, the supporting Declaration of Kenneth B. Wilson ("Wilson Decl."), Micron's Complaint-in-Intervention, the [Proposed] Order Granting Micron Technology's Motion to Intervene and Denying Joint Motion to Vacate, the materials on file in this action, and any oral argument presented at any hearing on this issue.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

MOSAID's goal in filing its Joint Motion to Vacate the previously rendered claim construction and non-infringement summary judgment rulings in this case is clear—MOSAID desperately wants to avoid the collateral estoppel and/or *stare decisis* effect that these adverse rulings would have on its efforts to enforce the patents-in-suit against Micron and other parties. Indeed, MOSAID has publicly stated that its purpose in seeking to have these rulings vacated is to "reset the clock" on those issues, so that "no one can rely on any of those former rulings," and thereby "put [us] in a stronger position for other potential licensees." [Wilson Decl. Ex. I.]

As this Court may recall, at the June 9, 2006 Status Conference in this matter, this Court noted that it had seen instances where a party had tried to use *vacatur* to avoid the effect of an adverse ruling in unrelated litigation, and asked MOSAID's counsel "whether there are any collateral proceedings in which the Markman order or the non-infringement judgment are being asserted or used in any way." MOSAID cagily responded "Not at this time. There's nothing pending." While that technically may have been true on June 9, MOSAID knew that it would not be true for long. Indeed, there are now two such proceedings between MOSAID and proposed intervenor Micron, involving all of the patents at issue in this case. In fact, just one day after filing its motion for *vacatur* in this Court, MOSAID filed suit against Micron on seven of the patents-in-suit (and two additional patents from the same patent families) in the Eastern District of Texas.[1]

Under the circumstances, it would be inequitable and a waste of judicial resources to permit the work done by this Court and the District of New Jersey in this case to be vacated. Accordingly, Micron respectfully moves for leave to intervene in this matter, or to participate as

[1] Given the substantial analysis required for patent infringement claims under Rule 11, the fact that MOSAID was able to file infringement claims against Micron (as well as two other companies) on nine patents on July 25 demonstrates that MOSAID was planning to sue Micron immediately after its Motion to Vacate was granted, which MOSAID fully expected to happen on July 24.

*amicus curiae*, and asks the Court to deny the parties' joint request to vacate the Judgment and rulings in this case.

**Statement of Facts**

**A. Background of the Parties and the DRAM Industry**

Proposed intervenor Micron is one of the world's leading providers of advanced semiconductor solutions. Micron's DRAM (an acronym for dynamic random access memory) and flash memory circuits are used in today's most advanced computing, networking, and communications products, including computers, workstations, servers, cell phones, wireless devices, digital cameras, and gaming systems. And along with being an industry leader, Micron is a recognized innovator in the semiconductor industry; in fact, an independent technology analysis firm recently ranked Micron number one in the semiconductor industry in its 2006 Patent Scorecard, an annual qualitative analysis measuring corporate innovation. [Wilson Decl. Ex. C.]

Today, and for the past several years, there have been four leading competitors in the DRAM industry: Samsung, Hynix, Infineon and Micron. According to various industry sources, these four companies today account for roughly 75-80% of worldwide DRAM sales. And as set forth in more detail below, all of these companies have been sued by MOSAID, with all but Micron settling during litigation. [*See also* Wilson Decl. Ex. A.]

In contrast to the companies that it has sued, MOSAID is not a leader in the DRAM industry. Rather, MOSAID's primary business is to obtain or acquire semiconductor patents, and to attempt to realize revenue by enforcing and/or licensing these patents. [*See id.* Ex. H.]

Significantly, MOSAID has taken the position that "all companies that manufacture state-of-the-art DRAM products . . . use MOSAID's patented circuit technology." [Wilson Decl. Ex. A at ¶ 12.]

**B. MOSAID's Enforcement of Its Patents Against Samsung and Infineon**

Beginning in or around 2000, MOSAID began pursuing patent licensing agreements with the world's leading DRAM manufacturers. Of particular relevance to the issue currently before the Court, in a series of letters to Micron and other DRAM manufacturers in 2001 and 2002, MOSAID asserted that those companies' products infringed several MOSAID DRAM patents. [*Id.* Ex. D; *see also MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 556-58 (D.N.J. 2005) (in a letter to Infineon, MOSAID asserted that "considering the fact that Infineon is one of the world's largest manufacturers of DRAMs, it is our firm belief that Infineon currently needs to acquire a license").]

In September 2001, MOSAID took the next step in its enforcement plan by suing Samsung (the world's largest DRAM manufacturer by revenue) for patent infringement in the District of New Jersey. MOSAID's complaint accused Samsung of infringing seven MOSAID patents. [Joint Mot. Vacate, Ex. D, Opinion at 3-4.][2] Four of the asserted patents were from what MOSAID refers to as the "Lines Family of Patents": U.S. Patent Nos. 5,214,602, 5,751,643, 5,822,253 and 6,278,640, all of which derive from a common parent application. The other three asserted patents were from what MOSAID refers to as the "Foss Family of Patents": U.S. Patent Nos. 5,828,620, 6,055,201 and 6,236,581, all of which derive from a common parent application. *See MOSAID Techs.*, 362 F. Supp. at 531-32.

Presumably fearing that it would be MOSAID's next target, in December 2002, Infineon, another of the world's top four DRAM makers, filed a declaratory judgment action against MOSAID in this Court. Infineon's complaint sought declarations of non-infringement, invalidity and unenforceability of each of the patents that MOSAID had asserted against Samsung. [Joint Mot. Vacate, Ex. D, Opinion at 4.] MOSAID responded by filing

[2] As used herein, "Joint Mot. Vacate" refers to the Joint Motion to Vacate filed by the parties to this action on July 24, 2006 and the Exhibits thereto.

counterclaims asserting that Infineon infringed each of the seven MOSAID patents at issue in Infineon's declaratory judgment complaint.[3] [*Id.*]

In September 2003, the U.S. Judicial Panel on Multidistrict Litigation consolidated the *Infineon* and the *Samsung* cases in the District of New Jersey (William Martini, J.) for coordinated pretrial proceedings. *In re MOSAID Techs., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2003). On March 22, 2004, after considering, in the words of the Court, "the parties' vast number of submissions, and having heard oral argument for two whole days," Judge Martini issued a claim construction Order construing 30 disputed claim terms. [Joint Mot. Vacate, Ex. D, Opinion at 5, 63-67.] In conjunction with this Order, Judge Martini issued a detailed, sixty-nine page Opinion explaining the basis for his rulings. [*Id.*] Both the Order and the accompanying opinion were largely unfavorable to MOSAID.

On January 18, 2005, MOSAID announced that it had reached a settlement with Samsung. That same day, MOSAID sued Hynix, another of the top four DRAM manufacturers, in the Eastern District of Texas. MOSAID accused Hynix of infringing six of the seven patents it had asserted against Samsung and Infineon. MOSAID announced a settlement with Hynix less than a month later, on February 17, 2005.

Little more than a month later, on April 1, 2005, Judge Martini issued another Order and detailed Opinion, which in relevant part granted Infineon's motion for summary judgment that Infineon's accused DRAM products did not infringe any of the asserted claims of three of the Lines patents (Nos. 5,822,253, 5,751,643 and 6,278,640) and three of the Foss patents (Nos. 5,828,620, 6,055,201 and 6,580,654). *MOSAID Techs.*, 362 F. Supp. 2d at 533-44.

In August 2005, with the New Jersey Court having concluded its pretrial activities, the MDL Panel transferred the *Infineon v. MOSAID* case back to this Court. In October 2005,

---

[3] In June 2003, MOSAID amended its counterclaim against Infineon to assert infringement by Infineon of an additional patent—U.S. Patent No. 6,067,272—covering, according to MOSAID, a "Delay Locked Loop (DLL) circuit for use in Synchronous DRAM." And in November 2003, MOSAID amended its complaint against Samsung and its counterclaim against Infineon to assert infringement of two newly-issued patents. These patents were U.S. Patent No. 6,603,703—another patent in the Lines Family of Patents—and U.S. Patent No. 6,580,654—another patent in the Foss Family of Patents.

Judge Fogel issued a Stipulation and Order Granting MOSAID's Motion for Entry of Final Judgment Pursuant to Rule 54(b) and Staying Remaining Issues in Case. [*Id.* Ex. G.] In the Stipulation, MOSAID and Infineon agreed that MOSAID could immediately appeal Judge Martini's summary judgment and claim construction orders (collectively, "the *Infineon* Orders") and postpone litigating the remaining claims before Judge Fogel until the appeal on these issues was completed. [*Id.*] MOSAID subsequently filed a Notice of Appeal.

On June 9, 2006, before any briefs had been filed in connection with the appeal, this Court held a Status Conference in response to a request from the parties in which the parties advised this Court that that matter had settled. [Joint Mot. Vacate, Ex. C.] At the Status Conference, after observing that parties sometimes use a request for *vacatur* to avoid the effect of an adverse ruling in litigation with unrelated parties, this Court asked MOSAID's counsel "whether there are any collateral proceedings in which the Markman order or the non-infringement judgment are being asserted or used in any way." [*Id.* at 2:13-16.] MOSAID responded "Not at this time. There's nothing pending." [*Id.* at 2:17-18.] Accordingly, the Court asked the parties to submit the appropriate paperwork. [*Id.* at 3:4-5.]

On June 14, 2006, MOSAID and Infineon announced that they had reached a settlement of all outstanding litigation between the companies. [Wilson Decl. Ex. E.] That same day, Infineon and MOSAID filed a Joint Motion for Remand with the Federal Circuit, seeking to remand the proceedings to this Court so that Judge Fogel could entertain a request to vacate the final judgment. [*Id.* Ex. F.] In that remand request, MOSAID characterized this Court's position on the *vacatur* request as follows:

> Northern District of California Judge Jeremy Fogel has agreed to vacate those judgments, orders, and opinions as soon as the case is remanded to him by this Court.

[*Id.* at 2.] On July 20, 2006, the Federal Circuit Court of Appeals remanded the case to this Court to allow the Court to decide the *vacatur* issue. [Joint Mot. Vacate, Ex. A.]

The parties' short Joint Motion to Vacate was thereafter filed on July 24, 2006. That motion reiterated MOSAID's previous representation that "[t]here are no pending matters that would be affected by this motion." [Joint Mot. Vacate at 2.]

### C. **<u>MOSAID's Demonstrated Intent to Continue Enforcing the Patents-in-Suit</u>**

While there technically may have been no pending litigation involving the patents-in-suit when the Joint Motion was filed on July 24, it was certainly apparent from MOSAID's conduct and public statements—even before MOSAID filed its July 25, 2006 lawsuit against Micron involving the seven patents at issue in this case—that MOSAID hoped to vacate the rulings in this case so that it could continue enforcing these patents against the DRAM industry in general, and against Micron in particular. In fact, in its June 14, 2006 conference call about the settlement with Infineon, MOSAID's executives openly acknowledged that MOSAID's purpose in having the *Infineon* Orders vacated is to "reset the clock" on those issues, so that "no one can rely on any of those former rulings," and thereby "put [us] in a stronger position for other potential licensees." [Wilson Decl. Ex. I.] In that same June 14 conference call, MOSAID warned that it would be "unrelenting in [the] assertion of [its] patent portfolio," and that MOSAID had demonstrated a "willingness to use the legal system to enforce [its] patents." [*Id.*] MOSAID also stated in the June 14 conference call that it did not expect its litigation expenses to drop despite the Infineon settlement, because "litigation is always a possibility for us." [*Id.*] Moreover, in response to a question during the conference call, MOSAID's executives did not deny the "logic" of litigation with "the other major DRAM manufacturer you [MOSAID] haven't signed," clearly meaning Micron. [*Id.*]

On July 25, 2006, the day after representing in the Joint Motion to Vacate that "[t]here are no pending matters that would be affected by this motion," MOSAID filed suit against Micron and two other companies on the patents-in-suit in the U.S. District Court for the Eastern

District of Texas.[4] [Wilson Decl. Ex. B.] In a transparent attempt to trump Micron's choice of forum, MOSAID also named two other semiconductor companies in the suit, and asserted two recently issued patents that were not at issue in this case (although those patents are in the same patent families as the patents at issue in this case). [*Id.*]

## Argument

### I. MICRON SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULES 24(A) OR 24(B), OR, IN THE ALTERNATIVE, TO PARTICIPATE IN AN *AMICUS CURIAE* CAPACITY

Pursuant to Federal Rule of Civil Procedure 24, Micron should be permitted to intervene in this matter because it has a direct and substantial interest related to this matter that is at risk of impairment. *Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762, 763-64 (9th Cir. 1989) (allowing intervention on appeal to oppose *vacatur* following settlement, where intervenor asserted potentially preclusive effect of the judgment to be vacated in other litigation with a settling party).

Under the law of this Circuit, Rule 24 is to be construed broadly in favor of permitting intervention. *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988); *see Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090, 1092 (Fed. Cir. 1993) (holding circuit law applies to intervention). Moreover, in evaluating a motion to intervene, a district court must accept as true the non-conclusory allegations of the motion and proposed complaint-in-intervention. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

Micron's allegations clearly establish its standing to address the Court on the *vacatur* issue.

#### A. Micron Should Be Permitted to Intervene as of Right Under Rule 24(a)

Intervention as a matter of right under Rule 24(a) is appropriate when: (1) the application is timely; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) "the applicant is so situated that the disposition of the action may as a

---

[4] The previous day, Micron had filed a declaratory relief action against MOSAID in this Court regarding the patents-in-suit. [Wilson Decl. Ex. A.] Remarkably, MOSAID's newly-filed Texas Complaint does not mention this declaratory relief action.

practical matter impair or impede the applicant's ability to protect that interest"; and (4) the applicant's interest is not "adequately represented by existing parties." Fed. R. Civ. P. 24(a).

There can be no question that Micron's application is timely brought. Moreover, given that Micron and MOSAID are now litigating the same patents at issue in this case, there cannot be any serious question that Micron has an interest relating to the patents-in-suit that could be impaired by the Court's *vacatur* ruling, or that Micron's interest is not adequately represented by the parties to the suit (who have jointly sought to vacate the rulings at issue). And Micron's interest in the outcome of this litigation will unquestionably be impaired if *vacatur* is granted, because Micron may be forced to relitigate issues that have already been litigated here. *See Nat'l Union Fire Ins.*, 891 F.2d at 764, 769 (intervention allowed on appeal and in district court where *vacatur* following settlement would "affect the rights of other litigants" in another case; court emphasized "the third-party interests in this case and the possible, although uncertain status of any preclusive effect").

Accordingly, Micron has established that it should be permitted to intervene to address the *vacatur* issue as a matter of right.[5]

### B. <u>In the Alternative, Micron Should Be Permitted to Participate as *Amicus Curiae*</u>

"[A]n individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable to the court." *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991) (allowing amicus). "District courts frequently welcome amicus

[5] Alternatively, Micron should be permitted to intervene under Rule 24(b), which authorizes permissive intervention when (1) the application is timely; (2) an independent ground for jurisdiction exists; and (3) the applicant's claim or defense, and the main action, have a question of law or fact in common. Fed. R. Civ. P. 24(b). As discussed above, Micron's motion is timely. Because Micron opposes *vacatur* of rulings regarding patent non-infringement and claim construction and is involved in patent litigation with MOSAID in this Court and in the Eastern District of Texas, Micron has an independent ground for jurisdiction pursuant to 28 U.S.C. §§ 2201-2201, 1331, and 1338(a). And common questions of law or fact clearly exist, since the rulings sought to be vacated in the *Infineon* case involve the same patents at issue in the two lawsuits between Micron and MOSAID, and involve the same types of products, DRAMs. Thus, there can be "little question that Rule 24(b)'s three factors are present here." *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 651 (N.D. Cal. 2004) (holding permissive intervenor jurisdiction was proper in patent case).

briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (allowing amicus) (internal quotation marks omitted).

Here, Micron has requested the opportunity to address the legal impact of the parties' Joint Motion to Vacate, which clearly has ramifications in Micron's current litigation with MOSAID. Indeed, at the July 24, 2006 Status Conference in this case, the Court already invited Micron to address the *vacatur* issue. Accordingly, in the event the Court concludes that Micron should not be permitted to intervene, Micron should at the very least be formally permitted to participate as amicus.

## II. THE *VACATUR* MOTION SHOULD BE DENIED

The claim construction and summary judgment rulings that MOSAID asks this Court to vacate were the product of extensive briefing and argument by MOSAID, Samsung and Infineon and extensive analysis by Judge Martini in the District of New Jersey. MOSAID now seeks to undo the results of these efforts for no reason other than to avoid the potential collateral estoppel effect of these adverse rulings.[6] Indeed, while the Joint Motion offers no basis for granting the *vacatur* request, the only conceivable basis for the proposed *vacatur* is to prevent Micron and other companies from using the *Infineon* Orders to defend themselves against MOSAID's patents. A *vacatur* request cannot be premised on such an inequitable purpose. Indeed, the great hesitancy of courts to allow *vacatur* upon settlement is motivated by cases such as this one, in which there would be tremendous judicial diseconomies and substantial unfair prejudice to a third party such as Micron.

---

[6] *See, e.g., Abbott Labs. v. Dey, L.P.*, 110 F. Supp. 2d 667 (N.D. Ill. 2000) (giving claim construction preclusive effect against patentee); *TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 375-76 (S.D.N.Y. 1999) (holding collateral estoppel applied and judgment was final where settlement did not vacate claim construction, despite lack of appellate review).

*Vacatur* is only appropriate under Rule 60(b) when "equitable considerations" counsel in its favor, considering "'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998) (*quoting Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982)). In fact, the Supreme Court in *U.S. Bancorp Mtg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994), required a finding of "exceptional circumstances" to permit *vacatur* of a case pending on appeal, and many circuits require such a finding before a district court may vacate. While the Ninth Circuit does not necessarily require district courts to go so far as to find "exceptional circumstances" to vacate their own decisions, the policy rationales are the same in the Ninth Circuit as anywhere else. *See, e.g., Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir. 1995) ("[T]he touchstone of vacatur is equity.").

Settlement alone cannot satisfy the equitable considerations necessary to permit *vacatur*—especially where, as here, the only purpose is to avoid collateral estoppel. *See Ringsby Truck Lines*, 686 F.2d at 721-23. Put another way, a "'buy and bury' strategy" to "erase an adverse decision" is not a proper basis for *vacatur*, and in such circumstances, the district court's job is "to smoke out subterfuge." *Am. Games*, 142 F.3d at 1170.

As the Ninth Circuit noted in *Ringsby,* "[i]t would be quite destructive to the principle of judicial finality to put []a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal." 686 F.2d at 721 (internal quotation marks omitted). "That possibility would undermine the risks inherent in taking any controversy to trial and, in cases such as this one, provide the dissatisfied party with an opportunity to relitigate the same issues. . . . We do not see why appellant should be permitted to avoid the collateral estoppel effect of the district court's findings by settling this dispute on appeal and petitioning for vacation of the court's adverse findings."[7] *Id*. at 721 & n.1.

---

[7] While the *Ringsby* Court was discussing appellate *vacatur*, the same principles hold for a district court.

Indeed, the Supreme Court has counseled that by settling on appeal, "the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Bancorp*, 513 U.S. at 25 (internal quotation marks and original alterations omitted).

Applying these rules in the patent infringement context, courts (including the Federal Circuit) have repeatedly held that *vacatur* based on settlement alone should be denied, absent countervailing considerations. *See, e.g., Aqua Marine Supply v. Aim Mach., Inc.*, 247 F.3d 1216, 1221 (Fed. Cir. 2001) (denying *vacatur* of district court's grant of summary judgment on patent infringement claims following settlement, applying "exceptional circumstances" test); *Chamberlain Group, Inc. v. Interlogix, Inc.*, 2004 WL 1197258, at *2 (N.D. Ill. May 28, 2004) (denying *vacutur* of summary judgment of non-infringement: "the summary judgment order may not be expunged merely to facilitate the parties' private agreement"); *Nilssen v. Motorola, Inc.*, 2002 WL 31369410, at *3 (N.D. Ill. Oct. 21, 2002) (denying motion to vacate all previous rulings in a patent case: "[patentee] fails to demonstrate why avoiding issue preclusion constitutes an exceptional, or even significant circumstance"); *PolyMASC Pharms., Plc. v. Alza Corp.*, 2004 WL 633256 (D. Del. Mar. 26, 2004) (denying motion to vacate claim construction and summary judgment rulings: "fact that the parties' settlement will preclude appellate review does not justify vacatur of the Court's Orders"); *Clever Devices, Ltd. v. Digital Recorders, Inc.*, 2004 U.S. Dist. LEXIS 10494 (N.D. Tex. June 3, 2004) (denying *vacatur* despite party's concern about possible collateral estoppel effect of *Markman* ruling); *see also Louisville Bedding Co. v. Pillowtex Corp.*, 2006 WL 2052062 (Fed. Cir. July 25, 2006) (upholding district court's denial of *vacatur* after settlement, following "exceptional circumstances" test).

Here, MOSAID's settlement with Infineon constitutes the only identified basis for the request to vacate. However, it was MOSAID itself that had acted to obtain entry of final judgment in the first place, so that it could immediately appeal. Under these circumstances, to

permit MOSAID to vacate the *Infineon* Orders would result in a tremendous waste of judicial and other resources, and would reduce the Court to giving "advisory opinions" that MOSAID can avoid if it does not like. *See Allen-Bradley Co. v. Kollmorgen Corp.*, 199 F.R.D. 316, 320 (E.D. Wis. 2001) (denying *vacatur* of claim construction following settlement because doing otherwise would be "encouraging litigants to test their proposed claim constructions via a full-blown Markman hearing and decision before settling, thereby relegating the court's Markman decision to the category of 'advisory opinion'"). MOSAID should not be permitted to request *vacatur*, tell the Court that nothing is pending "at this time," and then use the *vacatur* to strengthen its position so it can sue more accused infringers the very next day.

Additional considerations further undermine MOSAID's request to vacate the rulings in this case. First, as discussed, the *Infineon* case has implications in two lawsuits between MOSAID and Micron, and now affects two additional defendants. Second, MOSAID's attempts to vacate this Court's rulings also implicate those of another court: the District Court of New Jersey that had originally rendered the opinions and orders on summary judgment and claim construction that this Court entered.[8]

Indeed, with respect to at least the claim construction Order and Opinion, it is unclear that this Court has the power to vacate those rulings. In particular, the claim construction ruling was made by the New Jersey Court while Samsung was still a party based at least in part on briefings submitted by Samsung. Although Samsung settled in January 2005, to Micron's knowledge, the rulings relating to Samsung have not been vacated. Since Samsung has never been a party to this proceeding, it would be inappropriate for this Court to vacate at least that ruling.

In sum, this Court should not permit MOSAID to erase the judicial precedents in the New Jersey Court—or this Court— so that MOSAID can relitigate the same issues, as it now

---

[8] In fact, that court's opinion on summary judgment of non-infringement, based on the claim construction ruling, is a published decision, *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp.2d 526 (D.N.J. 2005).

apparently intends to do against Micron. MOSAID simply has not established and cannot establish the equitable circumstances required to obtain *vacatur* of a judgment following

///

///

///

settlement under the standards set forth by the Ninth Circuit and United States Supreme Court. *Am. Games*, 142 F.3d at 1168-69; *Bancorp*, 513 U.S. at 29 ("We hold that mootness by reason of settlement does not justify vacatur of judgment under review."); *Aqua Marine Supply*, 247 F.3d at 1221 (same). Accordingly, MOSAID's request for *vacatur* must be denied.

Dated: July 31, 2006

**PERKINS COIE BROWN & BAIN P.A.**
**PERKINS COIE LLP**

By ___________/s/_______________

Jonathan M. James
Christopher M. Schultz
David M. LaSpaluto
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue
Post Office Box 400
Phoenix, Arizona 85001-0400

Kenneth B. Wilson
Stefani Shanberg
PERKINS COIE LLP
Four Embarcadero Center
Suite 2400
San Francisco, California 94111

Attorneys for Intervenor MICRON TECHNOLOGY, INC.

**CERTIFICATE OF SERVICE**

I, Erika R. Eberline, declare:

I am a citizen of the United States and am employed in the County of San Francisco, State of California. I am over the age of 18 years and am not a party to the within action. My business address is Perkins Coie LLP, Four Embarcadero Center, Suite 2400, San Francisco, California 94111. I am personally familiar with the business practice of Perkins Coie LLP. On July 31, 2006, the following document **Micron's Motion to Intervene or, In The Alternative, Request For Leave To Participate As *Amicus Curiae,* and Opposition to Joint Motion to Vacate** was electronically filed with the United States District Court and served electronically via the Court to the parties listed below:

Eric R. Lamison
Alice Garber
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
*Attorneys for Infineon Technologies North America Corp.*

Henry C. Bunsow
K. T. Cherian
Scott Wales
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
*Attorneys for MOSAID Technologies Incorporated*

John M. Desmarais
Gregory S. Arovas
Paul A. Bondor
David B. Perry-Campf
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
*Attorneys for Infineon Technologies North America Corp.*

I declare under penalty of perjury under the laws of the United States that the above is true and correct and that this declaration was executed at San Francisco, California.

DATED: July 31, 2006

**PERKINS COIE LLP**

By /s/
Erika R. Eberline