1  Sean P. DeBruine (SBN 168071)(sdebruine@akingump.com)
   Ming-Tao Yang (SBN 221295) (myang@akingump.com)
2  AKIN GUMP STRAUSS HAUER & FELD LLP
   Two Palo Alto Square
3  3000 El Camino Real, Suite 400
4  Palo Alto, CA 94306
   Telephone: (650) 838-2000
5  Facsimile: (650) 838-2001

6  Attorneys for Proposed Intervenor
   PROMOS TECHNOLOGIES INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11 | INFINEON TECHNOLOGIES NORTH | **CASE NO. 5:02-cv-05772-JF (RS)**
12 | AMERICA CORPORATION, |
13 |                   Plaintiff, |
14 |       v. | **PROMOS TECHNOLOGIES INC.'S MOTION TO INTERVENE OR, IN THE ALTERNATIVE, REQUEST FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*, AND OPPOSITION TO JOINT MOTION TO VACATE**
15 | MOSAID TECHNOLOGIES, |
16 | INCORPORATED, |
17 |                   Defendant. |

1

## NOTICE OF MOTION AND MOTION

2   TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

3   PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 24, potential

4 intervenor ProMOS Technologies Inc. ("ProMOS") hereby moves for an Order allowing it to intervene

5 in the above-captioned litigation between Infineon Technologies North America Corporation

6 ("Infineon") and MOSAID Technologies, Incorporated ("MOSAID") (the "*Infineon v. MOSAID* Case"),

7 or, in the alternative, for leave to participate as *amicus curiae*, and to permit ProMOS to oppose the

8 pending Joint Motion to Vacate the claim construction rulings, the summary judgment of non-

9 infringement, and the final judgment in this case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Potential intervenor ProMOS submits this memorandum in support of its motion to intervene, or, in the alternative for leave to participate as *amicus curiae* and opposition to MOSAID and Infineon's Joint Motion to Vacate the claim construction, non-infringement summary judgment and the final judgment rulings of this Courts.

On July 25, 2006, MOSAID filed a patent infringement suit asserting nine patents against ProMOS, together with two other defendants, in the Eastern District of Texas ("the MOSAID Texas case"). MOSAID filed an amended complaint on August 31, 2006 asserting two additional patents. Of the eleven patents asserted against ProMOS in the Texas case, six are directly at issue in this case, and three of the remaining five are related by continuing applications to the patents at issue here.

The apparent motive behind MOSAID's filing of the Joint Motion to Vacate is to avoid the collateral estoppel effect of these adverse rulings on the pending or future litigation against ProMOS and other third parties. However, as detailed below, it would be inequitable to ProMOS and a waste of judicial resources to allow the substantial amount of time and effort performed by this Court and the District of New Jersey in this case to be vacated. ProMOS licensed Infineon's designs on some of the accused products and therefore ProMOS will be forced to relitigate many of the same technical issues that this Court and the New Jersey District Court have already addressed. Accordingly, ProMOS respectfully moves for leave to intervene, or, in the alternative, to participate as *amicus curiae*, in this matter so that it can request that the Court to deny Joint Motion to Vacate.

## II. STATEMENT OF FACTS

Starting from 2001, several DRAM manufacturers have been sued by MOSAID for patent infringement concerning DRAM technologies. Of particular relevance to the current case, MOSAID filed a patent infringement action in September 2001 against Samsung Electronics Co., Ltd., *et al*. (collectively, "Samsung") in the District of New Jersey for seven MOSAID patents. [Joint Mot. Vacate, Ex. D, Opinion at 3-4.] Infineon filed a declaratory judgment action against MOSAID in this Court, seeking declarations of non-infringement, invalidity and unenforceability of each of the seven patents that MOSAID had asserted against Samsung. [Joint Mot. Vacate, Ex. D, Opinion at 4.]

MOSAID counterclaimed asserting that Infineon infringed the same seven patents asserted against Samsung.  [*Id*.]

In September 2003, the Infineon and the Samsung cases were consolidated in the District of New Jersey (William J. Martini) for pretrial proceedings.  At that time, there were nine patents involved in both actions.[1]  Five of the patents were from what MOSAID refers to as the "Lines Family of Patents":  U.S. Patent Nos. 5,214, 602 ("the '602 patent"), 5,751,643 ("the '643 patent"), 5,822,253 ("the '253 patent"), 6,603,703 ("the '703 patent") and 6,278, 640 ("the '640 patent"), all of which derive from a common parent application.  The other four patents were from what MOSAID refers to as the "Foss Family of Patents":  U.S. Patent Nos. 5,828,620 ("the '620 patent"), 6055,201 ("the '201 patent"), 6,236,581 ("the '581 patent"), and 6,580,654 ("the '654 patent"), all of which derive from a common parent application.  [Joint Mot. Vacate, Ex. D, Opinion at 6.]  The New Jersey Court issued its claim construction order on March 23, 2004 construing 30 disputed claim terms for the nine patents after considering "the parties' vast number of submissions, and having heard oral argument for two whole days".  [Joint Mot. Vacate, Ex. D, Opinion at 5, 63-67.]

The Samsung case was dismissed in January 2005 due to the settlement between MOSAID and Samsung.  [Joint Mot. Vacate, Ex. E, Opinion at 5.]  On April 1, 2005, the New Jersey Court granted summary judgment to Infineon on its declaratory judgment claims for non-infringement and against MOSAID on its claims for infringement of six of the MOSAID patents, the 643, 253, 640, 620, 201, 654 patents.[2]  [DeBruine Decl. Ex. C.]  After the New Jersey Court had concluded its pretrial activities, the *Infineon v. MOSAID* case was transferred back to this Court.  In October 2005, the claim construction and summary judgment rulings were entered as final judgment.  [DeBruine Decl. Ex. B.]  MOSAID subsequently filed a Notice of Appeal.

---

[1] MOSAID's original complaint against Samsung and its original counterclaim against Infineon involve seven patents.  In November 2003, MOSAID amended its complaint against Samsung and its counterclaim against Infineon to assert infringement of two newly issued patents: U.S. Patent Nos. 6,603,703 and 6,580,654.

[2] Neither of MOSAID and Infineon moved for summary judgment on the '703 patent. MOSAID has determined not to pursue its infringement claims under the '602 and '581 patents in view of the New Jersey Court's Markman ruling.  [DeBruine Decl. Ex. C.]

MOSAID and Infineon settled before any appeal briefs had been filed.  At the status conference held on June 9, 2006, the parties' request for vacatur was discussed.  [Joint Mot. Vacate, Ex. C]  With concern that vacatur is used to avoid the effect in other litigation, the Court particularly asked MOSAID's counsel "whether there are any collateral proceedings in which the Markman order or the non-infringement judgment are being asserted or used in any way." [*Id*. at 2:13-16.]  MOSAID responded "Not at this time.  There's nothing pending." [*Id*. at 2:17-18.]  This Court then asked the parties to submit the appropriate paperwork.  [*Id*. at 3:4-5.]

Thereafter, MOSAID and Infineon filed a Joint Motion for Remand with the Federal Circuit which remanded the case to this Court to allow the Court to decide the request for vacatur.  [Joint Mot. Vacate, Ex. A]  The parties submitted a Joint Motion to Vacate on July 24, 2006.  The Joint Motion reiterated MOSAID's previous representation that "[t]here are no pending matters that would be affected by this motion." [Joint Not. Vacate at 2.]  On July 25, 2006, the very next day after filing the Joint Motion, MOSAID filed a suit against ProMOS together with two other defendants in the Eastern District of Texas for patent infringement of nine MOSAID patents.[3]  [DeBruine Decl. Ex. A.]  On August 31, 2006, MOSAID filed an amended complaint adding two MOSAID patents.  Nine of the eleven patents asserted in the MOSAID Texas case are either in the Lines Family or in the Foss Family.  Six of the eleven asserted patents were directly involved in the claim construction proceedings and four were the subject in the summary judgment ruling.  [DeBruine Decl. Ex. E.]  In addition, ProMOS licensed the Infineon DRAM technologies and thus the accused ProMOS products are likely to be identical to the Infineon DRAM products that the New Jersey Court found did not infringe the MOSAID patents in the summary judgment ruling.  [DeBruine Decl. Ex. D.]

### III.     PROMOS SHOULD BE PERMITTED TO INTERVENE PURSUANT TO RULES 24(A) or 24(B)

Federal Rule of Civil Procedure 24 ("Rule 24") governs a party's application for intervention.  Rule 24(a) regulates intervention by right and Rule 24(b) sets forth the requirements for permissive intervention.  ProMOS seeks intervention under Rule 24(a) and, in the alternative, Rule 24(b).

---

[3] One of the defendants named by MOSAID in the MOSAID Texas case is Micron Technology, Inc. which has also filed its motion to intervene, or, in the alternative, request for leave to participate as *amicus curiae*, and opposition to MOSAID's Joint Motion to Vacate.

### A. ProMOS Should be Permitted to Intervene As A Matter of Right

Rule 24(a) provides:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:…(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

Rule 24(a) is construed liberally in favor of potential intervenors. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (reversing denial of motion to intervene and citing *Forest Conservation Council v. United Sates Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995)). "By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related claims; at the same time, we allow an additional interested party to express its views before the court." *Forest Conservation Council*, 66 F.3d at 1496 n.8 (reversing denial of motion to intervene).

According to the Ninth Circuit, to prevail on a motion to intervene as of right, the applicant for intervention must show:

(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action;

(2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;

(3) the application is timely; and

(4) the existing parties may not adequately represent the applicant's interest.

*United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (reversing denial of Police League's motion to intervene).

#### 1. Significant Protectable Interest

Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry[.]" *Southwest Center for Biological Diversity*, 268 F.3d at 818. "No specific legal or equitable interest need be established." *Id*. The Ninth Circuit's standard for determining an

1 intervenor's significant protectable interest is whether the interest is protected under law and whether
2 there is a relationship between the intervenor's legally protected interest and the plaintiff's claims. *Id*.
3 "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many
4 apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation*
5 *Council*, 66 F.3d at 1496.

6 ProMOS meets this requirement. ProMOS has an interest in the Joint Motion to Vacate
7 because the MOSAID Texas case against ProMOS involves most of the patents at issue in this lawsuit.
8 Six of the eleven patents asserted in the MOSAID Texas case are directly at issue in this case, and
9 three of the remaining five are related by continuing applications to the patents-in-suit here. As a result
10 of MOSAID's filing suit against it in Texas, ProMOS has an interest relating to the patents at issue in
11 this case.

**2. Impairment Of Interest**

13 The next issue is whether ProMOS' ability to protect its interest would, as a practical matter, be
14 impaired or impeded. In determining whether an interest would be impaired or impeded by disposition
15 of the action, the Ninth Circuit has relied on the Advisory Committee notes to Rule 24, which state that
16 "[i]f an absentee would be substantially affected in a practical sense by the determination made in an
17 action, he should, as a general rule, be entitled to intervene." *Southwest Center for Biological*
18 *Diversity*, 268 F.3d at 822 (citing Fed. R. Civ. P. 24 Advisory Committee notes); *Cunningham v. David*
19 *Special Commitment Ctr.*, 158 F.3d 1035, 1038 (9th Cir. 1998) (the standard for this determination is
20 whether a potentially adverse impact on the intervenor's interest would result from the decision or
21 whether the decision may as a "practical matter" impede the applicant's ability to protect its interest).

22 ProMOS' interests will unquestionably be "substantially affected" if the Joint Motion to Vacate
23 is entered. Specifically, an Order granting vacatur may, as a practical matter, impair or impede
24 ProMOS' ability to utilize these rulings for collateral estoppel in its litigation against MOSAID. This
25 Court noted at the June 9, 2006 Status Conference that it had seen instances where a party had tried to
26 vacate adverse rulings to avoid the effect in unrelated litigation. This Court particularly asked
27 MOSAID's counsel "whether there are any collateral proceedings in which the Markman order or the
28 non-infringement judgment are being asserted or used in any way." MOSAID responded "Not at this

time. There's nothing pending." While it was true on June 9, 2006, MOSAID filed the MOSAID Texas case for infringement of nine MOSAID patents right immediately after submitting the Joint Motion to Vacate and added two additional patents in its amended complaint. Nine of the eleven patents asserted in the new MOSAID Texas case are either in the Lines Family or in the Foss Family which were discussed in detail in the claim construction rulings. Four of the eleven patents in the Texas case were found not infringed in this case by the Infineon DRAM technologies which are likely the same as the accused ProMOS technologies in the Texas case. If the Joint Motion to Vacate is granted, MOSAID would not be bounded by the claim construction rulings and the non-infringement findings and ProMOS may be forced to relitigate issues that have already been litigated here.

### 3. Timeliness

The next prong of the intervention analysis is the timeliness of the application. ProMOS is filing this Motion to Intervene promptly after of learning that its interests are at issue. There can be no question that ProMOS timely filed this motion to intervene. The Joint Motion to Vacate is still pending and sufficient time remains before the hearing, now scheduled for October 20, 2006, for the parties to fully respond to ProMOS' motion.

### 4. Inadequate Representation

Lastly, to successfully intervene, ProMOS' interest must not be adequately represented by Infineon or MOSAID. The interests of ProMOS are neither represented by Infineon nor MOSAID. Indeed, MOSAID and Infineon jointly sought to vacate certain rulings in this case that ProMOS asks be left in place.

**B. PROMOS' Permissive Intervention Is Appropriate Under This Court's Controlling Authority**

Rule 24(b) provides:

> Upon timely application anyone may be permitted to intervene in an action … (2) when an applicant's claim or defense and the main action have a question of law or fact in common. … In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Red. R. Civ. P. 24(b).

According to the Ninth circuit, a court may grant permissive intervention where the applicant for intervention shows:

(1) independent grounds for jurisdiction;

(2) the motion is timely; and

(3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.

*Southwest Center for Biological Diversity*, 268 F.3d at 822.  The Ninth Circuit has held that the burden of showing inadequacy is minimal; the potential intervenor must only show that "representation of its interests 'may be' inadequate."  *Id.* at 823 and *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).

ProMOS separately and independently satisfies each of the requirements for permissive intervention pursuant to Rule 24(b).  First, MOSAID has accused ProMOS' technology of infringing most of the patents-in-suit in this case and thus ProMOS has independent grounds for asserting jurisdiction under Federal Declaratory Relief Act and the Patent Laws of the United States, particularly 28 U.S.C. § § 2201 and 2202 and 35 U.S.C. § § 1, *et. seq*.  Second, as discussed above in Section III.A.3, ProMOS' motion is timely.  Furthermore, there are common questions of law at least as to those patents at issue which are also asserted in the MOSAID Texas case, including the claim construction thereof.  There are likely common question of fact as to the accused technologies, including the non-infringement summary judgment ruling.

### IV.     PROMOS SHOULD BE PERMITTED TO PARTICIPATE AS *AMICUS CURIAE*

In the alternative, should ProMOS be denied leave to intervene for any reason, the Court should permit ProMOS to address the motion to vacate as an *amicus curiae*.  An amicus brief is generally permitted in a case where the amicus has a direct interest in another case that may be materially affected by a decision in the instant case or where the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide.  *NGV Gaming, Ltd. v. Upstream Point Molate LLC*, 335 F. Supp.2d 1061, 1067 (N.D. Cal. 2005) (allowing amicus).  For appearance as amicus, an individual merely has to show that "his participation is useful to or other

1  wise desirable to the court." *In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991)
2  (allowing amicus).
3      ProMOS should be permitted to participate as *amicus curiae* because, as discussed above, the
4  MOSAID Texas case against ProMOS may be materially affected by the Court's decision on the Joint
5  Motion to Vacate and ProMOS may present to the Court the legal impact of the parties' Joint Motion to
6  Vacate which MOSAID and Infineon did not address in the Joint Motion.

7  **V.    THE JOINT MOTION TO VACATE SHOULD BE DENIED**

8      Rule 60(b) provides the basis for a district court to vacate judgments when the equities so
9  demand. *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998). The Ninth
10 Circuit has recognized that a district court should decide whether to vacate its own judgment in light of
11 the *Ringsby* equitable balancing test, including "the consequences and attendant hardships of dismissal
12 or refusal to dismiss" and "the competing values of finality of judgment and right to relitigation of
13 unreviewed disputes." *Id.* at 1169; *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686
14 F.2d 720, 722 (9th Cir. 1982). The purpose of the *Ringsby* equitable balancing test is to enable the
15 district court to consider fully the consequences of the requested vacatur. *Bates v. Union Oil Co. of*
16 *California*, 944 F.2d 647, 650 (9th Cir. 1991).

17     The only basis for vacatur identified in the Joint Motion to Vacate is the settlement between
18 MOSAID and Infineon. As discussed below, however, the equities heavily favor denying the Joint
19 Motion. First, it is not inequitable to deny the Joint Motion to Vacate because settlement alone does
20 not satisfy the equitable balancing test. MOSAID could have pursued appellate review of the claim
21 construction and non-infringement summary judgment rulings to avoid the collateral estoppel effect on
22 its ability to assert the patents at issue against others. Instead, MOSAID chose to voluntarily abandon
23 its appeal rights in favor of settlement. Since MOSAID itself forfeitures its legal remedy, the Court
24 should not allow MOSAID now to "buy and bury" the adverse rulings by settlement to avoid the
25 possible precedential effect of the adverse rulings. *Am. Games*, 142 F.3d at 1170; *see U.S. Bancorp*
26 *Mortgate Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994) ("the losing party has voluntarily
27 forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his
28 claim to the equitable remedy of vacatur"); *see also Ringsby Truck Lines*, 686 F.2d at 721 & n.1 ("We

do not see why appellant should be permitted to avoid the collateral estoppel effect of the district court's findings by settling this dispute on appeal and petitioning for vacation of the court's adverse findings").

Vacatur will harm the public interest. The Supreme Court in *U.S. Bancorp* recognized that the public's interest must be taken into account when analyzing whether vacatur is justified. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." 518 U.S at 26. The claim construction and non-infringement summary judgment rulings may have persuasive force as precedent that have potential value to numerous third parties not involved in this action. *See Allen-Bradley Co. v. Kollmorgen Corp.*, 199 F.R.D. 316, 319 (E.D. Wis 2001). Thus, denial of the Joint Motion could serve valuable systemic purpose to assist other judges and litigants for action involving patents at issue. In fact, ProMOS and two other defendants have been sued by MOSAID in the MOSAID Texas case for most of the patents at issue, vacatur of the claim construction and non-infringement rulings would cause substantial prejudice to at least these three defendants.

In addition, this Court and the New Jersey Court have devoted a substantial amount of time and effort to the numerous orders. *See Allen-Bradley Co.*, 199 F.R.D. at 318 (denying vacatur of claim construction following settlement because the court has spent much time and effort). The *Markman* hearing, the claim construction and the non-infringement rulings entailed the expenditure of extensive judicial resources. Specifically, the New Jersey Court spent months for the claim construction briefing and two entire court days for the *Markman* hearing to construe 30 disputed terms for nine patents. Furthermore, the technology involved and the patents at issue are complex. Considering the overlap of the patents in the two cases and the similarity between the Infineon and ProMOS technologies, vacating all these rulings would require many of already decided issues to be re-examined and thereby wasting judicial economies and resulting in substantial unfair prejudice to ProMOS.

///

///

1  In light of the foregoing, the existence of the public interest and the investment of judicial
2  resources disfavor vacatur. Accordingly, the Joint Motion to Vacate must be denied.

Dated: September 8, 2006                    AKIN GUMP STRAUSS HAUER & FELD LLP


By_____/s/_____
                Sean P. DeBruine

Attorneys for Proposed Intervenor
PROMOS TECHNOLOGIES INC.

5962306