1 | Henry C. Bunsow (SBN 060707)
bunsowh@howrey.com
2 | K.T. Cherian (SBN 133967)
cheriank@howrey.com
3 | Scott Wales (SBN 179804)
waless@howrey.com
4 | HOWREY LLP
525 Market Street, Suite 3600
5 | San Francisco, California 94105
Telephone: (415) 848-4900
6 | Facsimile: (415) 848-4999

7 | Attorneys for Defendant
MOSAID TECHNOLOGIES INCORPORATED

8

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

11 | SAN JOSE DIVISION

12 | INFINEON TECHNOLOGIES NORTH          ) Case No. 5:02-cv-05772 JF
AMERICA CORPORATION,                  )
13 |                                     ) **DEFENDANT MOSAID'S MEMORANDUM**
                          Plaintiff,    ) **OF POINTS AND AUTHORITIES ON THE**
14 |                                     ) **COLLATERAL ESTOPPEL EFFECT OF**
         v.                             ) **JUDGE MARTINI'S RULINGS**
15 |                                     )
MOSAID TECHNOLOGIES INCORPORATED,     )
16 |                                     )
                          Defendant.    )
17 |                                     )
_____ )
18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

3    I.    INTRODUCTION ..................................................................................................1

4    II.   BACKGROUND ..................................................................................................2

5          A.    Procedural History.....................................................................................2

6                1.    The Parties' Joint Motion to Vacate Judge Martini's
                       Rulings.............................................................................................3
7
                 2.    Micron and ProMOS's Attempts to Intervene...................................4
8
     III.  ARGUMENT ......................................................................................................5
9
           A.    Judge Martini's Orders Were Based Upon *Texas Digital* and Its
10               Progeny......................................................................................................5

11         B.    *Phillips* Expressly Rejected the Claim Construction Methodology
                 of *Texas Digital.*.......................................................................................7
12
           C.    Collateral Estoppel Does Not Apply Where There Has Been an
13               Intervening Change in Law. ......................................................................8

14               1.    General Principles of Collateral Estoppel. .....................................8

15               2.    Fifth Circuit Law Governs Whether Collateral Estoppel
                       Applies to Judge Martini's Rulings. ................................................8
16
                 3.    Under the Fifth Circuit or Ninth Circuit, Collateral
17                     Estoppel Does Not Apply Where There Has Been A
                       Change in Controlling Legal Principles. .........................................9
18
           D.    After *Phillips,* It Would Be Improper and Unfair to Give Collateral
19               Estoppel Effect to Judge Martini's *Texas Digital* –based Rulings................11

20   IV.   CONCLUSION .................................................................................................12

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

3  <u>CASES</u>

4  *Artukovic v. Immigration & Naturalization Serv.*,
        693 F.2d 894 (9th Cir. 1982) ............................................................................................ 10
5
   *Bayer AG v. Biovail Corp.*,
6        279 F.3d 1340 (Fed. Cir. 2002) ..................................................................................... 8, 9

7  *Berger v. Rossignol Ski Co.*,
        No. C 05-2523 CRB, 2006 WL 2038324 (N.D. Cal. July 17, 2006) ................................ 9
8
   *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
9        402 U.S. 313 (1971) .......................................................................................................... 8

10  *Brookhill-Wilk, LLC v Intuitive Surgical, Inc.*,
        334 F.3d 1294 (Fed. Cir. 2003) ..................................................................................... 1, 5
11
   *Clark v. Bear Stearns & Co.*,
12       966 F.3d 1318 (9th Cir. 1992) ..................................................................................... 8, 10

13  *Commissioner of Internal Revenue v. Sunnen*,
        333 U.S. 591 (1948) ..................................................................................................... 2, 11
14
   *Copeland v. Merrill Lynch & Co., Inc.*,
15       47 F.3d 1415 (5th Cir. 1995) ............................................................................................ 9

16  *Mendelovitz v. Adolf Coors Co.*,
        693 F.2d 570 (5th Cir. 1982) ...................................................................................... 9, 11
17
   *Nichols v. Anderson*,
18       788 F.2d 1140 (5th Cir. 1986) .......................................................................................... 8

19  *Nystrom v. TREX Co.*,
        424 F.3d 1136 (Fed. Cir. 2005) ........................................................................................ 1
20
   *Parklane Hosiery Co. v. Shore*,
21       439 U.S. 322 (1979) .......................................................................................................... 8

22  *Petro-Hunt, LLC v. United States*,
        365 F.3d 385 (5th Cir. 2004) ...................................................................................... 9, 11
23
   *Phillips v. AWH Corp.*,
24       415 F.3d 1303 (Fed. Cir. 2005) ......................................................................... 1, 7, 8, 11

25  *Polaroid Corp. v. Eastman Kodak Co.*,
        867 F.2d 1415 (Fed. Cir. 1989) ........................................................................................ 8
26
   *Segal v. Am. Tel. & Tel. Co.*,
27       606 F.2d 842 (9th Cir. 1979) ..................................................................................... 10, 11

28

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ........................................................................................passim

*United States v. Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ........................................................................................9

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 28 (1982).......................................................................10

Restatement (Second) of Judgments § 68.1 (1973).......................................................................10

**HOWREY LLP** | Case No. 5:02-cv-05772 JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556

iii

1    In the Court's order of October 23, 2006 addressing Infineon's and MOSAID's joint motion to

2  vacate, the Court wrote that "vacatur is appropriate if Judge Martini's rulings are not entitled to

3  collateral estoppel effect, and vacatur is inappropriate if the rulings are so entitled."  Jalali Decl. Ex. 1

4  at 6 (Order Denying Motions to Intervene).  Accordingly, the Court ordered further briefing on this

5  issue.

6  **I.    INTRODUCTION**

7    Judge Martini's rulings are not entitled to collateral estoppel effect as a matter of law because

8  they were based on outdated legal principles, which changed in critical respects after he issued his

9  rulings.  Thus, binding MOSAID to those rulings would be unfair and the Court should grant the joint

10  motion to vacate.

11    Judge Martini construed the patents according to the no-longer valid principles set forth in

12  *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)  and its progeny,

13  including *Brookhill-Wilk, LLC v Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003).

14  Indeed, Judge Martini cited *Texas Digital* no less than eight times and its progeny, *Brookhill-Wilk*,

15  seven times.  *See, e.g.,* Jalali Decl. Ex. 2 at 12-14 (Claim Construction Opinion) ("The Law of Claim

16  Construction").  Under the *Texas Digital* approach, courts accorded undue weight to the so-called

17  "ordinary meaning" of words based on extrinsic evidence such as dictionaries, rather than the intrinsic

18  evidence, *i.e.*, the claims themselves, the specification and prosecution history.  *Phillips v. AWH Corp.*,

19  415 F.3d 1303, 1320 (Fed. Cir. 2005)  (en banc).  The intrinsic evidence was relegated to being merely

20  a check on the presumption that a claim term should be given its ordinary meaning.  *Id.* at 1320-24.

21    After Judge Martini issued his claim construction and summary judgment orders, the Federal

22  Circuit decided *Phillips,* which expressly rejected the claim construction methodology of *Texas*

23  *Digital*.  *Phillips*, 415 F.3d at 1320; *see also Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir.

24  2005) ("[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the

25  meaning of claims in derogation of the 'indisputable public records consisting of the claims, the

26  specification and the prosecution history,' thereby undermining the public notice function of patents.").

27  Thus, *Phillips* ended the dictionary-based approach of *Texas Digital*.  *Phillips*, 415 F.3d at 1320-24.

28

Case No.  5:02-cv-05772 JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556
                                                        1

1    As a result of this change in the law of claim construction, collateral estoppel should not apply

2  to Judge Martini's rulings.  As detailed further below, the law is clear that when there has been a

3  change in controlling legal principles, court decisions based on the now-invalid legal principles are not

4  given collateral estoppel effect.  As the Supreme Court stated in *Commissioner of Internal Revenue v.*

5  *Sunnen*,

6    [the doctrine of collateral estoppel is] designed to prevent repetitious
     lawsuits over matters which have once been decided and which have
7    remained substantially static, factually and legally.  It is not meant to
     create vested rights in decisions that have become obsolete or erroneous
8    with time[.]

9  *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599 (1948).

10    Thus, to give collateral estoppel effect to Judge Martini's rulings – decided under *Texas Digital*

11 – would be contrary to established legal authority and create a vested right in a now-erroneous

12 decision, an action the Supreme Court expressly warned against.  Because Judge Martini's rulings are

13 not entitled to collateral estoppel effect, the parties' Joint Motion to Vacate should be granted.

14 **II.    BACKGROUND**

15    **A.    Procedural History**

16    Infineon filed the present action in late 2002, seeking declarations that several of MOSAID's

17 patents were invalid, unenforceable, and/or not infringed by Infineon.  Jalali Decl. Ex. 3 (Infineon

18 Complaint).  MOSAID counterclaimed against Infineon for infringement of the subject patents.  Jalali

19 Decl. Ex. 4 (MOSAID's Second Amended Answer and Counterclaims).  Subsequently, in 2003, the

20 Judicial Panel on Multidistrict Litigation ("JPML") transferred this action for purposes of pre-trial

21 proceedings to the District of New Jersey before Judge Martini, where it was consolidated with another

22 pending action concerning the same patents.[1]  Jalali Decl. Ex. 5 (JPML Transfer Order).  In March

23 2004, Judge Martini issued his claim construction opinion and order construing fifty two disputed

24 claim terms.  Jalali Decl. Ex. 2 (Claim Construction Opinion); Jalali Decl. Ex. 6 (Claim Construction

25 Order).  Based upon his claim construction, Judge Martini granted-in-part and denied-in-part the

26

27 [1] That action, *MOSAID Technologies Inc. v. Samsung Electronics, et al.*, Case Nos. 01-4340 and 03-4698 (D.N.J.) later settled.

28

1   parties' cross-motions for summary judgment in April 2005.  Jalali Decl. Ex. 7 (Summary Judgment

2   Opinion); Jalali Decl. Ex. 8 (Summary Judgment Order).  The action was subsequently transferred

3   back to the Northern District of California.

4         In October of last year, this Court approved a stipulation certifying Judge Martini's partial

5   summary judgment order as a final judgment pursuant to Federal Rule of Civil Procedure 54(b) and

6   stayed the remainder of the case, so that the parties could appeal Judge Martini's rulings.  Jalali Decl.

7   Ex. 9 (Final Judgment Order).  Judge Martini's rulings were appealed to the Federal Circuit.

8              **1.      The Parties' Joint Motion to Vacate Judge Martini's Rulings**

9         At a status conference in June 2006, MOSAID advised the Court of the parties' intent to seek

10  vacatur of Judge Martini's rulings as part of settlement.  MOSAID Opposition to Motion to Intervene

11  Ex. 1 (Letter of Henry Bunsow to the Court);[2] MOSAID Opposition to Motion to Intervene Ex. 2 (June

12  9, 2006 Hearing Transcript); Jalali Decl. Ex. 10 (Joint Motion to Vacate).  After the Federal Circuit

13  granted the parties' joint motion for remand to this Court on July 20, 2006 (MOSAID Opposition to

14  Motion to Intervene Ex. 3 (Federal Circuit Remand Order)), MOSAID and Infineon filed a joint

15  motion to vacate Judge Martini's rulings on July 24, 2006.  Jalali Decl. Ex. 10 (Joint Motion to

16  Vacate).  Micron's counsel first appeared in the present action during a July 24, 2006 status conference

17  regarding the joint motion to vacate.  MOSAID Opposition to Motion to Intervene Ex. 4 (July 24, 2006

18  Hearing Transcript).  That morning, Micron filed a declaratory judgment action against MOSAID in

19  the Northern District of California requesting a judgment of non-infringement of fourteen MOSAID

20  patents.[3]  MOSAID Opposition to Motion to Intervene Ex. 5 (Micron Complaint).  Micron's

21  declaratory judgment action was later dismissed by the Court for lack of subject matter jurisdiction on

22  October 23, 2006.[4]  Jalali Decl. Ex. 12 (Order Dismissing Micron Action).  Similarly, ProMOS

23  _____

24  [2] "MOSAID Opposition to Motion to Intervene Exhibits" refer to the Birnschein Declaration Exhibits attached to
    MOSAID's opposition to Micron's motion to intervene, which was filed in the present case on August 7, 2006.

25  [3] *Micron Technology, Inc. v. MOSAID Technologies Inc.*, CV 06-4496 (N.D. Cal. 2006).  On August 3, 2006, District

26  Judge Fogel ordered the *Micron v. MOSAID* action related to the present action and reassigned to his court.  MOSAID
    Opposition to Motion to Intervene Ex. 7 (Order Relating Micron and Infineon Actions).

27  [4] On November 17, 2006, Micron filed a Notice of Appeal of the Court's order dismissing the action.  Jalali Decl. Ex. 11
    (Micron Notice of Appeal of Dismissal).

28

1   Technologies filed a declaratory relief action against MOSAID in this Court (Jalali Decl. Ex. 13

2   (ProMOS Complaint)),[5] which ProMOS voluntarily dismissed on November 6, 2006.  Jalali Decl. Ex.

3   14 (Notice of Voluntary Dismissal).

4             **2.**      **Micron and ProMOS's Attempts to Intervene**

5          Both Micron and ProMOS moved to intervene, or in the alternative to appear in the present

6   case as *amicus curiae*, in order to oppose the parties' joint motion to vacate Judge Martini's rulings.

7   Jalali Decl. Ex. 15 (Micron Motion to Intervene); Jalali Decl. Ex. 16 (ProMOS Motion to Intervene).

8   MOSAID in turn filed a patent infringement action against Micron, ProMOS, and Powership

9   Semiconductor Corporation in the Eastern District of Texas on July 25, 2006 (the "Texas Action"),

10  which involved seven of the patents that were at issue in Micron's now-dismissed declaratory

11  judgment action and is now pending before Judge Folsom.[6]  MOSAID Opposition to Motion to

12  Intervene Ex. 8 (MOSAID Complaint).

13         The Court denied the Micron and ProMOS motions to intervene in this action, granted their

14  motions to appear as *amicus curiae*, and deferred consideration of the MOSAID and Infineon joint

15  motion to vacate pending further briefing on the issue of whether Judge Martini's rulings are entitled to

16  collateral estoppel effect.  Jalali Decl. Ex. 1 at 6 (Order Denying Motions to Intervene).  In the order,

17  the Court noted that strictly speaking, the determination as to the collateral estoppel effect of Judge

18  Martini's rulings will be made by the Eastern District of Texas in the course of MOSAID's

19  infringement actions against Micron and ProMOS, rather than in the present action.  *Id.* at 6 n.1.  The

20  Court observed that whether Judge Martini's rulings are likely to affect the Eastern District of Texas

21  action is "directly relevant to the issue of whether the vacatur sought by the parties in the instant case

22  would be fair and just."  *Id.*  On November 17, 2006, Micron filed a Notice of Appeal of the Court's

23  denial of its motion to intervene.  Jalali Decl. Ex. 17 (Notice of Appeal of Ruling on Motion to

24  Intervene).

25

26  _____

27  [5] *ProMOS Technologies Inc. v. MOSAID Technologies, Inc.*, CV 06-05788 JF (RS) (N.D. Cal. 2006).

28  [6] *MOSAID Technologies v. Micron Technology, et al.*, 2-06CV-302 DF (E.D. Tex. 2006).

Case No.  5:02-cv-05772-JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556

4

III.   **ARGUMENT**

   A.   **Judge Martini's Orders Were Based Upon *Texas Digital* and Its Progeny.**

   Judge Martini's framework for construing claim terms was based upon the later rejected methodology of *Texas Digital*.  Judge Martini's discussion of the "The Law of Claim Construction" shows that he followed *Texas Digital* in construing claim terms by first determining their ordinary meaning:

> Because the words used in the claims are viewed from the perspective of one of ordinary skill in the art, the words bear a "heavy presumption" that they take on their ordinary meaning, unless the patentee evinced an intent to deviate from the meaning.

Jalali Decl. Ex. 2 at 12 (Claim Construction Opinion) (citing *Texas Digital*).

   Judge Martini used intrinsic evidence only to check if it rebutted the presumptive meaning, *i.e.*, the ordinary meaning:

> The specification and prosecution history must always be examined as part of the claim construction analysis to determine whether the presumption of ordinary meaning is rebutted.

*Id.* at 13.  Consistent with *Texas Digital*, Judge Martini held that the presumption in favor of the ordinary meaning will be overcome only "where the patentee, acting as his or her own lexicographer, has clearly set forth a definition different from its ordinary meaning" or "a patentee disclaims or disavows claim scope by using words or expressions of manifest exclusion or restriction," among others.  *Id.* at 12.  Judge Martini cited to *Texas Digital* eight times and its progeny, *Brookhill-Wilk*, seven times.  *See, e.g., id.* at 12-14.

   Judge Martini's reliance on *Texas Digital* is further apparent from his reference to no fewer than eight dictionaries to construe the claims:

   • American Heritage Dictionary (Jalali Decl. Ex. 2 at 56 (Claim Construction Opinion));

   • IEEE Standard Dictionary of Electrical and Electronic Terms (*id.* at 18, 40, 47);

   • The Oxford English Dictionary (*id.* at 33);

   • The Random House Dictionary of the English Language (*id.* at 33, 56);

   • The Radio Shack Dictionary of Electronics (*id.* at 17-18, 43);

   • Webster's New World Dictionary (*id.* at 30);

**HOWREY LLP**
Case No.  5:02-cv-05772-JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556
5

1        •        Webster's Third New International Dictionary (*id.* at 30, 33); and

2        •        Webster's Ninth New Collegiate Dictionary (*id.* at 56).

3        Judge Martini's application of the *Texas Digital* dictionary-based approach is further

4   exemplified by his analysis of the claim terms "connected" and "coupled:"

5        The analysis begins by ascertaining the ordinary meaning of the disputed terms. Both
         parties submit dictionary definitions that allegedly support their proposed claim
6        construction. . . . Defendants submit the following dictionary definitions for "connected:"
         "united, joined, or linked . . . or linked together."

7

8   Jalali Decl. Ex. 2 at 32-33 (Claim Construction Opinion).

9        . . . Accordingly, based on the ordinary meaning and plain language of the patent claims,
         the terms "connected" and "coupled" shall be construed as meaning "directly united,
10       joined, or linked together."

11  *Id.* at 32.

12       In compliance with *Texas Digital*, Judge Martini relegated the intrinsic evidence to a mere

13  check on the so-called "ordinary meaning" of claim terms:

14       •        "The intrinsic evidence does not alter the ordinary meaning of 'directly.'"  Jalali Decl.
                  Ex. 2 at 31 (Claim Construction Opinion).
15
         •        "Next, one looks to the intrinsic evidence to see if 'connected' takes on a meaning
16                different than its ordinary meaning."  *Id.* at 34.

17       •        "The remainder of the intrinsic evidence does nothing to evince a different
                  understanding of the term 'connected.'"  *Id.* at 36.
18
         •        "Next, the Court turns to the claim language to determine whether the ordinary meaning
19                is consistent with the claims."  *Id.* at 41.

20       •        "Accordingly, the specification does not limit the ordinary meaning of 'word line driver
                  circuit' to the embodiment set forth in Figure 1 of the Lines patents."  *Id.* at 42.
21
         •        "Accordingly, the patentees did not limit the meaning of 'correct level' in the Foss
22                specifications and, thus, the ordinary and plain meaning governs."  *Id.* at 57.

23       *Texas Digital* controlled not only Judge Martini's claim constructions, but also his opinion and

24  order on summary judgment.  For instance, in construing the term "latching level shifter," the court

25  began "by trying to determine the ordinary meaning of the claim language."  Jalali Decl. Ex. 2 at 43

26  (Claim Construction Opinion).  The court construed the terms "latching level shifter" and "level shifter

27

28

Case No.  5:02-cv-05772 JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556

6

1   with latching" by using a portion of a dictionary definition for "latch" from the "Radio Shack

2   Dictionary."[7]  *Id.* at 43.[8]  In its opinion and order on summary judgment of the so-called "Lines

3   patents" (U.S. Patent Nos. 5,822,253; 5,751,643; and 6,278,640), the court then found non-

4   infringement of the three Lines patents based upon its construction of the term "latching level shifter."[9]

5   Jalali Decl. Ex. 8 at 2 (Summary Judgment Order); Jalali Decl. Ex. 7 at 10-14 (Summary Judgment

6   Opinion).  Had *Phillips* been the law, Judge Martini presumably would have recognized (1) that

7   intrinsic evidence is the most important evidence of the meaning of a term, (2) that intrinsic evidence

8   should always be considered first, (3) that here, even the claims themselves elaborate on the meaning

9   of the term "level shifter with latching" (s*ee, e.g.,* Jalali Decl. Ex. 18 at claim 14 (U.S Patent

10  5,751,643)),[10] and (4) that extrinsic evidence such as dictionaries are given no presumption of

11  correctness over the claims, specification, or prosecution history.

12       **B.     *Phillips* Expressly Rejected the Claim Construction Methodology of *Texas Digital.***

13            After Judge Martini's rulings, the Federal Circuit issued its opinion in *Phillips.  Phillips v.*

14  *AWH Corp.*, 415 F.3d 1303 (Fed. Cir. July 12, 2005) (en banc).  *Phillips* expressly <u>rejected</u> the claim

15  construction approach of *Texas Digital* relied on by Judge Martini:

16            Although the concern expressed by the court in Texas Digital was valid, the methodology it
             adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and
17           encyclopedias and too little on intrinsic sources, in particular the specification and prosecution
             history. While the court noted that the specification must be consulted in every case, it
18           suggested a methodology for claim interpretation in which the specification should be
             consulted only after a determination is made, whether based on a dictionary, treatise, or other
19           source, as to the ordinary meaning or meanings of the claim term in dispute. Even then,
             recourse to the specification is limited to determining whether the specification excludes one of
20           the meanings derived from the dictionary, whether the presumption in favor of the dictionary
             definition of the claim term has been overcome by 'an explicit definition of the term different
21           from its ordinary meaning,' or whether the invent or "has disavowed or disclaimed scope of
             coverage, by using words or expressions of manifest exclusion or restriction, representing a
22           clear disavowal of claim scope." *308 F.3d at 1204.*  In effect, the Texas Digital approach limits

23  _____

24  [7] *Radio Shack Dict. of Electronics* (5th ed. 1977).

    [8] The *Radio Shack Dictionary of Electronics* defined "latch" as a "feedback loop used in a symmetrical digital circuit (such
25  as a flip-flop) to retain a state."  Jalali Decl. Ex. 2 at 43-45 (Claim Construction Opinion).

26  [9] The court's construction and reasons for construction of "latching level shifter" were further expounded upon in the
    summary judgment opinion.  Jalali Decl. Ex. 7 at 10-14 (Summary Judgment Opinion).

27  [10] Claim 14 refers to "a level shifter with latching. . ., the level shifter comprising. . . ."  Jalali Decl. Ex. 18 at col. 11:30-33
    (U.S. Patent 5,751,643).

28

1   the role of the specification in claim construction to serving as a check on the dictionary
    meaning of a claim term if the specification requires the court to conclude that fewer than all
2   the dictionary definitions apply, or if the specification contains a sufficiently specific
    alternative definition or disavowal. [citations omitted]. ***That approach, in our view,***
3   ***improperly restricts the role of the specification in claim construction***.

4   *Phillips,* 415 F.3d at 1320 (emphasis added).[11]

5       **C.      Collateral Estoppel Does Not Apply Where There Has Been an Intervening**
                **Change in Law.**
6
            **1.      General Principles of Collateral Estoppel.**
7

8           Collateral estoppel forecloses the relitigation of an issue where that identical issue already has

9   been litigated and decided in a prior suit.  *Bayer AG v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir.

10  2002).  Trial courts have broad discretion to determine when collateral estoppel should be applied.

11  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).  "[N]o one set of facts, no one collection of

12  words or phrases, will provide an automatic formula for proper rulings on estoppel pleas.  In the end,

13  decision will necessarily rest on the trial courts' sense of justice and equity."  *Blonder-Tongue Labs.,*

14  *Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333-34 (1971).  Importantly, ***the burden is on the party***

15  ***asserting estoppel*** to prove the requirements of collateral estoppel are met and show "with clarity and

16  certainty what was determined by the prior judgment."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318,

17  1320 (9th Cir. 1992)  (emphasis added); *see also Nichols v. Anderson*, 788 F.2d 1140, 1141 (5th Cir.

18  1986).

19          **2.      Fifth Circuit Law Governs Whether Collateral Estoppel Applies to Judge**
                **Martini's Rulings.**
20

21          This Court's decision on the motion to vacate is not a matter unique to patent law.  Thus, it is

22  governed by the law of the appropriate regional circuit - the Ninth Circuit.  *See Polaroid Corp. v.*

23  *Eastman Kodak Co.*, 867 F.2d 1415, 1419 n.11 (Fed. Cir. 1989) (noting that regional circuit law

24  applies to a motion to vacate based on an alleged disqualification of a trial judge); *see also Berger v.*

25

26

_____

27  [11] This Court has also recognized that "[t]here's clearly a change in the law with the decision in Phillips."  Jalali Ex. 19 at
    7:2-3. (October 20, 2006 Hearing Transcript).
28

Case No.  5:02-cv-05772 JF                                8
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556

1   *Rossignol Ski Co.*, No. C 05-2523 CRB, 2006 WL 2038324 (N.D. Cal. July 17, 2006) (applying Ninth

2   Circuit law in deciding a Rule 60(b) motion to vacate a judgment of noninfringement).

3        As this Court noted, however, "the determination as to the collateral estoppel effect of Judge

4   Martini's rulings will be made in the course of MOSAID's infringement actions against Micron and

5   ProMOS" in the Eastern District of Texas.  Jalali Decl. Ex. 1 at 6 n.1 (Order Denying Motions to

6   Intervene).  Because the application of collateral estoppel is not a matter within the exclusive

7   jurisdiction of the Federal Circuit, the Federal Circuit applies the law of the regional circuit in which

8   the district court sits.  *Bayer*, 279 F.3d at 1345.  Consequently, Fifth Circuit law governs whether the

9   doctrine of collateral estoppel should be applied in the Eastern District of Texas.  Even if Ninth Circuit

10  law were controlling on the issue of collateral estoppel, as detailed below, the collateral estoppel

11  analysis under the Ninth and Fifth Circuit are similar and, under either, collateral estoppel should not

12  be applied in view of the change in controlling law present in this action.

13           **3.    Under the Fifth Circuit or Ninth Circuit, Collateral Estoppel Does Not
                      Apply Where There Has Been A Change in Controlling Legal Principles.**

14

15       In the Fifth Circuit, collateral estoppel is only appropriate if:

16              (1) the issue under consideration in a subsequent action is identical to the
                issue litigated in a prior action;
17              (2) the issue was fully and vigorously litigated in the prior action;
                (3) the issue was necessary to support the judgment in the prior case; and
18              (4) there are no special circumstances that would render preclusion
                inappropriate or <u>unfair</u>.

19

20  *See United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994) (emphasis added).  "Collateral

21  estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to

22  assess them are the same in both proceedings."  *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415,

23  1422 (5th Cir. 1995).  Thus, in the Fifth Circuit, "collateral estoppel applies to pure questions of law

24  ***only when there has been no change in controlling legal principles***."  *Petro-Hunt, LLC v. United*

25  *States*, 365 F.3d 385, 397 (5th Cir. 2004) (internal quotes omitted) (emphasis added); *see also*

26  *Mendelovitz v. Adolf Coors Co.*, 693 F.2d 570, 579 (5th Cir. 1982) (finding that application of

27  collateral estoppel would be unfair because of change in legal standard).

28

1    Similarly, in the Ninth Circuit, collateral estoppel can apply only where there has been no

2    change in controlling legal principles.  Three elements must be met for collateral estoppel to apply:

3              (1) the issue at stake must be identical to the one alleged in the prior
               litigation;
4              (2) the issue must have been actually litigated in the prior litigation; and
               (3) the determination of the issue in the prior litigation must have been a
5              critical and necessary part of the judgment in the earlier action.

6    *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

7              However, in the Ninth Circuit collateral estoppel is not applied when "a new determination is

8    warranted in order to take account of an intervening change in the applicable legal context or otherwise

9    to avoid <u>inequitable</u> administration of the laws."[12]  *Segal v. Am.  Tel. & Tel. Co.,* 606 F.2d 842, 845

10   (9th Cir. 1979) (quoting the Restatement (Second) of Judgments § 68.1 (1973)) (emphasis added).[13]

11   The Ninth Circuit has stated:

12             Even where an issue has been actually litigated and determined by a
               valid and final judgment, and the determination is essential to the
13             judgment, relitigation of the issue in a subsequent action between the
               parties is generally ***not precluded where there has been an intervening***
14             ***change in the governing law*** or where the burden of persuasion has
               shifted from the time of the first action to the second.

15

16   *Artukovic v. Immigration & Naturalization Serv.*, 693 F.2d 894, 898 (9th Cir. 1982) (emphasis added).

17   Furthermore, collateral estoppel "has never been applied to issues of law with the same rigor as to

18   issues of fact."  *Segal*, 606 F.2d at 845 (citing Restatement (Second) of Judgments § 68 (1973)).  Thus,

19   under either the Fifth Circuit or Ninth Circuit law, an intervening change in controlling legal

20   principles, as occurred here, precludes the application of collateral estoppel.

21

22

23

24

---

25   [12] Because the law is clear that collateral estoppel does not apply where there has been a change in controlling legal
     principles, as here, MOSAID does not address whether the individual collateral estoppel requirements have been met in the
26   present action.  However, MOSAID in no way concedes that the elements of collateral estoppel are satisfied in the present
     case under either Fifth Circuit or Ninth Circuit law.
27

28   [13] Restatement (Second) of Judgments § 68 (1972) is now Restatement (Second) of Judgments § 28 (1982).

1    **D.    After *Phillips,* It Would Be Improper and Unfair to Give Collateral Estoppel Effect to Judge Martini's *Texas Digital* –based Rulings.**

2

3    As detailed above*,* the Federal Circuit in *Phillips* expressly rejected the claim construction

4    methodology of *Texas Digital* relied upon by Judge Martini.  *Phillips*, 415 F.3d at 1320.  As also

5    discussed above, under either the Fifth or Ninth Circuit laws, the change in controlling legal principles

6    precludes the application of collateral estoppel to Judge Martini's rulings.  *Petro-Hunt*, 365 F.3d at

7    399; *Segal*, 606 F.2d at 845.  To find otherwise would create a "vested right" in a decision that has

8    become "obsolete or erroneous with time," *Sunnen*, 333 U.S. at 599, and would result in an

9    "inequitable administration of the laws."  *Segal*, 606 F.2d at 845.  In effect, applying collateral

10   estoppel to Judge Martini's rulings would deny MOSAID a "full and fair opportunity to litigate" the

11   construction of the patent claims under the proper *Phillips* standard.  *Mendelovitz*, 693 F.2d at 579.  If

12   the orders are not vacated and judicial estoppel is found against MOSAID, MOSAID will be saddled

13   with claim construction rulings that are clearly erroneous in view of *Phillips*.

14   In contrast, there will be no real harm to Micron or ProMOS if the orders are vacated.  Micron

15   and ProMOS will of course have an opportunity to advance its proposed claim construction positions

16   to the court, even those adopted by the New Jersey court.  Indeed, Micron and ProMOS may still cite

17   to the New Jersey court's orders and opinions as authority if it chooses to do so.

18   Consequently, because Judge Martini's rulings are not entitled to collateral estoppel effect, the

19   parties' Joint Motion to Vacate should be granted.

20

21

22

23

24

25   / / /

26   / / /

27   / / /

28

**HOWREY LLP**

Case No.  5:02-cv-05772 JF
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556

1    IV.    CONCLUSION

2           For the foregoing reasons, MOSAID respectfully requests that the Court grant the parties' Joint

3    Motion to Vacate.

4

5    Dated:  December 1, 2006              Respectfully submitted,

6                                         HOWREY LLP

7

8                                         By:  _____/s/ Scott Wales_____
9                                                        Scott Wales

10                                        Attorneys for Defendant
                                          MOSAID TECHNOLOGIES
11                                        INCORPORATED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  5:02-cv-05772 JF                                  12
DEFT'S MEMORANDUM OF POINTS AND AUTH. ON THE
COLLATERAL ESTOPPEL EFFECT OF JUDGE MARTINI'S
RULINGS
DM_US\8409556