1 ROBERT E. FREITAS (State Bar No. 77181)
MICHAEL C. SPILLNER (State Bar No. 205785)
2 ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
3 Menlo Park, CA 94025
Telephone: 650-614-7400
4 Facsimile: 650-614-7401
E-mail: rfreitas@orrick.com, mspillner@orrick.com
5

6 JONATHAN M. JAMES
CHRISTOPHER N. SCHULZ
7 DAVID M. LASPALUTO (State Bar No. 211276)
PERKINS COIE BROWN & BAIN P.A.
8 2901 North Central Avenue
Post Office Box 400
9 Phoenix, AZ 85001-0400
Telephone: 602-351-8000
10 Facsimile: 602-648-7000
E-mail: jjames@perkinscoie.com,
11 cschultz@perkinscoie.com,
dlaspaluto@perkinscoie.com
12

Attorneys for *Amicus Curiae*
13 Micron Technology, Inc.

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                          SAN JOSE DIVISION

17

18 INFINEON TECHNOLOGIES NORTH            Case No.  C 02-5772 JF (RS)
19 AMERICA CORP.,
                                          **MICRON TECHNOLOGY, INC.'S**
20                 Plaintiff,             **MEMORANDUM IN RESPONSE TO**
                                          **THE COURT'S OCTOBER 23, 2006**
21        v.                              **ORDER**

22 MOSAID TECHNOLOGIES, INC.,             Date:      December 22, 2006
                                          Time:      9:00 AM
23                 Defendant.
                                          The Honorable Jeremy Fogel
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND .................................................................................................2

II.   COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S CLAIM
      CONSTRUCTION ORDER .............................................................................3

   A.   The "Intervening Change In Law" Exception Does Not Apply ...........................3

      1.   *Phillips* Was Not An "Intervening" Change In The Law ..........................4

      2.   MOSAID Cannot Establish Any *Phillips*-Based "Equities." ...................5

      3.   The Changes In The Law Resulting From *Phillips* Were Subtle,
           And Did Not Represent A "Significant Change In The Legal
           Climate." ..............................................................................................6

      4.   Judge Martini's *Markman* Rulings Are Consistent With *Phillips*. ............7

         a.   *Phillips* Is Not Relevant To The Claim Constructions Made
              Without Reference To Dictionaries ...............................................8

         b.   Judge Martini's Use Of Dictionaries Was Consistent With
              *Phillips* ......................................................................................8

         c.   MOSAID's Federal Circuit Brief Confirms That *Phillips*
              Has No Significance To This Case ...............................................10

   B.   All Elements Of Collateral Estoppel Are Satisfied ...........................................11

      1.   Same Issues .........................................................................................12

      2.   The Issues Were Actually Litigated .......................................................14

      3.   The Rulings Were Necessary ................................................................14

      4.   The Rulings Are "Final." ......................................................................15

      5.   MOSAID Had A "Full And Fair Opportunity" To Litigate The
           Issues ..................................................................................................16

   C.   Courts Frequently Apply Collateral Estoppel To *Markman* Orders.....................16

   D.   Cases That Have Declined To Apply Collateral Estoppel To Claim
        Construction Orders Are Distinguishable ........................................................18

**TABLE OF CONTENTS**
(continued)

Page

III.   COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S SUMMARY
JUDGMENT ORDER OF NON-INFRINGEMENT AS TO ANY "IDENTICAL
ISSUES." ...................................................................................................................19

    A.   The Actually Litigated, Necessity, Finality, and Full and Fair Opportunity
Elements Are All Satisfied ..................................................................................19

    B.   Identical Issues...................................................................................................20

    C.   The "Intervening Change In Law" Exception Does Not Apply To
Infringement Or Other Questions Of Fact...........................................................22

IV.   COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S SUMMARY
JUDGMENT ORDER LIMITING MOSAID'S DAMAGES ........................................23

V.   VACATUR IS INAPPROPRIATE REGARDLESS OF WHETHER
COLLATERAL ESTOPPEL APPLIES .........................................................................23

VI.   CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

Page

*Abbott Labs.* v. *Impax Labs., Inc.*,
 2003 WL 1563426 (N.D. Ill. 2003)..................................................................8, 17

*Abbott Labs.* v. *Dey, L.P.*,
 110 F. Supp. 2d 667 (N.D. Ill. 2000)................................................................17, 18

*Agfa Corp.* v. *Creo Prods. Inc.*,
 451 F.3d 1366 (Fed. Cir. 2006)...............................................................................10

*Allen-Bradley Co., LLC* v. *Kollmorgen Corp.*,
 199 F.R.D. 316 (E.D. Wis. 2001)............................................................................24

*American Games, Inc.* v. *Trade Prods., Inc.*,
 142 F.3d 1164 (9th Cir. 1998)..................................................................................24

*American Ironworks & Erectors, Inc.* v. *North Am. Constr. Corp.*,
 248 F.3d 892 (9th Cir. 2001)....................................................................................15

*Applied Med. Res. Corp.* v. *U.S. Surgical Corp.*,
 435 F.3d 1356 (Fed. Cir. 2006).................................................................................11

*Asyst Techs., Inc.* v. *Empak, Inc.*,
 2006 WL 3302476 (N.D. Cal. 2006).........................................................................23

*Atmel Corp.* v. *Silicon Storage Tech., Inc.*,
 2001 U.S. Dist. LEXIS 25641 (N.D. Cal. 2001),
 *aff'd*, 76 Fed. Appx. 298 (Fed. Cir. 2003) ..............................................8, 16, 17

*Atofina* v. *Great Lakes Chem. Corp.*,
 441 F.3d 991 (Fed. Cir. 2006)....................................................................................9

*Bates* v. *Union Oil Co. of Cal.*,
 944 F.2d 647 (9th Cir. 1991) ............................................................................12, 16

*Blonder-Tongue Lab., Inc.* v. *University of Ill. Found.*,
 402 U.S. 313 (1971) ..................................................................................................11

*Del Mar Avionics, Inc.* v. *Quinton Instrument Co.*,
 836 F.2d 1320 (Fed. Cir. 1987)..................................................................................17

*Dilley* v. *Gunn*,
 64 F.3d 1365 (9th Cir. 1995) .....................................................................................23

*Disimone* v. *Browner*,
 121 F.3d 1262 (9th Cir. 1997) .....................................................................................4

*Dynacore Holdings Corp.* v. *U.S. Philips Corp.*,
 363 F.3d 1263 (Fed. Cir. 2004)...................................................................................17

**TABLE OF AUTHORITIES**
**(continued)**

Page

*EEOC* v. *American Airlines, Inc.*,
    48 F.3d 164 (5th Cir. 1995) ..................................................................................7

*Ernest W. Hahn, Inc.* v. *Codding*,
    1981 WL. 2191 (N.D. Cal. 1981)...................................................................4, 8

*Free Motion Fitness, Inc.* v. *Cybex Int'l, Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005).........................................................................9

*Hartley* v. *Mentor Corp.*,
    869 F.2d 1469 (Fed. Cir. 1989).......................................................................4, 5

*Hasbrouck* v. *Texaco, Inc.*,
    663 F.2d 930 (9th Cir. 1981) ...........................................................................24

*Hemphill* v. *Proctor & Gamble Co.*,
    85 Fed. Appx. 765, 767 (Fed. Cir. 2004)........................................................17

*Hilgraeve Corp.* v. *Symantec Corp.*,
    90 F. Supp. 2d 850 (E.D. Mich. 2000) ............................................................17

*Home Diagnostics, Inc.* v. *LifeScan, Inc.*,
    120 F. Supp. 2d 864 (N.D. Cal. 2000)..............................................................21

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994)......................................................................7, 17

*Graco Children's Prods., Inc.* v. *Regalo Int'l*,
    77 F. Supp. 2d 660 (E.D. Pa. 1999) .................................................................18

*Louisville Bedding Co.* v. *Perfect Fit Indus., Inc.*,
    186 F. Supp. 2d 752 (W.D. Ky. 2001),
    *vacated on other grounds*, 2001 WL 34010716 (W.D. Ky. 2001) ......................17

*Louisville Bedding Co.* v. *Pillowtex Corp.*,
    455 F.3d 1377 (Fed. Cir. 2006).........................................................................24

*Luben Indus., Inc.* v. *United States*,
    707 F.2d 1037 (9th Cir. 1983) ...........................................................................12

*Markman* v. *Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ...........................................................................................8

*Maxwell* v. *Angel-Etts of Cal.*,
    2000 WL. 34016198 (C.D. Cal. 2000) ..............................................................17

*Molinaro* v. *Fannon/Courier Corp.*,
    745 F.2d 651 (Fed. Cir. 1984)............................................................................16

*Monsanto Co.* v. *Bayer Bioscience N.V.*,
    363 F.3d 1235 (Fed. Cir. 2004)..........................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Mycogen Plant Sci., Inc.,*
   252 F.3d at 1311.................................................................................................17, 18

*National Union Fire Ins. Co.* v. *Seafirst Corp.,*
   891 F.2d 762 (9th Cir. 1989) .......................................................................2, 3, 25

*Nichols & Co., Inc.* v. *United States,*
   586 F.2d 826 (Cust. & Pat. App. 1978)................................................................7

*Old Town Canoe Co.* v. *Confluence Holdings Corp.,*
   448 F.3d 1309 (Fed. Cir. 2006)............................................................................10

*Overhead Door Corp.* v. *Whiting Roll-up Door Mfg. Corp.,*
   215 U.S.P.Q. 428 (W.D.N.Y. 1981).............................................................17, 21

*Parklane Hosiery Co.* v. *Shore,*
   439 U.S. 322 (1979) ..............................................................................................11

*Pfaff* v. *Wells Elecs., Inc.,*
   5 F.3d 514 (Fed. Cir. 1993) ..................................................................................16

*Phillips* v. *AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005).............................. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 20

*Phonometrics, Inc.* v. *Northern Telecom Inc.,*
   133 F.3d 1459 (Fed. Cir. 1998) ............................................................................18

*Pitney Bowes, Inc.* v. *Hewlett-Packard Co.,*
   182 F.3d 1298 (Fed. Cir. 1999) ............................................................................23

*RF Delaware, Inc.* v. *Pacific Keystone Techs., Inc.,*
   326 F.3d 1255 (Fed. Cir. 2003) ............................................................................18

*Ringsby Truck Lines, Inc.* v. *Western Conference of Teamsters,*
   686 F.2d 720 (9th Cir. 1982) .........................................................5, 23, 24, 25

*Robi* v. *Five Platters, Inc.,*
   838 F.2d 318 (9th Cir. 1988) .......................................................................12, 16

*Security People, Inc.* v. *Medeco Security Locks, Inc.,*
   59 F. Supp. 2d 1040 (N.D. Cal. 1999)...................................11, 12, 16, 17

*State of Idaho Potato Comm'n* v. *G & T Terminal Packaging, Inc.,*
   425 F.3d 708 (9th Cir. 2005) ................................................................................11

*Steen* v. *John Hancock Mut. Life Ins. Co.,*
   106 F.3d 904 (9th Cir. 1997) .........................................................3, 6, 11, 19, 22

*Stevenson* v. *Sears, Roebuck & Co.,*
   713 F.2d 705 (Fed. Cir. 1983)..............................................................................12

MICRON'S MEMORANDUM RE 10/23/06 ORDER
C 02-5772 JF (RS)

**TABLE OF AUTHORITIES**
(continued)

Page

*TM Patents, L.P.* v. *International Bus. Machs. Corp.*,
  72 F. Supp. 2d 370 (S.D.N.Y. 1999) ............................................................................ 14, 17

*TP Labs., Inc.* v. *Professional Positioners, Inc.*,
  724 F.2d 965 (1984) .......................................................................................................... 4

*Terlep* v. *Brinkmann Corp.*,
  418 F.3d 1379 (Fed. Cir. 2005) ......................................................................................... 9

*Texas Digital Sys., Inc.* v. *Telegenix, Inc.*,
  308 F.3d 1193 (Fed. Cir. 2002) ................................................................................ 7, 8, 11

*Third Wave Tech., Inc.* v. *Stratagene Corp.*,
  381 F. Supp. 2d 891 (W.D. Wis. 2005) ........................................................................... 18

*Trevino* v. *Gates*,
  99 F.3d 911 (9th Cir. 1996) ............................................................................................. 11

*U.S. Bancorp Mortgage Co.* v. *Bonner Mall*,
  513 U.S. 18 (1994) ........................................................ 2, 5, 6, 12, 13, 23, 24, 25

*Valero Terrestrial Corp.* v. *Paige*,
  211 F.3d 112 (4th Cir. 2000) ........................................................................................... 24

*Warner-Lambert Co.* v. *Teva Pharms. USA, Inc.*,
  418 F.3d 1326 (Fed. Cir. 2005) ....................................................................................... 20

**STATUTES**

35 U.S.C. § 287(a) ................................................................................................................. 23

**RULES**

Fed. R. Civ. P. 11 .................................................................................................................. 22

Fed. R. Civ. P. 54(b) ....................................................................................... 3, 5, 15, 16, 19

N.D. Cal. Patent L.R. 3-1 ...................................................................................................... 22

E.D. Tex. Patent L.R. 3-1 ...................................................................................................... 22

**MISCELLANEOUS**

David H. Bluestone, *Post-Phillips: Will the Trial Courts Receive More Deference in Patent Cases?*, 20 NO. 5 Corp. Couns. 5 (Oct. 2005) ........................................................... 7

Holly L. Bonar, *A Commentary on the Aftermath of Phillips v. AWH Corp.*, 88 J. Pat. & Trademark Off. Soc'y 513, 518 (2006) .................................................................................. 7

1    Pursuant to the Court's Order dated October 23, 2006, *amicus curiae* Micron Technology,

2  Inc. ("Micron") respectfully submits this memorandum concerning the collateral estoppel effect

3  of prior rulings in this action by the Honorable William J. Martini of the District of New Jersey.

4    Judge Martini's claim construction and summary judgment rulings easily satisfy all of the

5  requirements for collateral estoppel, as reflected in the cases discussed below.  Plaintiff MOSAID

6  Technologies, Inc.'s ("MOSAID") apparent attempt to avoid the ordinary consequences of

7  collateral estoppel on the basis of a "change in law" following *Phillips* v. *AWH Corporation*, 415

8  F.3d 1303 (Fed. Cir. 2005) (en banc), has no basis.

9    •    The change in law exception cannot apply here because *Phillips* does not represent

10  an "intervening" change in the law.  The change in law exception applies only to "intervening"

11  changes, not to legal developments that take place before the entry of judgment in the trial court

12  or during the pendency of a direct appeal.  *Phillips* was decided after Judge Martini's *Markman*

13  and summary judgment rulings, but before MOSAID sought, and the parties stipulated to, the

14  entry of judgment.  MOSAID thus had the opportunity to raise any *Phillips* issues it chose, both

15  in district court and on a direct appeal.  MOSAID did not seek reconsideration on the basis of

16  *Phillips*, and it did not prosecute the post-*Phillips* appeal it noticed from this Court's judgment.

17    •    Judge Martini's claim constructions are consistent with *Phillips*.  Most of the claim

18  constructions adverse to MOSAID raise no conceivable *Phillips* issues.  MOSAID cannot sustain

19  its burden to prove that different results would have been reached had Judge Martini been asked

20  to reconsider his rulings in the light of *Phillips*, or had MOSAID prosecuted its appeal.

21    •    Assuming MOSAID can demonstrate that one or more claim constructions was

22  inconsistent with *Phillips*, the portions of the order that are consistent with *Phillips* are still

23  entitled to collateral estoppel effect.  The change in law exception never justifies the denial of

24  preclusive effect to an order or a part of an order that is not based on a rejected rule of law.  Any

25  "change in law" analysis must proceed term-by-term, and preclusive effect is due each claim

26  construction not shown by MOSAID to be inconsistent with the law as it exists post-*Phillips*.

27    •    MOSAID also cannot establish that it is entitled to relief on the basis of a change

28  in the law because MOSAID's abandonment of its appeal of the pre-judgment *Markman* and

- 1 -

1    infringement rulings is inconsistent with the equity MOSAID must demonstrate to obtain vacatur.

2    As the Supreme Court has noted, MOSAID's "voluntary forfeiture of review constitutes a failure

3    of equity" that is inconsistent with affording it an escape from the ordinary rules of collateral

4    estoppel. *U.S. Bancorp Mortgage Co.* v. *Bonner Mall*, 513 U.S. 18, 26 (1994).

5            •       The change in law exception does not apply to factual questions, and thus does not

6    prevent the application of collateral estoppel to the summary judgment determination that the

7    accused Infineon products do not infringe the MOSAID patents in suit.

8            Because MOSAID cannot show that the "change in law" exception precludes the

9    application of collateral estoppel, vacatur is inappropriate.

10           MOSAID's failure of equity also precludes its attempt to secure vacatur of Judge

11   Martini's orders, issued at the cost of very substantial judicial and party resources, on a more

12   general level.  The Ninth Circuit has explicitly recognized that even the possibility that collateral

13   estoppel applies is sufficient to support the denial of vacatur.  *National Union Fire Ins. Co.* v.

14   *Seafirst Corp.*, 891 F.2d 762, 765-69 (9th Cir. 1989) (the "possible, although uncertain status of

15   any preclusive effect" was sufficient to deny vacatur).  Under the law as set forth by the Supreme

16   Court in *U.S. Bancorp* and by the Ninth Circuit, MOSAID cannot show it is entitled to vacatur of

17   these important orders entered after MOSAID was afforded a full and fair opportunity to litigate.

18   **I.        BACKGROUND.**

19           In this action and a related action in New Jersey, MOSAID sued Infineon and Samsung

20   for infringement of seven Dynamic Random Access Memory ("DRAM") patents.  *See* Micron's

21   Request for Judicial Notice ("RJN") Exs. A, B.  The cases were consolidated before Judge

22   Martini for pretrial purposes.

23           On March 22, 2004, Judge Martini issued a comprehensive, 69-page claim construction

24   opinion, following extensive briefing and two days of *Markman* hearings.  *Id.* Ex. C (*Markman*

25   Opinion), Ex. D (*Markman* Order).  The rulings were unfavorable to MOSAID, which

26   unsuccessfully sought reconsideration.  *Id.* Exs. E, F, G.  MOSAID acknowledged that the Court

27   "invested substantial time and effort in claim construction in this case."  *Id.* Ex. E, at 1.

28

1     On April 1, 2005, Judge Martini issued a published, 59-page summary judgment opinion

2  following a hearing on the parties' cross-motions, finding that Infineon did not infringe various

3  MOSAID patents.  *Id*. Ex. H (Summary Judgment Opinion), Ex. I (Summary Judgment Order).

4  Judge Martini then transferred the case back to this district.

5     On August 29, 2005, MOSAID sought entry of final judgment based on the claim

6  construction and summary judgment rulings, pursuant to Federal Rule of Civil Procedure 54(b).

7  *Id*. Exs. J, K.  The parties eventually stipulated to the entry of judgment, this Court entered

8  judgment, *id*. Exs. L, M, N, and MOSAID appealed.  *Id*. Ex. O.  MOSAID filed its opening brief

9  on appeal.  Ex. P.  During the pendency of the appeal, MOSAID and Infineon settled.  Pursuant to

10  the settlement, MOSAID and Infineon then jointly moved this Court to vacate Judge Martini's

11  claim construction and summary judgment rulings.

12     Meanwhile, MOSAID filed a patent infringement action against Micron in the Eastern

13  District of Texas, alleging that Micron infringes some of the same patents it asserted against

14  Infineon.  *Id*. Exs. Q, R, S.  Micron has opposed the motion to vacate due to the potential

15  collateral estoppel effects Judge Martini's rulings could have in that action or other actions.

16
17  **II.     COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S CLAIM
         CONSTRUCTION ORDER.**

18        **A.     The "Intervening Change In Law" Exception Does Not Apply.**

19     "[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of

20  law and issues of fact if those issues were conclusively determined in a prior action." *Steen* v.

21  *John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997) (citation omitted).  If an issue

22  of law is involved, it may be possible to avoid the ordinary operation of collateral estoppel if

23  there has been a substantial intervening change in the law.  *See* Restatement (2d) of Judgments

24  § 28(2) (noting the exception applies when "[t]he issue is one of law").  The interpretation of

25  patent claims has been described as a question of law,[1] but MOSAID cannot establish that any

26  change in the relevant law would justify avoiding the application of collateral estoppel.

27  _____

[1]   *But see Phillips*, 415 F.3d at 1332 (Mayer, J., dissenting) (claim construction is factual).

28

MICRON'S MEMORANDUM RE 10/23/06 ORDER
                                                        C 02-5772 JF (RS)

## 1.   *Phillips* Was Not An "Intervening" Change In The Law.

A litigant cannot avoid the application of collateral estoppel when it has had a full and fair opportunity to correct a trial court error revealed by a change in the law, but failed to do so. When the "change in law" occurs *before* the trial court proceedings are completed, the change is not "intervening," and the change in law exception is inapplicable.

In *Hartley* v. *Mentor Corporation*, 869 F.2d 1469, 1474 (Fed. Cir. 1989), the plaintiff suggested that he should be permitted to relitigate a prior ruling due to an intervening change in the law. The court rejected the plaintiff's argument because he had an opportunity to correct the error allegedly occasioned by the change in the law in the original proceedings, but did not do so:

> [Plaintiff] Hartley has suggested, but not by more than an undercurrent theme throughout his arguments, that the on-sale bar decision of Judge Lucas was wrong under the law of the Federal Circuit, particularly as set forth in the decision in *TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971 (1984), and, therefore, should be relitigated. He suggests that the timing of matters was serendipitously bad in that *TP Laboratories* came out just after Judge Lucas's ruling. However, the *TP Laboratories* decision was handed down more than a month before the stipulated judgment was entered; Judge Lucas was not asked to vacate his ruling or even reconsider it in view of the *TP* decision; and, in any event, it is not the least bit clear that the facts of this case parallel those of *TP Laboratories*. Any implication that Judge Lucas's decision represents a basic miscarriage of justice is flatly rejected.

*Id.* at 1474.  *See also Disimone* v. *Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997); *Ernest W. Hahn, Inc.* v. *Codding*, 1981 WL 2191, at *2 (N.D. Cal. 1981).

The change in law exception applies when an issue has been litigated to conclusion and a material change in the law occurs before a later proceeding in which estoppel is sought. In such a situation, a fairness issue can be presented because the party subjected to collateral estoppel never had a full and fair opportunity to litigate under the prevailing rule. There is no "unfairness" involved in circumstances like those present here. MOSAID had every opportunity to call *Phillips* to Judge Martini's attention and to argue its position to the Federal Circuit. Indeed, MOSAID filed an opening brief in which it cited *Phillips* before it abandoned its appeal. RJN Ex. P.

The timeline shows quite clearly that MOSAID is not the victim of an "intervening" change in the law:

- Mar. 22, 2004 - Judge Martini issues *Markman* opinion
- Apr. 5, 2004 - MOSAID files a motion for reconsideration (subsequently denied)
- Apr. 1, 2005 - Judge Martini issues published summary judgment opinion
- **July 12, 2005 - Federal Circuit issues its *en banc* opinion in *Phillips***
- Aug. 29, 2005 - MOSAID files a motion for entry of judgment per Rule 54(b)
- Oct. 27, 2005 - This Court grants MOSAID's motion for entry of judgment
- Nov. 23, 2005 - MOSAID notices an appeal of the Rule 54(b) judgment
- **Jan. 25, 2006 - This Court enters judgment**
- Apr. 6, 2006 - MOSAID files its opening brief on appeal
- June 14, 2006 - MOSAID abandons appeal

Rather than seek reconsideration of the claim construction and summary judgment orders in light of *Phillips*, MOSAID sought to make Judge Martini's orders final pursuant to Rule 54(b) so it could appeal. Rather than pursuing its appeal and seeking to correct any error revealed by *Phillips*, MOSAID abandoned its appeal and now seeks vacatur of the orders.

If MOSAID truly believed Judge Martini's rulings were erroneous under *Phillips*, its remedy was to seek reconsideration in the district court, or to raise the issue on appeal. If there was a change in the law sufficient to justify the extraordinary remedy of vacatur, the "change" *a fortiori* would have justified reconsideration. As in *Hartley*, an argument that holding MOSAID to the ordinary consequences of its litigation strategy is unfair should be "flatly rejected."

## 2.     MOSAID Cannot Establish Any *Phillips*-Based "Equities."

The absence of an "intervening" change in the law also requires the rejection of MOSAID's *Phillips* argument under the rules of equity that govern motions to vacate. In *Ringsby Truck Lines, Inc.* v. *Western Conference of Teamsters*, 686 F.2d 720 (9th Cir. 1982), the Ninth Circuit adopted a "balancing of equities" test, under which the court considers the "consequences and attendant hardships of dismissal or refusal to dismiss" and the "competing values of finality of judgment and right to relitigation of unreviewed disputes." *Id.* at 722. As the Supreme Court stated in *U.S. Bancorp Mortgage Co.* v. *Bonner Mall*, 513 U.S. 18, 25 (1994), while addressing the general subject of post-settlement vacatur:

> A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. The same is true when mootness results from unilateral action of the party who prevailed below. Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that "[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks."

*Id.* (footnote & citations omitted). As in the situation discussed in *U.S. Bancorp*, any difficulty faced by MOSAID is not the result of the "vagaries of circumstance," but of what must be seen as either a deliberate litigation strategy or simple neglect by MOSAID. There were no impediments to MOSAID's presentation of a *Phillips*-based argument to Judge Martini, or to the prosecution of its appeal to the Federal Circuit. Having elected or failed to take advantage of the opportunity to argue *Phillips* in the trial court and on appeal, MOSAID cannot demonstrate "equitable entitlement to the extraordinary remedy of vacatur" on the basis that *Phillips* changed the law. *Id.* at 26. The "failure of equity" resulting from MOSAID's "voluntary forfeiture of review" of *Phillips* issues in the trial court and in the Federal Circuit, *id.*, compels the rejection of any *Phillips*-based attempt by MOSAID to obtain vacatur.

### 3. The Changes In The Law Resulting From *Phillips* Were Subtle, And Did Not Represent A "Significant Change In The Legal Climate."

The change in law exception does not justify departure from the ordinary application of collateral estoppel unless there is a "significant change in the legal climate." *Steen*, 106 F.3d at 913 (citation omitted). While *Phillips* calls for a modest alteration of the claim construction process suggested by some prior cases, the Federal Circuit "reaffirm[ed]" what it described as "basic principles of claim construction." *Phillips*, 415 F.3d at 1312. The court held that extrinsic evidence may be considered, but should not be given undue weight over intrinsic evidence. *Id.* at 1320-24. The court concluded that "there is no magic formula or catechism for conducting claim construction." *Id.* at 1324.

Nothing in *Phillips* works a fundamental change in the law of claim construction, and there is no reason to believe that its approach will frequently produce results different from those

1   under the previously existing "basic principles of claim construction." As Judge Mayer

2   somewhat cynically observed in his dissenting opinion, "after proposing no fewer than seven

3   questions, receiving more than thirty amici curiae briefs, and whipping the bar into a frenzy of

4   expectation, we say nothing new . . . ." *Phillips*, 415 F.3d at 1330-31 (Mayer, J., dissenting).

5          Courts in this district and elsewhere have agreed that *Phillips* does not reflect a significant

6   change in the legal climate. Rather, "*Phillips* appears to signal a small retreat from formalism

7   and bright-line rules in claim construction." *Collaboration Properties, Inc.* v. *Tandberg Asa*,

8   Case No. C 05-01940 MHP (N.D. Cal.) (June 23, 2006 "Memorandum & Order Re: Claim

9   Construction"), at 5 (attached as RJN Ex. V). This view has also been expressed by

10  commentators. *See, e.g.*, Holly L. Bonar, *A Commentary on the Aftermath of Phillips v. AWH

11  Corp.*, 88 J. Pat. & Trademark Off. Soc'y 513, 518 (2006); David H. Bluestone, *Post-Phillips:

12  Will the Trial Courts Receive More Deference in Patent Cases?*, 20 NO. 5 Corp. Couns. 5 (Oct.

13  2005). That *Phillips* calls for a somewhat different approach or has "rejected" in some sense the

14  approach taken in *Texas Digital Systems, Inc.* v. *Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002),

15  and other cases does not mean there has been a "significant change in the legal climate" sufficient

16  to justify a departure from the ordinary application of collateral estoppel. The limited impact of

17  *Phillips* is evidenced by MOSAID's inaction in the wake of *Phillips*.

18         Even if *Phillips* accomplished a monumental change in claim construction law, MOSAID

19  cannot avoid collateral estoppel because Judge Martini did not construe the claims of the

20  MOSAID patents in a manner inconsistent with *Phillips*.

21                    **4.      Judge Martini's *Markman* Rulings Are Consistent With *Phillips*.**

22         MOSAID bears the burden to show that the purported "change in law" wrought by

23  *Phillips* was material on a term-by-term basis. *See In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir.

24  1994) (defining the "issue" for collateral estoppel purposes as the construction of a particular

25  claim term); *Nichols & Co., Inc.* v. *United States*, 586 F.2d 826, 830 (Cust. & Pat. App. 1978)

26  (holding that the party invoking "change in law" exception bore the burden of showing that new

27  discovery rules would have resulted in different outcome); *see also EEOC* v. *American Airlines,

28  Inc.*, 48 F.3d 164, 170 (5th Cir. 1995) (affirming application of collateral estoppel where prior

1  ruling was consistent with new law); *Abbott Labs.* v. *Impax Labs., Inc.*, 2003 WL 1563426, at *4

2  (N.D. Ill. 2003) (holding that Federal Circuit's intervening *Festo* decision did not preclude

3  collateral estoppel because it was not material); *Ernest W. Hahn*, 1981 WL 2191, at *2 (finding

4  changes in law irrelevant to results reached by court). Obviously, a *Phillips*-based change in law

5  argument has no bearing on claim constructions that are not inconsistent with *Phillips*.[2]

6  
7          a.    **_Phillips_ Is Not Relevant To The Claim Constructions Made Without Reference To Dictionaries.**

8          Judge Martini did not use a dictionary at all in connection with four of the seven claim

9  construction rulings in Infineon's favor.[3] In those cases, he construed claim terms entirely based

10  on the intrinsic evidence. *Markman* Op. at 24-28 (considering only intrinsic evidence,

11  specification and prosecution history to interpret "double bootstrapping" disclaimer); *id*. at 49

12  (reviewing only plain language of claim to construe "switching circuit alternately connecting");

13  *id*. at 53-54 (reviewing only specification to construe "switching circuit . . . alternating the

14  level"); *id*. at 60-62 (looking solely at claim language and specification to construe "switching

15  means"). Because no dictionaries were used in the construction of these terms, any "change in

16  law" in *Phillips* concerning the role of dictionaries is indisputably not material.

17  
18          b.    **Judge Martini's Use Of Dictionaries Was Consistent With _Phillips_.**

19          Judge Martini's claim construction and use of dictionaries was fully consistent with the

20  analysis prescribed by *Phillips*. The key point made by *Phillips* is that dictionary definitions

21  should not be given excessive weight or prominence, but should be considered in the context of

22  _____
  **2**  Thus far, MOSAID's change in law argument amounts to a recitation of the number of times
23  Judge Martini cited *Texas Digital*, or used a dictionary in the interpretation of claim terms.
MOSAID's argument does not do justice to Judge Martini's thorough analysis, and is also
24  somewhat misleading. Nine of the 15 claim terms construed with the aid of a dictionary were
resolved in MOSAID's favor, *Markman* Op. at 17-18, 47, 49, and thus are not at issue here. *See*
25  note 3 *infra*.

  **3**  Only the rulings in Infineon's favor are relevant to collateral estoppel analysis because
26  MOSAID cannot invoke collateral estoppel offensively against Micron, a new defendant that did
not have an opportunity to litigate in the prior action. *See Markman* v. *Westview Instruments,*
27  *Inc.*, 517 U.S. 370, 391 (1996); *Atmel Corp.* v. *Silicon Storage Tech., Inc.*, 2001 U.S. Dist. LEXIS
25641 at *21 (N.D. Cal. 2001), *aff'd*, 76 Fed. Appx. 298 (Fed. Cir. 2003).

28

1   the intrinsic evidence. *Phillips*, 415 F.3d at 1320-24. *Phillips* did not bar the use of dictionaries

2   or prohibit them from being consulted in any particular step of the analysis. *Id*. at 1322.

3   ("[J]udges are free to consult dictionaries and technical treatises 'at any time . . . so long as the

4   dictionary definition does not contradict any definition found in or ascertained by a reading of the

5   patent documents.'") (citation omitted). There is "no magic formula or catechism for conducting

6   claim construction" nor any requirement "to analyze sources in any specific sequence." *Id.* at

7   1324. The Federal Circuit has interpreted *Phillips* to mean that district courts must ensure "that

8   any reliance on dictionaries accords with the intrinsic evidence: the claims themselves, the

9   specification, and the prosecution history," and that "in those circumstances where reference to

10   dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the

11   most appropriate definition." *Free Motion Fitness, Inc.* v. *Cybex Int'l, Inc.*, 423 F.3d 1343, 1348-

12   49 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1314, 1322-24).

13          When Judge Martini did use a dictionary to help construe claim terms, he engaged in

14   nothing other than "the appropriate use of dictionaries" described in *Phillips*, 415 F.3d at 1322,

15   and post-*Phillips* decisions. *See Atofina* v. *Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed.

16   Cir. 2006); *Terlep* v. *Brinkmann Corp.*, 418 F.3d 1379, 1384 (Fed. Cir. 2005); *Free Motion*

17   *Fitness*, 423 F.3d at 1348-49. Judge Martini only used a dictionary in connection with three of

18   the seven claim constructions favorable to Infineon. On two occasions, he looked first to the

19   claim language and plainly gave the intrinsic evidence appropriate weight. *Markman* Op. at 30-

20   31 (reviewing claim language first to construe "directly" before citing Webster's dictionaries); *id.*

21   at 43-44 (reviewing claim language first to interpret "latching level shifter," then reviewing Radio

22   Shack dictionary, followed by consideration of expert testimony and the specification). On the

23   third occasion, Judge Martini consulted a dictionary before reviewing the intrinsic evidence, but

24   he also carefully analyzed the intrinsic evidence. *Id.* at 33-36 (reviewing dictionaries, claim

25   language and other intrinsic evidence to construe "connected" and "coupled"). This was not an

26   example of "start[ing] with the broad dictionary definition . . . and fail[ing] to fully appreciate

27   how the specification implicitly limits that definition," *Phillips*, 415 F.3d at 1321, but rather, an

28   example of the approved method of "consult[ing] a general purpose or specialized dictionary to

1   begin to understand the meaning of the term, before reviewing the remainder of the patent to

2   determine how the patentee has used the term." *Id.* at 1324. *See also Old Town Canoe Co.* v.

3   *Confluence Holdings Corp.*, 448 F.3d 1309, 1316 (Fed. Cir. 2006) (holding that beginning

4   construction with dictionary definitions was a proper "starting point in [the district court's]

5   analysis, which was centered around the intrinsic record consistent with *Phillips*"); *Agfa Corp.* v.

6   *Creo Prods. Inc.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006) (affirming district court's construction

7   when it first cited a dictionary definition to determine the ordinary meaning of a term, holding

8   that the case "[fell] squarely within [the] guidelines from *Phillips*").

9           Judge Martini's thorough and careful *Markman* opinion demonstrates that he correctly

10   considered intrinsic evidence to be the most important type of evidence, and that he used extrinsic

11   evidence such as dictionaries only if the intrinsic evidence was ambiguous. Judge Martini

12   underscored his view of the limited role of extrinsic evidence in his opinion denying MOSAID's

13   motion for reconsideration:

14             As set forth by the Court in its March 22, 2004 Opinion, the
          law of claim construction, and how a Court may use extrinsic
15           evidence, is quite clear: The Court may *not* use extrinsic evidence
          to contradict the established, clear meaning set forth by the intrinsic
16           record. (Id. at 14). The Federal Circuit case law that supports this
          rule is legion. [citations]

17                               * * *

18           "[R]eliance on extrinsic evidence to interpret claims is proper only
          when the claim language remains genuinely ambiguous after
          consideration of the intrinsic evidence. . . . Extrinsic evidence
19           *cannot be used to contradict intrinsic evidence.*"

20   RJN Ex. F, at 7-9 (Recons. Op.) (quoting MOSAID brief; emphasis in original). In sum, Judge

21   Martini's approach was entirely consistent with the approach approved in *Phillips*. *See* 415 F.3d

22   at 1324 (extrinsic evidence may be considered "as long as those sources are not used to contradict

23   claim meaning that is unambiguous in light of the intrinsic evidence").

24
                **c.**       **MOSAID's Federal Circuit Brief Confirms That *Phillips* Has**
25                         **No Significance To This Case.**

26           MOSAID's reliance on *Phillips* to support its motion would suggest a major role for

27   *Phillips* in MOSAID's appellate arguments. To the contrary, however, *Phillips* is barely

28

1   mentioned in MOSAID's Federal Circuit brief, and *Texas Digital* is not cited at all.  RJN Ex. P.

2   MOSAID made no attempt to show that Judge Martini was led astray by *Texas Digital*.  *Id.*

3         **B.**     **All Elements Of Collateral Estoppel Are Satisfied.**

4        Under Ninth Circuit law,[4] collateral estoppel (also known as "issue preclusion") bars

5   relitigation of an issue adjudicated in an earlier proceeding if the following requirements are met:

6   "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must

7   have been actually litigated [by the party against whom preclusion is asserted] in the prior

8   litigation; and (3) the determination of the issue in the prior litigation must have been a critical

9   and necessary part of the judgment in the earlier action." *Trevino* v. *Gates*, 99 F.3d 911, 923 (9th

10  Cir. 1996).

11       Collateral estoppel may be used defensively against a plaintiff who has had a "full and fair

12  chance" to litigate the same issue against a different defendant.  *Blonder-Tongue Lab., Inc.* v.

13  *University of Ill. Found.*, 402 U.S. 313, 333 (1971) (recognizing that relitigation is especially

14  wasteful in patent cases due to their length and expense).  *See also Parklane Hosiery Co.* v.

15  *Shore*, 439 U.S. 322, 326 (1979); *State of Idaho Potato Comm'n* v. *G & T Terminal Packaging,*

16  *Inc.*, 425 F.3d 708, 714 n.3 (9th Cir. 2005) (explaining difference between offensive, defensive,

17  mutual, and nonmutual collateral estoppel).  "[C]ollateral estoppel can apply to preclude

18  relitigation of both issues of law and issues of fact if those issues were conclusively determined in

19  a prior action."  *Steen*, 106 F.3d at 910 (citation omitted).

20       There is also a "finality" requirement applicable to collateral estoppel, but it is more

21  relaxed than the finality requirement for res judicata (also known as "claim preclusion").  "[A]

22  final judgment for purposes of collateral estoppel is any prior adjudication of an issue in another

23  action that is determined to be 'sufficiently firm' to be accorded preclusive effect."  *Security*

24  *People, Inc.* v. *Medeco Security Locks, Inc.*, 59 F. Supp. 2d 1040, 1045 (N.D. Cal. 1999).  *See*

25  _____

26  **4**   The court applies regional circuit law in deciding collateral estoppel issues.  *Applied Med. Res. Corp.* v. *U.S. Surgical Corp.*, 435 F.3d 1356, 1360 (Fed. Cir. 2006).  Although *MOSAID* v.

27  *Micron* was filed in the Fifth Circuit, other MOSAID cases may be filed in other circuits.  The collateral estoppel analysis should be considered more generally as an issue that could affect any possible future litigant against MOSAID.  Thus, we focus on the law of this Circuit.

28

1   *also Luben Indus., Inc.* v. *United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (citing Restatement

2   (2d) of Judgments, § 13); *Robi* v. *Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988)

3   ("appellate finality" not a condition).  The Ninth Circuit has identified several factors to be

4   considered in determining whether an adjudication is sufficiently firm:  "(1) whether the decision

5   was not avowedly tentative, (2) whether the parties were fully heard, (3) whether the court

6   supported its decision with a reasoned opinion, and (4) whether the decision was subject to an

7   appeal."  *Security People*, 59 F. Supp. 2d at 1045 (citing Ninth Circuit law).  Thus, various types

8   of interlocutory orders are "final" for purposes of collateral estoppel.

9          A party seeking to invoke collateral estoppel is not required to demonstrate that the prior

10  adjudication was "correct."  The point of the doctrine is to avoid the waste of resources that

11  would be required to revisit the merits of the earlier decision.  "[E]ven though a case may have

12  been decided incorrectly, this is an insufficient basis to defeat the application of collateral

13  estoppel."  *Bates* v. *Union Oil Co. of Cal.*, 944 F.2d 647, 651 (9th Cir. 1991) (citation omitted);

14  *see also Stevenson* v. *Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983) ("[T]he court is

15  only to decide whether the patentee had a full and fair opportunity to litigate the validity of his

16  patent in the prior unsuccessful suit.").

17         Although the party seeking to apply collateral estoppel typically bears the burden of

18  proving that the elements of collateral estoppel are satisfied, this case arises in a procedurally

19  different context.  A party seeking vacatur has the burden to establish that this extraordinary

20  remedy is appropriate.  *U.S. Bancorp*, 513 U.S. at 26.  If the applicability of collateral estoppel is

21  the determining factor in the resolution of MOSAID's motion to vacate, MOSAID must

22  demonstrate that collateral estoppel does *not* apply.  "It is [MOSAID's] burden, as the party

23  seeking relief from the status quo of the [Infineon] judgment, to demonstrate . . . equitable

24  entitlement to the extraordinary remedy of vacatur."  *Id.*

25                **1.     Same Issues.**

26         Judge Martini construed 31 disputed claim terms.  *Markman* Op. at 5.[5]  Of the 31, 17 were

27  ────────────────────────
    **5**    Judge Martini stated that he construed 30 terms, but in fact, he construed 31.  His construction
28  of "voltage supply," *Markman* Op. at 49 n.21, was not reflected in the order.

1   construed in Infineon's favor.  Although Judge Martini ruled in Infineon's favor on 17 claim

2   terms, he specifically addressed only 7 of the terms in his opinion.  *Id.* at 24-28 (construing

3   "means for applying"); *id.* at 30-31 ("directly"); *id.* at 33-36 ("connected" and "coupled"); *id.* at

4   43-44 ("latching level shifter"); *id.* at 49-51 ("switching circuit alternatingly connecting"); *id.* at

5   53-54 ("switching circuit…alternating the level"); *id.* at 60-62 ("switching means").  Judge

6   Martini explained that these 7 rulings were dispositive of the constructions of the balance of the

7   17 terms that were construed in Infineon's favor.  *Id.* at 24 n.15, 45 n.20, 52 n.23.

8          MOSAID has asserted some of the same patents against Micron that it asserted against

9   Infineon, also a DRAM manufacturer.  *Compare* RJN Ex. B (Third Amended Counterclaims in

10  *MOSAID* v. *Infineon*) *with* Ex. S (First Amended Complaint in *MOSAID* v. *Micron*).  In both

11  cases, MOSAID alleged infringement of the **'581 patent**, **'643 patent**, the **'253 patent**, the **'640**

12  **patent**, the **'620 patent**, and the **'703 patent**.  *Id.*  MOSAID has publicly claimed that the entire

13  DRAM industry infringes its patents.  *Id.* Ex. T at MTI-0000000716.  There is thus no reason to

14  doubt that the construction of the same claim terms at issue in *MOSAID* v. *Infineon* will be at

15  issue in *MOSAID* v. *Micron*.  If MOSAID does not intend to assert the same claims, it can say so,

16  but there has been no hint of any pulling back by MOSAID.

17         Judge Martini construed the following phrases in the patents asserted against Micron:

18     •   "applies the controlled high voltage $V_{pp}$ from the high voltage supply to a word

19  line," "latching level shifter," and "to . . . latch" in claim 15 of the **'253 patent**;

20     •   "to . . . latch" in claims 22 and 29 of the **'253 patent**;

21     •   "from one of the latched, level shifted control signals applying a controlled high

22  voltage, from the controlled high voltage supply, to a selected word line" and "latching the level

23  shifted control signals" in claim 31 of the **'253 patent**;

24     •   "switching circuit alternatingly connecting" and "switching circuit…alternating

25  the level" in claims 1, 5 and 7 of the **'620 patent**;

26     •   "alternately switching" in claim 13 of the **'620 patent**.

27     •   "applying circuitry" and "applying the controlled high voltage $V_{pp}$ to the word

28  line" in claim 1 of the **'640 patent**;

- 13 -

1    •    "level shifter with latching" and "to . . . latch" in claim 1 of the **'643 patent** and

2    claim 1 of the **'640 patent**;

3    •    "from one of the latched, level shifted control signals applying a controlled high

4    voltage greater than the stored voltage to a selected word line" and "latching the level shifted

5    control signals" in claim 15 of the **'643 patent**;

6    •    "from the latched, level shifted control signals, applying a controlled voltage to the

7    selected word line" and "latching the level shifted control signals" in claim 28 of the **'643 patent**;

8    •    "alternatively switching" in claims 5 and 14 of the **'581 patent**.[6]

9    ### 2.    The Issues Were Actually Litigated.

10   The construction of the claim terms was actually litigated before Judge Martini.

11   MOSAID, Infineon, and Samsung briefed and argued the issues, and they participated in two full

12   days of oral argument.  RJN Exs. C-G.  MOSAID subsequently sought reconsideration.

13   ### 3.    The Rulings Were Necessary.

14   The necessity element is satisfied in two ways.  First, Judge Martini's claim constructions

15   were obviously necessary to his *Markman* order.  Indeed, they were the whole point of the order.

16   Under the "finality" standard governing collateral estoppel, *Markman* rulings stand by themselves

17   for collateral estoppel purposes.  Even if there had been no summary judgment proceedings,

18   collateral estoppel would apply.  *See TM Patents, L.P.* v. *International Bus. Machs. Corp.*, 72 F.

19   Supp. 2d 370, 378 (S.D.N.Y. 1999) (collateral estoppel effects from claim construction are not

20   limited to matters that were essential to a judgment of validity or infringement).

21   Second, there *was* a summary judgment process, and some of the *Markman* rulings were

22   also necessary to the summary judgment order and to the judgment based on the order.  Judge

23   Martini could not have granted Infineon summary judgment without first construing the claim

24

25   _____

6    Judge Martini also construed "means for applying," directly," "connected" and "coupled" in
     claim 1 of the '602 patent, "switching means" in claim 1 of the '201 patent, and "alternately
26   switching" in claim 11 of the '201 patent.  Although MOSAID did not assert these patents against
     Micron, issue preclusion is available to the extent that these phrases appear in related patents that
27   are asserted against Micron.  *Mycogen Plant Sci., Inc.* v. *Monsanto Co.*, 252 F.3d 1306, 1311
     (Fed. Cir. 2001), *vacated on other grounds*, 535 U.S. 1109 (2002).

28

1   terms, and then comparing them to Infineon's DRAM chips.  The claim constructions were

2   "necessary" and "essential" to the judgment of non-infringement.

3        A few examples demonstrate the necessity of the *Markman* rulings to the judgment.

4   Judge Martini construed the claim terms "to . . . latch," "latching level shifter," "level shifter with

5   latching" and "latching the level shifted control signals" in favor of Infineon.  *Markman* Op. at

6   43-44.  Based on the construction of these claim terms, the court held that Infineon did not

7   infringe claims 31-34 of the '253 patent, claims 1-3, 8-13, 15-17, and 22-28 of the '643 patent,

8   and claim 1 of the '640 patent, because Infineon's products did not meet the one-way latching

9   limitation.  Summ. J. Op. at 10-14.  In addition, the court construed a number of claims to include

10  a "clock source" disclaimer of subject matter, including "switching circuit alternating the level"

11  and "switching means."  *Markman* Op. at 53-54, 63.  Based on this construction, the court held

12  that the accused products did not infringe claims 1-3, 5-9, 13-15, 17-21, and 24 of the '620 patent,

13  claims 1, 10-11, and 20 of the '201 patent, and claims 1, 3-4 and 6 of the '654 patent, because

14  Infineon's products use a clock source.  Summ. J. Op. at 16-21.  Finally, the court applied the

15  construction of "switching means" to determine that claims 1 and 10 of the '201 patent required a

16  PMOS transistor.  Summ. J. Op. at 24.  Because Infineon's products used a fully-switched NMOS

17  transistor, the court held that they do not infringe claims 1 and 10 of the '201 patent.  *Id.* at 25.

18  There is no doubt that these claim constructions in Infineon's favor were necessary to the

19  summary judgment rulings of non-infringement.

20        **4.      The Rulings Are "Final."**

21        The finality requirement is satisfied because the parties stipulated to the entry of judgment

22  pursuant to Rule 54(b) and the Court agreed that there was "no just reason for delay" in the entry

23  of judgment based on Judge Martini's *Markman* ruling and the consequent summary judgment of

24  non-infringement.  RJN Exs. J-N.  The *Markman* ruling was merged into that final judgment.  *See*

25  *American Ironworks & Erectors, Inc*. v. *North Am. Constr. Corp*., 248 F.3d 892, 897 (9th Cir.

26  2001) (interlocutory orders merge into a final judgment).

27        Even without the Rule 54(b) judgment, Judge Martini's *Markman* determinations were

28  themselves sufficiently firm to satisfy the relaxed finality requirement applicable to collateral

- 15 -

1   estoppel.  The claim construction opinion and order were not "avowedly tentative."  *Security*

2   *People*, 59 F. Supp. 2d at 1045 (finding a decision sufficiently final where both parties had

3   opportunity to be fully heard and court's decision was supported with a reasoned opinion).  Judge

4   Martini held a two day hearing and supported his decision with a 69-page claim construction

5   opinion.  MOSAID sought reconsideration, and, when Judge Martini denied the request for

6   reconsideration, he emphasized that the Court "remain[ed] firm in its decision."  RJN Ex. F, at 9.

7   Judge Martini then used his claim constructions to form the basis for his summary judgment

8   opinion, which in turn provided a basis for the entry of judgment.  *Id.* Exs. H, I.  These facts

9   demonstrate that the claim construction rulings were anything but "tentative," and that the finality

10  requirement is satisfied.

11       That MOSAID settled with Samsung and Infineon before MOSAID's appeal was

12  completed does not mean that the claim construction ruling was not "final" for collateral estoppel

13  purposes.  Under federal law, appellate finality is not required to give collateral estoppel effect to

14  a district court's rulings, *Robi* v. *Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988), and a

15  settlement does not deprive an otherwise "sufficiently firm" ruling of collateral estoppel effect.

16  *Bates*, 944 F.2d at 651-52; *Atmel Corp.* v. *Silicon Storage Tech., Inc.*, 2001 U.S. Dist. LEXIS

17  25641, at *10 (N.D. Cal. 2001).

18       **5.     MOSAID Had A "Full And Fair Opportunity" To Litigate The Issues.**

19       MOSAID was a party to the prior cases.  It fully briefed the claim construction issues

20  (twice), and participated in the lengthy *Markman* hearing.  RJN Exs. A-G.

21       **C.     Courts Frequently Apply Collateral Estoppel To *Markman* Orders.**

22       *Markman* rulings present an easy case for the application of collateral estoppel.  The

23  Federal Circuit has held that "where a determination of the scope of patent claims was made in a

24  prior case, and the determination was essential to the judgment there on the issue of infringement,

25  there is collateral estoppel in a later case on the scope of such claims."  *Pfaff* v. *Wells Elecs., Inc.*,

26  5 F.3d 514, 518 (Fed. Cir. 1993) (quoting *Molinaro* v. *Fannon/Courier Corp.*, 745 F.2d 651, 655

27  (Fed. Cir. 1984)).  Many other cases apply collateral estoppel to claim construction rulings.  *See*

28  *Dynacore Holdings Corp.* v. *U.S. Philips Corp.*, 363 F.3d 1263, 1268, 1274 (Fed. Cir. 2004);

1   *Hemphill* v. *Proctor & Gamble Co*., 85 Fed. Appx. 765, 767 (Fed. Cir. 2004); *Mycogen Plant*

2   *Sci., Inc.*, 252 F.3d at 1311; *In re Freeman*, 30 F.3d at 1465; *Del Mar Avionics, Inc.* v. *Quinton*

3   *Instrument Co*., 836 F.2d 1320, 1323-24 (Fed. Cir. 1987); *Security People*, 59 F. Supp. 2d at

4   1044-45; *Abbott Labs.*, 2003 WL 1563426, at *3; *Louisville Bedding Co*. v. *Perfect Fit Indus.,*

5   *Inc*., 186 F. Supp. 2d 752, 754-56 (W.D. Ky. 2001), *vacated on other grounds*, 2001 WL

6   34010716 (W.D. Ky. 2001); *Abbott Labs.* v. *Dey, L.P*., 110 F. Supp. 2d 667, 669-71 (N.D. Ill.

7   2000); *Maxwell* v. *Angel-Etts of Cal.*, 2000 WL 34016198, at *4 (C.D. Cal. 2000); *Hilgraeve*

8   *Corp*. v. *Symantec Corp*., 90 F. Supp. 2d 850, 855 (E.D. Mich. 2000); *Overhead Door Corp*. v.

9   *Whiting Roll-up Door Mfg. Corp*., 215 U.S.P.Q. 428, 433 (W.D.N.Y. 1981).  Settlement

10  following an adverse claim construction does not defeat the possibility that collateral estoppel

11  will apply.  As Judge Smith said in *Atmel*, 2001 U.S. Dist. LEXIS 25641, "claim construction

12  from a prior case that settled ought to have a preclusive effect so long as the other requirements

13  for collateral estoppel are met."  *Id.* at *20.  *See also TM Patents*, 72 F. Supp. 2d at 377.

14          These cases demonstrate that when the elements of collateral estoppel are satisfied, a

15  claim construction order must be given preclusive effect just like any other prior, fully litigated

16  ruling.  For example, in *Dynacore Holdings Corp*. v. *U.S. Philips Corp*., 363 F.3d 1263, 1268,

17  1274 (Fed. Cir. 2004), the patentee, Datapoint, alleged (as MOSAID does) that technology that

18  facilitated the implementation of an industry standard infringed its patent.  Datapoint received an

19  unfavorable claim construction, which was affirmed on appeal.  Datapoint subsequently went out

20  of business, and DynaCore purchased the '732 patent and filed new actions against different

21  defendants.  The district court applied collateral estoppel to the prior claim construction, 243 F.

22  Supp. 2d 31, 35 (S.D.N.Y. 2003), and the Federal Circuit affirmed.  Although DynaCore

23  apparently did not appeal the collateral estoppel ruling, the Federal Circuit nonetheless observed

24  that the prior claim construction of the same patent "remains binding upon Dynacore in the

25  present matter."  363 F.3d at 1268.  *See also id.* at 1274 ("Dynacore is collaterally estopped from

26  challenging the Special Master's claim construction that we affirmed in [the prior action].").

27          Collateral estoppel applies even when different patents or claims, but the same claim

28  language, are at issue.  *Hemphill*, 85 Fed. Appx. at 767 (different claims); *Mycogen Plant Sci.,*

- 17 -

MICRON'S MEMORANDUM RE 10/23/06 ORDER
C 02-5772 JF (RS)

*Inc.*, 252 F.3d at 1311 (different patents), *vacated on other grounds*, 535 U.S. 1109 (2002).  The case for estoppel is much simpler here because the same patents and same claims are at issue.

### D.   Cases That Have Declined To Apply Collateral Estoppel To Claim Construction Orders Are Distinguishable.

The cases that decline to give preclusive effect to claim construction orders have unique facts that eliminate one or more of the elements of collateral estoppel.  They do not involve disagreement with the idea that claim construction orders are entitled to preclusive effect, or an analytical departure from the result compelled by both the general law of collateral estoppel and the cases that address the collateral estoppel effect of *Markman* rulings.[7]  For example, in some cases different patents or claim terms were at issue in the prior case, such that the "identical issue" was not presented.  *See, e.g.*, *Monsanto Co.* v. *Bayer Bioscience N.V.*, 363 F.3d 1235, 1244 (Fed. Cir. 2004).  In other cases, the "full and fair opportunity to litigate" element was not satisfied, either because the plaintiff sought to assert collateral estoppel offensively against a defendant that was not a party to the prior case, *see, e.g.*, *Third Wave Tech., Inc.* v. *Stratagene Corp.*, 381 F. Supp. 2d 891, 914 (W.D. Wis. 2005), or because the process was somehow deficient.  *See, e.g.*, *RF Delaware, Inc.* v. *Pacific Keystone Techs., Inc.*, 326 F.3d 1255 (Fed. Cir. 2003) (no evidentiary hearing).  In some cases, a prior claim construction was held not to have been "necessary and essential" to the final judgment, either because the patent was nevertheless found to have been infringed, *see, e.g.*, *Graco Children's Prods., Inc.* v. *Regalo Int'l*, 77 F. Supp. 2d 660, 664 (E.D. Pa. 1999), or because the earlier ruling included dictum on claim limitations that were not at issue in the prior case.  *See, e.g.*, *Phonometrics, Inc.* v. *Northern Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).  Other cases have found "finality" lacking when the losing party *could not* appeal the adverse ruling.  *See, e.g.*, *Graco Children's Prods.*, 77 F. Supp. 2d at 664 (plaintiff won on infringement and thus could not appeal prior adverse claim interpretation issue).  None of these deficiencies exists in this case.

---

[7]   Courts that describe a "split of authority" on whether *Markman* decisions can be given preclusive effect have the wrong perspective.  There is nothing special about the application of collateral estoppel to *Markman* rulings, as compared with any other rulings in civil actions.

III.     **COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S SUMMARY JUDGMENT ORDER OF NON-INFRINGEMENT AS TO ANY "IDENTICAL ISSUES."**

A.     **The Actually Litigated, Necessity, Finality, and Full and Fair Opportunity Elements Are All Satisfied.**

When he granted summary judgment of non-infringement, Judge Martini applied his construction of the patents in suit to the Infineon products and found no infringement. Collateral estoppel applies to the determination that the patent claims asserted by MOSAID are not infringed by the structures and methods in issue in the *Infineon* case.

First, the "actually litigated" element is plainly satisfied. The infringement issues were decided on summary judgment in Infineon's favor. Summ. J. Order at 2-3 ¶¶ 1, 2, 3, 4, 8. "The determination of an issue on a motion for judgment on the pleadings or a motion for summary judgment is sufficient to satisfy the 'litigated' requirement for collateral estoppel." *Steen*, 106 F.3d at 912.

Second, the "necessity" element is satisfied. In the Rule 54(b) judgment, the Court held that "Infineon does not infringe the patents asserted by [MOSAID] in Counterclaim Counts II, III, IV, V, VI, and X of MOSAID's Third Amended Answer and Counterclaims." RJN Ex. N. The determinations of non-infringement were the basis of, and thus necessary to, the judgment.

Third, the "finality" element is satisfied. Putting aside the question of whether Judge Martini's summary judgment opinion would satisfy the finality requirement had judgment not been entered, there is no basis on which MOSAID might dispute the finality element because MOSAID sought, the parties stipulated to, and the Court ordered, the entry of judgment pursuant to Rule 54(b). RJN Exs. J-N. In its motion, MOSAID acknowledged that "The Court's summary judgment decision rejecting MOSAID's infringement claims in Counts II through VI and X renders those claims unquestionably 'final' for purposes of Rule 54(b)." RJN Ex. K at 8.

Fourth, the "full and fair opportunity" element is satisfied. MOSAID was a party to the Infineon case, and it briefed and argued the summary judgment issues. MOSAID had a full and fair opportunity to litigate the infringement issues. MOSAID also had a full and fair opportunity to call *Phillips* to the attention of Judge Martini, and to advocate to the Federal Circuit that Judge

1   Martini committed error cognizable under *Phillips*.  That it chose not to do so is of no

2   significance to the "fullness" or "fairness" of its opportunity to litigate.

3           **B.      Identical Issues.**

4           The "identical issue" element requires additional analysis, but it presents no bar to the

5   application of collateral estoppel.  To determine whether a patent is infringed, the court or jury

6   compares the patent claims to the accused products.  *Warner-Lambert Co.* v. *Teva Pharms. USA,*

7   *Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005).  In this case, Judge Martini compared the claims

8   asserted by MOSAID to the accused Infineon DRAM chips, and held that Infineon's products do

9   not infringe.  Specifically, Judge Martini ruled that:

10          •        Infineon's accused products do not directly infringe method claim 15 of the '643

11  patent.  Summ. J. Order at 2 ¶ 1.

12          •        Infineon's accused products lack the "latching" limitation found in the '253 patent,

13  '653 patent, and '640 patent, and therefore do not infringe claims 31-34 of the '253 patent, claims

14  1-3, 8-13, 15-17, and 22-28 of the '643 patent, and claim 1 of the '640 patent, either literally or

15  under the doctrine of equivalents.  *Id.* ¶ 2.

16          •        Infineon's Blaze product lacks "control signals" and therefore does not literally

17  infringe the "control signals applying" limitation of claim 15 of the '643 patent.  *Id.* ¶ 3.

18          •        Infineon's accused products fall within the clock sources disclaimer applicable to

19  the asserted claims of the '620 patent, the '201 patent, and the '654 patent, and therefore do not

20  infringe claims 1-3, 5-9, 13-15, 17-21, and 24 of the '620 patent, claims 1, 10-11, and 20 of the

21  '201 patent, and claims 1, 3-4, and 6 of the '654 patent, either literally or under the doctrine of

22  equivalents.  *Id.* ¶ 4.

23          •        Infineon's accused products do not meet the "switching means" limitation of

24  claims 1 and 10 of the '201 patent, and therefore do not infringe those claims either literally or

25  under the doctrine of equivalents.  *Id.* ¶ 7.

26          •        Infineon's accused products do not infringe any limitation of claims 31-34 of the

27  '253 patent, claims 1-3, 8-13, 15-17, and 22-28 of the '643 patent, claim 1 of the '640 patent,

28  claims 1-2 of the '703 patent, claims 1-3, 5-9, 13-15, 17-21 and 24 of the '620 patent, claims 1,

1  10-11, and 20 of the '201 patent, and claims 1, 3-4, and 6 of the '654 patent under the doctrine of

2  equivalents. *Id.* ¶ 8.

3       As noted above, MOSAID has asserted against Micron a number of the same patents it

4  asserted against Infineon. *Compare* RJN Ex. B *with* Ex. S. Given MOSAID's attempt to obtain

5  vacatur, it seems obvious that MOSAID intends to assert identical claims and identical claim

6  language against Micron. If that were not true, the request for vacatur would be an idle act.

7       It is not necessary that the same products (*i.e.* the Infineon DRAM chips) be at issue in

8  *MOSAID v. Micron* to satisfy the "identical issue" requirement of collateral estoppel. As Judge

9  Ware held in *Home Diagnostics, Inc.* v. *LifeScan, Inc.*, 120 F. Supp. 2d 864 (N.D. Cal. 2000),

10  "[i]f a structure in a product is found to be identical to a structure in an otherwise different,

11  previously litigated product, the judgment as to whether that structure meets the relevant claim

12  element must apply to the later litigation to avoid repetitive litigation of the same issues." *Id.* at

13  870. *See also Overhead Door*, 215 U.S.P.Q. at 433 (same). Under these cases and the basic law

14  of collateral estoppel, an "identical issue" of infringement is present if a device accused in *MOSAID*

15  *MOSAID* v. *Micron* contains a structure or employs a method identical to one at issue in *MOSAID*

16  v. *Infineon*, or if the matters at issue in *MOSAID* v. *Micron* otherwise present an identical issue of

17  infringement.

18       It is entirely possible that the relevant aspects of Micron's and Infineon's products are

19  identical. Micron and Infineon are two of the four largest DRAM manufacturers. MOSAID has

20  stated that its patents cover "fundamental" technologies used in DRAM devices. RJN Ex. U.

21  Since 2000, MOSAID has consistently taken the position that "the use of our patented techniques

22  is so widespread in the memory industry" that "anybody who wants to design practical, state-of-

23  the-art DRAM has to use [MOSAID's] technology." *Id.* Ex. T at MTI-0000000716.

24       If the relevant aspects of Infineon's and Micron's DRAM chips are structurally identical

25  or operate in the same way, some of the infringement issues in this case and *MOSAID* v. *Micron*

26  are identical. As MOSAID filed *MOSAID* v. *Micron* only recently, MOSAID has not yet set forth

27  its infringement contentions on a claim-by-claim, product-by-product basis. *See* E.D. Tex. Patent

28  L.R. 3-1; *cf.* N.D. Cal. Patent L.R. 3-1. Micron therefore cannot presently identify with certainty

1   the claims MOSAID will assert, or the features of the Micron products MOSAID will place in

2   issue, but it is not Micron's burden to make such a showing to defeat vacatur. MOSAID, the

3   party seeking vacatur, has the burden to show that it has an equitable entitlement to relief. If

4   MOSAID's entitlement to relief is to turn on the question of whether collateral estoppel applies,

5   MOSAID must prove that it does not. *See* Part II.B *supra*.

6       Placing the burden on MOSAID is fair not only because that is what the Supreme Court

7   says the law requires of one seeking vacatur, but also because MOSAID is best able to answer

8   any unresolved questions that may be presented. MOSAID knows whether it will accuse features

9   of the Micron products that are identical to those it accused in this case. If MOSAID has

10  undertaken an appropriate Rule 11 analysis of the Micron products, it has identified specific

11  features of the Micron products that provide a basis for a claim of infringement, and it can readily

12  explain whether "identical" or "non-identical" issues are present.

13      There is another important consideration relevant here. If collateral estoppel is the

14  standard, it would be wrong to base a vacatur decision on the fact that the Court is considering the

15  collateral estoppel question at a point at which MOSAID's infringement contentions have not

16  been disclosed. If six months from now MOSAID makes clear that it bases its infringement case

17  on identical accused structures or methods, vacatur would not be proper. Vacatur cannot turn on

18  serendipitous events such as the timing of the filing of a lawsuit.

19          **C.    The "Intervening Change In Law" Exception Does Not Apply To**
20                  **Infringement Or Other Questions Of Fact.**

21      The change in law exception does not apply to issues of fact, and any attempt to avoid

22  preclusion on the non-infringement rulings on the basis of a claimed change in law must be

23  rejected. *See Steen*, 106 F.3d at 913 ("[A] change in the law does not justify denying collateral

24  estoppel effect to our factual conclusions."); Restatement (2d) of Judgments § 28 (2) (exception

25  applies when "[t]he issue is one of law"). The question whether an accused product does or does

26  not infringe a patent is a question of fact. *See Pitney Bowes, Inc.* v. *Hewlett-Packard Co.*, 182

27  F.3d 1298, 1304 (Fed. Cir. 1999) ("[T]he determination of whether the properly construed claims

28  read on the accused device-is a question of fact."). The change in law exception is inapplicable.

1

**IV.   COLLATERAL ESTOPPEL APPLIES TO JUDGE MARTINI'S SUMMARY
JUDGMENT ORDER LIMITING MOSAID'S DAMAGES.**

2

3         Infineon moved for summary judgment on its claim that MOSAID's potential damages

4   were limited under the patent marking statute, 35 U.S.C. § 287(a).  Judge Martini agreed that

5   MOSAID failed to give constructive notice through marking.  *See* Summ. J. Op. at 51; *Asyst*

6   *Techs., Inc.* v. *Empak, Inc.*, 2006 WL 3302476, at *3 (N.D. Cal. 2006).  Because the issue of

7   whether MOSAID gave constructive notice under § 287 has been litigated and decided, and was

8   necessary to the judgment limiting potential damages, it is entitled to collateral estoppel effect.

9

**V.   VACATUR IS INAPPROPRIATE REGARDLESS OF WHETHER
COLLATERAL ESTOPPEL APPLIES.**

10

11         Micron has demonstrated above why collateral estoppel applies to Judge Martini's

12   *Markman* rulings and issues identical to the infringement issues adjudicated against MOSAID on

13   summary judgment.  As a result, vacatur is improper under the standard articulated in the Court's

14   October 23, 2006 Order.  Micron respectfully submits, however, that requiring a firm showing

15   that collateral estoppel applies is inconsistent with the Supreme Court's opinion in *U.S. Bancorp*,

16   is not required by *Ringsby*, and, because it asks too much of the opposing party and places

17   insufficient emphasis on the proponent's "failure of equity," *U.S. Bancorp*, 513 U.S. at 26, is

18   actually inconsistent with the balance of equities required by *Ringsby*.

19         Vacatur of a district court order or judgment following a settlement that prevents appellate

20   review of the order is an "extraordinary remedy."  *Id.*  In *Ringsby*, the Ninth Circuit rejected a

21   rule of automatic vacatur and adopted the "balancing of equities" test discussed above.  686 F.2d

22   at 722.  *See also Dilley* v. *Gunn*, 64 F.3d 1365, 1370-71 (9th Cir. 1995).  A decade later in *U.S.*

23   *Bancorp*, the Supreme Court went beyond the Ninth Circuit's "balancing of equities" test, flatly

24   stating that "mootness by reason of settlement does not justify vacatur of a judgment under

25   review."  513 U.S. at 29.  The Court also observed that "exceptional circumstances may

26   conceivably counsel in favor of" vacatur, but made clear "that those exceptional circumstances do

27   not include the mere fact that the settlement agreement provides for vacatur."  *Id.*

28

1    Despite the Supreme Court's requirement of exceptional circumstances, its unequivocal

2  reference to the settling appellant's "surrender" of the right to seek vacatur, and its observation

3  that the forfeiture of the right to appeal "constitutes a failure of equity" by one seeking vacatur,

4  *id.* at 26, Ninth Circuit case law continues to apply the pre-*U.S. Bancorp Ringsby* test in some

5  circumstances.  The Ninth Circuit has held that the Supreme Court's requirement that

6  "exceptional circumstances" be demonstrated to justify vacatur applies only when a court of

7  appeals is asked to vacate a district court judgment, not when a district court is asked to vacate its

8  own judgment.  *American Games, Inc.* v. *Trade Prods., Inc.*, 142 F.3d 1164, 1167, 1168 (9th Cir.

9  1998).  The Fourth Circuit has explicitly rejected the *American Games* distinction, *Valero*

10  *Terrestrial Corp.* v. *Paige*, 211 F.3d 112, 118-22 (4th Cir. 2000), and numerous other courts

11  apply the exceptional circumstances test to district court consideration of vacatur motions.  *See,*

12  *e.g.*, *Louisville Bedding Co.* v. *Pillowtex Corp.*, 455 F.3d 1377, 1380 (Fed. Cir. 2006).

13    Micron recognizes that this Court is bound by *Ringsby* and *American Games*.  *See*

14  *Hasbrouck* v. *Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981).  Micron accordingly has addressed

15  the issues presented by the Court's October 23, 2006 Order in the light of the law as stated by the

16  Ninth Circuit.  Micron notes, however, that *Ringsby* and *American Games* do not require a court

17  to turn a blind eye to the situation presented when a patentee who suffers an adverse *Markman*

18  ruling seeks to bury the ruling following a settlement.  Judge Illston aptly summarized the

19  relevant equities in denying vacatur in a situation identical to that presented here:

20         The Court is troubled by the implications of plaintiff's position.
       Plaintiff has already filed suit against at least two companies and has
21       threatened litigation against many others, all based on alleged
       infringement of the '154 patent.  If plaintiff's vacatur motion were
22       granted, the Court would be condoning a system in which patent
       holders would be able to seek a claim construction ruling from one
23       court, then settle the case and obtain a vacatur of the ruling if it is not
       to their liking, only to perform the entire process again before another
24       court in hopes of obtaining a more favorable ruling.  *See Allen-*
       *Bradley Co., LLC v. Kollmorgen Corp.*, 199 F.R.D. 316, 318 (E.D.
25       Wis. 2001) (recognizing that the availability of post-*Markman*
       hearing vacatur may "encourage the gambler within some litigants").
26       If plaintiff finds fault with this Court's Claim Construction Order, he
       is free to appeal the ruling to the Federal Circuit.  Likewise, he is free
27       to settle this case and argue in subsequent cases that this Court's
       Claim Construction Order does not have preclusive effect.  Plaintiff
28       may not, however, simply void an unfavorable claim construction

- 24 -                      MICRON'S MEMORANDUM RE 10/23/06 ORDER
                                           C 02-5772 JF (RS)

1   ruling and move on to another court and another defendant as if claim
    construction never occurred in this Court.

2

3   RJN Ex. W (*Mitchell* v. *Samsung Elecs. Co., Ltd.*, No. C 01-0295 SI, at 3 (N.D. Cal. 2002)).

4       In addition, the Ninth Circuit has specifically recognized that *Ringsby* does not require a

5   party opposing vacatur to establish with certainty that collateral estoppel applies.  In *National*

6   *Union Fire Insurance Co.* v. *Seafirst Corp.*, 891 F.2d 762 (9th Cir. 1989), the court affirmed a

7   denial of vacatur based on a district court's reliance on the "***potential*** preclusive impact" of the

8   judgment for which vacatur was sought.  *Id*. at 765 (emphasis in original).  *See also id*. at 769

9   ("possible, although uncertain status of any preclusive effect" sufficient to deny vacatur).  Micron

10  submits that the "equities" that must be assessed under either *U.S. Bancorp* or *Ringsby* cannot be

11  confined in a manner that requires a party opposing vacatur to demonstrate with certainty that

12  collateral estoppel will apply.  *U.S. Bancorp* aside, *National Union* establishes that vacatur may

13  be denied even when it is uncertain that collateral estoppel will apply.

14  **VI.   CONCLUSION.**

15      For the reasons above and in Micron's original briefing on MOSAID's and Infineon's

16  joint Motion to Vacate, Micron respectfully requests that the Motion to Vacate be denied.

17  Dated: December 1, 2006                    Respectfully submitted,

18                                             ROBERT E. FREITAS
                                               MICHAEL C. SPILLNER
19                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

20

21                                             /s/ Robert E. Freitas /s/
                                          _____
22                                             Robert E. Freitas
                                               Attorneys for *Amicus Curiae*
23                                             Micron Technology, Inc.

24      Pursuant to General Order 45, Part X.B, I attest that concurrence in the filing of the

25  document has been obtained from Robert E. Freitas, the signatory.

26                                             /s/ Michael C. Spillner /s/
                                          _____
27                                             Michael C. Spillner

28  OHS West:260127880.8

                            - 25 -          MICRON'S MEMORANDUM RE 10/23/06 ORDER
                                            C 02-5772 JF (RS)