1  Henry C. Bunsow (SBN 060707)
   bunsowh@howrey.com
2  K.T. Cherian (SBN 133967)
   cheriank@howrey.com
3  Scott Wales (SBN 179804)
   waless@howrey.com
4  HOWREY LLP
   525 Market Street, Suite 3600
5  San Francisco, California  94105
   Telephone:  (415) 848-4900
6  Facsimile:  (415) 848-4999

7  Attorneys for Defendant
   MOSAID TECHNOLOGIES INCORPORATED

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

13  INFINEON TECHNOLOGIES NORTH          ) Case No. 5:02-cv-05772 JF
    AMERICA CORPORATION,                 )
14                                       ) **DEFENDANT MOSAID'S RESPONSE TO**
                    Plaintiff,           ) **MICRON AND PROMOS'S MEMORANDA**
15                                       ) **ON THE COLLATERAL ESTOPPEL**
                                         ) **EFFECT OF JUDGE MARTINI'S**
         v.                              ) **RULINGS**
16                                       )
    MOSAID TECHNOLOGIES INCORPORATED,    )
17                                       )
                    Defendant.           )
18                                       )
   _____)
19

20

21

22

23

24

25

26

27

28

Case No.  5:02-cv-05772 JF
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
DM_US\8418452

# **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................................. 1

II.    THE BURDEN IS ON MICRON AND PROMOS TO PROVE THAT
       COLLATERAL ESTOPPEL APPLIES.................................................................. 2

III.   *PHILLIPS* IS AN INTERVENING CHANGE IN APPLICABLE LAW
       THAT PRECLUDES THE APPLICATION OF COLLATERAL
       ESTOPPEL TO JUDGE MARTINI'S CLAIM CONSTRUCTION
       OPINION AND ORDER. ...................................................................................... 3

       A.    *Phillips* Represents a Critical Change in Controlling Legal
             Principles. ................................................................................................. 3

       B.    It Is Immaterial Whether, In Light of *Phillips*, MOSAID Sought
             Reconsideration of Judge Martini's Rulings ............................................ 6

       C.    Judge Martini's Claim Construction Rulings Are Inconsistent With
             *Phillips*, As They Were Based Upon The Rejected *Texas Digital*
             Methodology............................................................................................... 7

IV.    COLLATERAL ESTOPPEL DOES NOT APPLY TO JUDGE
       MARTINI'S OPINION AND ORDER OF SUMMARY JUDGMENT OF
       INFRINGEMENT. ................................................................................................. 9

       A.    *Phillips* Precludes The Application Of Collateral Estoppel To
             Judge Martini's Infringement Rulings....................................................... 9

       B.    Because Micron and ProMOS Have No Interest In The
             Infringement Findings, The Court Should Disregard Their
             Arguments As To Those Rulings. ............................................................ 10

V.     IT IS IRRELEVANT WHETHER, IN GENERAL, COLLATERAL
       ESTOPPEL MAY BE APPLIED TO CLAIM CONSTRUCTION
       RULINGS............................................................................................................. 11

VI.    COLLATERAL ESTOPPEL DOES NOT APPLY TO JUDGE
       MARTINI'S ORDER LIMITING DAMAGES. ..................................................... 13

VII.   THE EQUITIES FAVOR VACATING JUDGE MARTINI'S RULINGS. .............. 15

VIII.  CONCLUSION ................................................................................................... 18

1

## TABLE OF AUTHORITIES

2
<u>CASES</u>

3
*A.B. Dick Co. v. Burroughs Corp.*
   713 F.2d 700 (Fed. Cir. 1983) ...................................................................................13

4
*Abbott Labs. v. Impax Labs., Inc.*
5
   Case Nos. 00 C 5092, 00 C 7865, 01 C 1648, 2003 WL 1563426 (N.D.
   Ill. Mar. 26, 2003).......................................................................................................12

6
*American Games, Inc. v. Trade Prods., Inc.,*
7
   142 F.3d 1164 (9th Cir. 1998). ...............................................................................1, 16

8
*American Medical Systems v. Medical Engineering Corp.,*
   6 F.3d 1523 (Fed. Cir. 1993) .....................................................................................15

9
*AVID Identification Sys., Inc. v. Philips Elecs. N. Am. Corp.*
10
   No. 2:04-CV-183, 2006 WL 278265 (E.D. Tex. Feb. 3, 2006) ...................................4

11
*Bandag, Inc. v. Gerrard Tire Co.*
   704 F.2d 1578 (Fed. Cir. 1983) .................................................................................14

12
*Bros. Inc. v. W.E. Grace Mfg. Co.*
13
   320 F.2d 594 (5th Cir. 1963). ....................................................................................15

14
*Clark v. Bear Stearns & Co.,*
   966 F.3d 1318 (9th Cir. 1992) .....................................................................................2

15
*Collaboration Properties, Inc. v. Tandberg ASA*
16
   Case No. C 05-01940 MHP (N.D. Cal.)...................................................................4, 5

17
*Del Mar Avionics, Inc. v. Quinton Instrument Co.*
   836 F.2d 1320 (Fed. Cir. 1987) ............................................................................10, 11

18
*Devices for Medicine, Inc. v. Boehl*
19
   822 F.2d 1062 (Fed. Cir. 1987) .................................................................................14

20
*Disimone v. Browner*
   121 F.3d 1262 (9th Cir. 1997) .....................................................................................6

21
*Dynacore Holding Corp. v. U.D. Philips Corp.*
22
   363 F.3d 1263 (Fed. Cir. 2004) .................................................................................12

23
*EEOC v. American Airlines, Inc.*
   48 F.3d 164 (5th Cir. 1995) ........................................................................................12

24
*Ernest W. Hahn, Inc. v. Codding*
25
   Case Nos. C-75-2706 RPA, C-76-2424 RPA, C-80-2974 RPA, 1981 WL
   2191 (N.D. Cal. Aug. 17, 1981). ...........................................................................7, 12

26
*Forterra Sys., Inc. v. Avatar Factory*
27
   No. C-05-04472 PVT, 2006 WL 2827951 (N.D. Cal. Oct. 3, 2006) ...........................4

28

HOWREY LLP    Case No. 5:02-cv-05772 JF        ii
            DEFT'S RESPONSE TO MICRON AND PROMOS'S
            MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
            JUDGE MARTINI'S RULINGS
            DM_US\8418452

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*
  423 F.3d 1343 (Fed. Cir. 2005) .................................................................. 10

*Gobeli Research, Ltd. v. Apple Computer Inc.*
  384 F. Supp. 2d 1016 (E.D. Tex. 2005) ........................................................ 4

*Hansen v. Alpine Valley Ski Area, Inc.*
  718 F.2d 1075 (Fed. Cir. 1983). .............................................................. 14

*Harris Corp. v. Ericsson Inc*
  417 F.3d 1241 (Fed. Cir. 2005) .............................................................. 10

*Hartley v. Mentor Corp.*
  869 F.2d 1469 (Fed. Cir. 1989) ............................................................... 6

*Hyperion Solutions Corp. v. Outlooksoft Corp.*
  422 F. Supp. 2d 760 (E.D. Tex. 2006) ...................................................... 4, 7

*In re Freeman*
  30 F.3d 1459 (Fed. Cir. 1994) ............................................................... 12

*Jackson Jordan, Inc. v. Plasser Amer. Corp.*
  747 F.2d 1567 (Fed. Cir. 1984) .............................................................. 13

*Kollmorgen Corp. v. Yaskawaw Elec. Corp.*
  21 Fed. Appx. 893 (Fed. Cir. 2001) ......................................................... 13

*Mendelovitz v. Adolf Coors Co.,*
  693 F.2d 570 (5th Cir. 1982); ............................................................. 3, 17

*Mitchell v. Samsung Electronics Co., Ltd.*
  Case No. C01-0295 SI (N.D. Cal. 2002). .................................................... 17

*National Union Fire Insurance v. Seafirst Corp.*
  891 F.2d 762 (9th Cir. 1989) ............................................................... 16

*Newell Cos., Inc. v. Kenney Mfg. Co.*
  864 F.2d 757 (Fed. Cir. 1988), *cert. denied*, 493 U.S. 814 (1989) ....................... 14

*Nichols & Co. v. United States*
  586 F.2d 826 (C.C.P.A. 1978) ............................................................... 12

*Nichols v. Anderson,*
  788 F.2d 1140 (5th Cir. 1986) ................................................................ 2

*Petro-Hunt, LLC v. United States,*
  365 F.3d 385 (5th Cir. 2004) ................................................................. 3

*Pfaff v. Wells Elecs., Inc.*
  5 F.3d 514 (Fed. Cir. 1993) ................................................................ 13

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................... passim

*Phonometrics, Inc. v. N. Telecom, Inc*
    133 F.3d 1459, 1464 (Fed. Cir. 1998) ................................................................ 13

*Regents of Univ. of Cal. v. Dako N. Amer., Inc.*
    No. C 05-03955 MHP, 2006 WL 1867618 (N.D. Cal. July 5, 2006) ...................... 4

*RF Delaware, Inc. v. Pac. Keystone Tech.*
    326 F.3d 1255 (Fed. Cir. 2003) .......................................................................... 13

*Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*
    686 F.2d 720 (9th Cir. 1982) .............................................................................. 16

*Segal v. Am. Tel. & Tel. Co.*
    606 F.2d 842 (9th Cir. 1979) ................................................................................ 3

*Studiengesellschaft Kohle v. Eastman Kodak Co.*
    616 F.2d 1315, 1332 (5th Cir. 1980) .................................................................. 13

*Texas Digital Systems, Inc. v. Telegenix, Inc.,*
    308 F.3d 1193 (Fed. Cir. 2002) ...................................................................passim

*TM Patents, L.P. v. International Business Machines Corp.*
    72 F. Supp. 2d 370 (S.D.N.Y. 1999), ............................................................ 12, 13

*Tomlin v. McDaniel*
    865 F.2d 209 (9th Cir. 1989) .......................................................................... 16, 17

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'shp*
    513 U.S. 18 (1994) ............................................................................................. 16

*Vitronics Corp. v. Conceptronic, Inc*
    90 F.3d 1576 (Fed. Cir. 1996) .............................................................................. 7

*Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*
    297 U.S. 387, 56 S. Ct. 528 (1936) .................................................................... 14

*YBM Magnex, Inc. v. Int'l Trade Comm'n*
    145 F.3d 1317 (Fed. Cir. 1998) .......................................................................... 14

**STATUTES**

28 U.S.C. § 287 ........................................................................................................ 13

**OTHER AUTHORITIES**

David H. Bluestone, *Post-Phillips: Will The Trial Courts Receive More Deference
    in Patent Cases?*, The Corporate Counselor, October 2005, at 5, *available
    at* http://www.usebrinks.com/publication.cfm?publication_id=146 ...................... 5

Holly L. Bonar, *A Commentary on the Aftermath of Phillips v. AWH Corp.*, 88 J.
    Pat. & Trademark Off. Soc'y 513, 515 (2006) ...................................................... 5

**RULES**

Fed. R. Civ. P. 60(b)(5). ........................................................................................... 15

1    Defendant MOSAID Technologies Incorporated ("MOSAID") respectfully submits this

2  response to Micron and ProMOS's memoranda on the collateral estoppel effect of Judge Martini's

3  rulings.

4  **I.    INTRODUCTION**

5    The issue before the Court is simple.  When there has been a change in controlling legal

6  principles, court decisions based on now-invalid law are not given collateral estoppel effect, regardless

7  of whether the elements of collateral estoppel are met.[1]  As discussed below and in MOSAID's

8  opening memorandum, the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.

9  Cir. 2005) (en banc), expressly rejected the claim construction methodology of *Texas Digital, Inc. v.*

10  *Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), and thus, constitutes a change in controlling legal

11  principles.  Judge Martini, however, applied the claim construction methodology of *Texas Digital* in

12  his claim construction opinion and his summary judgment rulings.  Consequently, given the

13  intervening change in law brought about by *Phillips*, Judge Martini's rulings should not be given

14  preclusive effect.

15    Indeed, it would be unfair to tether MOSAID to those outdated rulings.  Thus, the Court should

16  vacate them.  Contrary to Micron's and ProMOS's assertion, vacatur granted by a district court is *not*

17  an extraordinary remedy.  Rather, the district court must weigh the equities in determining whether to

18  grant vacatur.  *American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998).  As

19  discussed in more detail below in Section VII, the equities support vacatur.  Failure to vacate would

20  harm MOSAID.  It would be tagged with rulings on which MOSAID did not not have a full and fair

21  hearing under the correct legal standard, since *Phillips* came after the rulings.  There is no harm to

22

23  ───────────────

[1] There is some disagreement as to which law the Court should apply in the collateral estoppel analysis.  Micron maintains
24  that Ninth Circuit law applies, and ProMOS and MOSAID agree that Fifth Circuit law is the most appropriate law,
  particularly because of course, the Eastern District of Texas would apply Fifth Circuit law.  *See* Micron Technology Inc's
25  Memorandum in Response to the Court's October 23, 2006 Order ("Micron Brief") at 11 n.4; Memorandum of *Amicus
  Curiae* ProMOS Technologies Inc. Regarding Collateral Estoppel ("ProMOS Brief") at 7-8; MOSAID's Memorandum of
26  Points and Authorities on the Collateral Estoppel Effect of Judge Martini's Rulings ("MOSAID Brief") at 8-9.  As
  discussed in MOSAID's memorandum, however, the collateral estoppel analysis under the Ninth and Fifth Circuit are
27  similar and, under either, collateral estoppel should not be applied in view of the change in controlling law present in this
  action.  *See* MOSAID Brief at 8-10.

28

1    Micron and ProMOS.  They will simply lose the unfair opportunity of preventing a full hearing in the

2    Eastern District of Texas on claim construction under the correct standard.

3           Nevertheless, Micron and ProMOS improperly request this Court to apply collateral estoppel to

4    Judge Martini's rulings and ignore the *Phillips* change in law and Judge Martini's use of a rejected

5    claim construction methodology.  Moreover, Micron and ProMOS erroneously attempt to shift the

6    burden of proof on collateral estoppel from themselves to MOSAID, when the law provides that the

7    parties seeking to invoke the doctrine bear the burden of proof showing that the elements of collateral

8    estoppel are satisfied.  Micron and ProMOS also raise several ancillary arguments to distract from the

9    change in law issue.  But none of those arguments prevent the court from reaching a decision that

10   collateral estoppel cannot apply here because of the change in law.  Judge Martini's rulings are not

11   entitled to collateral estoppel effect and the equities strongly favor granting the parties' motion to

12   vacate.

13   **II.     THE BURDEN IS ON MICRON AND PROMOS TO PROVE THAT COLLATERAL**
         **ESTOPPEL APPLIES.**
14

15          Perhaps because it cannot meet its burden of proof, Micron incorrectly argues that MOSAID

16   bears the burden of showing that collateral estoppel does not apply to Judge Martini's orders.  Micron

17   Brief at 12.  In fact, it is established law that Micron and ProMOS, the parties seeking to invoke

18   collateral estoppel, bear the burden of proof that the doctrine should be applied.  *Nichols v. Anderson*,

19   788 F.2d 1140, 1141 (5th Cir. 1986); *see also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th

20   Cir. 1992).  That burden does not shift in the context of a motion to vacate.  While it is true that

21   MOSAID bears the burden of proof on vacatur, this Court is determining whether the Eastern District

22   of Texas would apply collateral estoppel to Judge Martini's rulings.  Jalali Decl. Ex. 1 at 6 n.6 (Order

23   Denying Motions to Intervene).[2]  Micron and ProMOS have offered no case law to support shifting the

24

25

26   _____
     [2] The Jalali Declaration Exhibits are those attached to the Declaration of Sarah Minchener Jalali in Support of Defendant
27   MOSAID's Memorandum of Points and Authorities on the Collateral Estoppel Effect of Judge Martini's Rulings, filed
     December 1, 2006.
28

1    burden of proof on collateral estoppel to MOSAID.  Therefore, the burden remains with Micron and

2    ProMOS to prove that collateral estoppel will apply.

3    **III.    *PHILLIPS* IS AN INTERVENING CHANGE IN APPLICABLE LAW THAT**
     **PRECLUDES THE APPLICATION OF COLLATERAL ESTOPPEL TO JUDGE**
4    **MARTINI'S CLAIM CONSTRUCTION OPINION AND ORDER.**

5            Both Micron and ProMOS recognize that collateral estoppel does not apply when there has

6    been a substantial intervening change in law.  *See* Micron Brief at 3; ProMOS Brief at 4.  The case law

7    is clear.  *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) ("[C]ollateral estoppel

8    applies to pure questions of law only when there has been no change in controlling legal principles.");

9    *Mendelovitz v. Adolf Coors Co.*, 693 F.2d 570, 579 (5th Cir. 1982); *Segal v. Am. Tel. & Tel. Co.*, 606

10   F.2d 842, 845 (9th Cir. 1979).

11           Instead, Micron and ProMOS erroneously argue that the Federal Circuit's decision in *Phillips*,

12   which was issued after Judge Martini's claim construction and summary judgment orders, does not

13   constitute an intervening change in law precluding the application of collateral estoppel to Judge

14   Martini's rulings because, according to Micron and ProMOS, (1) *Phillips* does not represent a

15   significant change in the legal climate; (2) MOSAID failed to seek reconsideration of Judge Martini's

16   rulings; and (3) Judge Martini's claim construction rulings are consistent with *Phillips*.  Each of these

17   arguments is meritless.

18           **A.    *Phillips* Represents a Critical Change in Controlling Legal Principles.**

19           The attempts by Micron and ProMOS to downplay the significant change in claim construction

20   law brought about by *Phillips* are misguided.  Micron Brief at 4; ProMOS Brief at 5.  In *Phillips*, the

21   Federal Circuit expressly <u>rejected</u> the claim construction approach of *Texas Digital* relied on by Judge

22   Martini:

23           Although the concern expressed by the court in Texas Digital was valid, the methodology it
             adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and
24           encyclopedias and too little on intrinsic sources, in particular the specification and prosecution
             history. . . .  In effect, the Texas Digital approach limits the role of the specification in claim
25           construction to serving as a check on the dictionary meaning of a claim term if the specification
             requires the court to conclude that fewer than all the dictionary definitions apply, or if the
26           specification contains a sufficiently specific alternative definition or disavowal. [citations
             omitted].  ***That approach, in our view, improperly restricts the role of the specification in***
27           ***claim construction.***

28   *Phillips*, 415 F.3d at 1320 (emphasis added).

Case No.  5:02-cv-05772 JF                                          3
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
   DM_US\8418452

1    Indeed, both the Eastern District of Texas and Northern District of California have

2    acknowledged that *Phillips* changed the controlling legal principles regarding claim construction.  The

3    Eastern District of Texas stated: "The *en banc* [*Phillips*] court <u>condemned</u> the suggestion made by

4    *Texas Digital Systems, Inc. v. Telegenix, Inc.* . . . that a court should discern the ordinary meaning of

5    the claim terms (through dictionary or otherwise) before resorting to the specification for certain

6    limited purposes." *Hyperion Solutions Corp. v. Outlooksoft Corp.*, 422 F. Supp. 2d 760, 764 (E.D.

7    Tex. 2006) (emphasis added); *see also AVID Identification Sys., Inc. v. Philips Elecs. N. Am. Corp.*,

8    No. 2:04-CV-183, 2006 WL 278265, at *4 (E.D. Tex. Feb. 3, 2006) ("The approach suggested by *Tex.*

9    *Digital* - the assignment of a limited role to the specification - was rejected[.]"); *Gobeli Research, Ltd.*

10   *v. Apple Computer Inc.*, 384 F. Supp. 2d 1016, 1021 (E.D. Tex. 2005) (noting that *Phillips* has

11   established the "guideposts" for claim construction).

12    Similarly, the Northern District of California pointed out that in *Phillips*, the Federal Circuit

13   "<u>rejected</u> a line of cases suggesting that claim interpretation must begin with a dictionary definition of

14   the disputed terms."  *Regents of Univ. of Cal. v. Dako N. Amer., Inc.*, No. C 05-03955 MHP, 2006 WL

15   1867618, at *3 (N.D. Cal. July 5, 2006) (emphasis added); *see also Forterra Sys., Inc. v. Avatar*

16   *Factory*, No. C-05-04472 PVT, 2006 WL 2827951, at *3 (N.D. Cal. Oct. 3. 2006) ("[T]he Federal

17   Circuit recently clarified the role of dictionary definitions in claim construction, finding that the *Texas*

18   *Digital* line of cases too often has been 'improperly relied upon to condone the adoption of a

19   dictionary definition entirely divorced from the context of the written description.'").[3]

20    In an effort to demonstrate that *Phillips* was not a significant change from *Texas Digital*,

21   Micron relies on Judge Patel's unpublished decision in *Collaboration Properties, Inc. v. Tandberg*

22   *ASA*, Case No. C 05-01940 MHP (N.D. Cal.), that "*Phillips* appears to signal a small retreat from

23   formalism and bright-line rules in claim construction."  Micron Brief at 7.  In setting forth the

24   applicable legal standard, however, Judge Patel stated that the Federal Circuit "revisited" the basic

25   approach to claim construction in *Phillips* and "<u>rejected</u> a line of cases suggesting that claim

26   _____

27   [3] This Court has also recognized that "[t]here's clearly a change in the law with the decision in Phillips."  Jalali Decl. Ex. 19 at 7:2-3 (October 20, 2006 Hearing Transcript).

28

1   interpretation must begin with a dictionary definition of the disputed terms." *Collaboration Properties*,

2   slip op. at 5 (emphasis added). In addition, Judge Patel indicated that as a result of *Phillips*, the Court

3   would "focus primarily on the intrinsic record before it." *Id.*

4        Micron also cites two law review articles as supporting its position that *Phillips* was not a

5   significant change from *Texas Digital*. Micron Brief at 7. Both of these articles, however, show just

6   the opposite. In the Bonar article, the author states that "[t]he *en banc* [*Phillips*] court openly criticized

7   the claim construction methodology presented in *Texas Digital Sys., Inc. v. Telegenix, Inc.*" Holly L.

8   Bonar, *A Commentary on the Aftermath of Phillips v. AWH Corp.*, 88 J. Pat. & Trademark Off. Soc'y

9   513, 515 (2006) (emphasis added). The article goes on to confirm that "*Phillips* signified a departure

10  from the 'experiment' the Federal Circuit was conducting that was marked by its decision in *Texas*

11  *Digital*." *Id.* at 518 (emphasis added). Similarly, the Bluestone article states that *Phillips* "end[ed] the

12  judicial experiment of elevating dictionaries as if they were part of the patent prosecution process or

13  the patent itself, as exemplified in *Texas Digital . . . .*" David H. Bluestone, *Post-Phillips: Will The*

14  *Trial Courts Receive More Deference in Patent Cases?*, The Corporate Counselor, October 2005, at 5,

15  *available at* http://www.usebrinks.com/publication.cfm?publication_id=146.[4]

16       Neither Micron nor ProMOS has pointed to any legal source contradicting the numerous

17  Eastern District of Texas and Northern District of California cases finding that *Phillips* rejected the

18  *Texas Digital* approach. Indeed, as discussed, the sources cited by Micron only confirm the significant

19  change in controlling legal principles.

20

21

22

23

---

24  [4] Micron also attempts to rely on a partial quote from a dissenting opinion by Judge Mayer that *Phillips* said "nothing

25  new." Micron Brief at 7. However, Micron quotes Judge Mayer's statement out of context. The full sentence states "But after proposing no fewer than seven questions, receiving more than thirty amici curiae briefs, and whipping the bar into a

26  frenzy of expectation, we say nothing new, but merely restate what has become the practice over the last ten years – that we will decide cases according to whatever mode or method results in the outcome we desire, or at least allows us a seemingly

27  plausible way out of the case." *Phillips*, 415 F.3d at 1330 (emphasis added to show the portion that Micron did not quote). Contrary to Micron's suggestion, this hardly supports the idea that *Phillips* did not reject the *Texas Digital* methodology.

28

HOWREY LLP

Case No. 5:02-cv-05772 JF                                              5
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
 DM_US\8418452

1    **B.     It Is Immaterial Whether, In Light of *Phillips*, MOSAID Sought Reconsideration**
2            **of Judge Martini's Rulings**

3            Micron and ProMOS's assertions that *Phillips* cannot constitute an intervening change in law

4    because MOSAID failed to seek reconsideration of Judge Martini's orders are wholly without support.

5    See Micron Brief at 4-5; ProMOS Brief at 7.  ProMOS cites to no legal support at all.  Micron relies on

6    *Hartley v. Mentor Corp.*, 869 F.2d 1469 (Fed. Cir. 1989), to support its assertion, but in fact, *Hartley*

7    confirms that MOSAID is properly seeking a vacatur order.  In *Hartley*, the Federal Circuit rebuffed an

8    apparent change in law argument because the change in law occurred while the prior litigation was

9    pending, but the plaintiff did not raise the issue until the defendant in a later case sought to apply

10   collateral estoppel to the rulings from the prior litigation.  *Hartley*, 869 F.2d at 1474.  The Federal

11   Circuit pointed out that the plaintiff never asked the district court in the earlier proceeding to *vacate*

12   *the rulings* or reconsider them in view of the change in law.  *Id.*

13           In contrast to the plaintiff in *Hartley*, MOSAID is taking the exact steps the Federal Circuit

14   suggested a party should take when there has been a change in law – requesting the Court vacate the

15   *Texas Digital*-based rulings.  MOSAID did not wait to raise the change in law issue until collateral

16   estoppel was raised in a subsequent case, as did the plaintiff in *Hartley*.  Instead, MOSAID is seeking

17   the remedy of vacatur from the very court that entered the judgment affected by the *Phillips*

18   intervening change in law.[5]

19           The additional cases cited by Micron are equally without merit.  In *Disimone v. Browner*, the

20   Ninth Circuit applied collateral estoppel to an order issued in a prior case despite an alleged

21   intervening change in law because the Ninth Circuit had already considered and rejected the change in

22   law argument during the pendency of the prior case.  *Disimone v. Browner*, 121 F.3d 1262, 1267-68

23   (9th Cir. 1997).  Similarly, in *Ernest W. Hahn, Inc. v. Codding*, the court found no "intervening"

24

25   [5] Although Micron claims that "MOSAID had every opportunity to call *Phillips* to Judge Martini's attention," (Micron
26   Brief at 4), the Judicial Panel on Multidistrict Litigation remanded the case back to the Northern District of California on
     June 17, 2005, nearly a month before the Federal Circuit decided *Phillips* on July 12, 2005.  Jalali Supp. Decl. Ex. 20.  As
27   such, MOSAID could not have sought reconsideration of the claim construction and summary judgment rulings from Judge
     Martini.

28

1  change in law between two cases because the newly changed law had already been argued in the Ninth

2  Circuit by the parties to the first case. *Ernest W. Hahn, Inc. v. Codding*, Case Nos. C-75-2706 RPA,

3  C-76-2424 RPA, C-80-2974 RPA, 1981 WL 2191, at *2 (N.D. Cal. Aug. 17, 1981). Here, no court has

4  ever considered MOSAID's argument that the intervening change in law should preclude the

5  application of collateral estoppel to Judge Martini's rulings, let alone rejected the argument.

6      Micron and ProMOS have not cited any case that rejected the application of intervening change

7  in law simply because a party sought vacatur, instead of reconsideration of a prior ruling. Thus,

8  Micron and ProMOS's argument should be disregarded.

9      **C.     Judge Martini's Claim Construction Rulings Are Inconsistent With *Phillips*, As They Were Based Upon The Rejected *Texas Digital* Methodology.**

10

11     Judge Martini's <u>entire framework</u> for construing the claim terms was based upon the *Texas*

12  *Digital* claim construction methodology that was later rejected by *Phillips*. MOSAID Brief at 5-7.

13  Thus, not surprisingly, Micron and ProMOS are unable to point to a single instance where Judge

14  Martini's analysis was not infected by *Texas Digital*.[6] The claim constructions that they do point to

15  actually support MOSAID's position that Judge Martini performed his claim construction under *Texas*

16  *Digital* and not under *Phillips*. Under *Texas Digital*, the specification is relegated to function as a

17  check on a so-called "plain" meaning of claim terms. Under *Phillips*, however, the <u>specification is key</u>

18  to claim construction. *Phillips*, 415 F.3d at 1315 ("Usually, [the specification] is dispositive; it is the

19  single best guide to the meaning of a disputed term." (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90

20  F.3d 1576, 1582 (Fed. Cir. 1996)). The Eastern District of Texas recognizes this as well. *See*

21  *Hyperion*, 422 F. Supp. 2d at 764 ("The approach suggested by Texas Digital -- the assignment of a

22  limited role to the specification -- was rejected as inconsistent with decisions holding the specification

23  to be the best guide to the meaning of a disputed term.").

24

25  _____

26  [6] Micron appears to assert that the Court should exempt from its analysis rulings that are not in Infineon's favor. Micron Brief at 8, nn.2&3. Micron is mistaken because Judge Martini did his *entire* claim construction and infringement analyses within the *Texas Digital* framework that the Federal Circuit later rejected in *Phillips*. As such, the *Phillips* intervening

27  change in law mandates that collateral estoppel not be applied to <u>any</u> of Judge Martini's rulings, even those in favor of MOSAID.

28

The following bullets address each of Judge Martini's claim constructions that Micron and ProMOS rely on (Micron Brief at 8:9-15, 9:17-25; ProMOS Brief at 5:16-20), but that actually show Judge Martini followed the *Texas Digital* methodology:

- "Switching circuit alternately connecting" and "switching circuit . . . alternating the level" were construed by reviewing only the claims to determine "plain language," and the specification and prosecution history were relegated to determining if a disclaimer was applicable that might alter the plain meaning. (Jalali Decl. Ex. 2 at 49-51, 52-55 [Claim Construction Opinion].)

- "Switching means" was presumptively determined to be in means-plus function form without reviewing the specification to determine if sufficient structure was recited to overcome presumption (*see, e.g., Phillips*, 415 F.3d at 1311 (reviewing specification for sufficiency of structure to overcome such presumption)) and partially on the basis that a dictionary definition was not presented. (Jalali Decl. Ex. 2 at 59-61 [Claim Construction Opinion].)

- "Directly" was construed by reviewing only claim language and dictionary definitions from *Webster's New World Dictionary* and *Webster's Third New International Dictionary* without reviewing the specification. (*Id.* at 29-32.)

- "Latching level shifter" was construed by considering *Radio Shack Dictionary of Electronics* dictionary definitions, and the specification was relegated to a check on plain meaning. (*Id.* at 43-45.)

- "Connected/coupled" were construed by using dictionary definitions from *The Random House Dictionary of the English Language*, *The Oxford English Dictionary*, and *Webster's Third New International Dictionary*, while the specification was relegated to a mere check on plain meaning. (*Id.* at 32-36.)

- "$V_{dd}$" was construed by considering *Radio Shack Dictionary of Electronics* and *IEEE Standard Dictionary of Electrical and Electronics Terms* dictionary definitions, and the specification was relegated to a check on plain meaning. (*Id.* at 18-19.)

- "Double bootstrapping" was not a claim term and the intrinsic evidence was analyzed to determine whether "double bootstrapping" was disclaimed. (*Id.* at 25-28.)

Under *Phillips*, Judge Martini's "plain meaning" approach to claim construction is no longer valid. *Id.* at 1320.[7] Consequently, his claim construction rulings should be vacated. Moreover, even if

---

[7] Micron's argument that MOSAID's Federal Circuit brief "confirms" that *Phillips* has no significance to the present case because "MOSAID made no attempt to show that Judge Martini was led astray by *Texas Digital*" is patently incorrect. Micron Brief at 10-11. MOSAID explicitly raised with the Federal Circuit the change in law issue from the *Phillips* case and, implicitly, the flawed and rejected *Texas Digital* methodology. For example, in its appellate brief, MOSAID stated: "The district court erred by construing the asserted claims of the Foss patents to disclaim the use of 'clock sources' to charge the boosting capacitor, notwithstanding that neither the claim language nor the specification supports finding a disclaimer. In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), this Court recently emphasized that '[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right
(Continued...)

1  some of Judge Martini's claim construction rulings *could possibly* have been issued under the *Phillips*

2  standard, neither party had the opportunity to argue its case under the *Phillips* standard.  The particular

3  change in law – from *Texas Digital* to *Phillips* – prevented a full and fair hearing under the correct

4  claim construction standard.

5  **IV.   COLLATERAL ESTOPPEL DOES NOT APPLY TO JUDGE MARTINI'S OPINION
        AND ORDER OF SUMMARY JUDGMENT OF INFRINGEMENT.**

6

7      **A.   *Phillips* Precludes The Application Of Collateral Estoppel To Judge Martini's
        Infringement Rulings.**

8      Micron's argument that the intervening change in law brought about by *Phillips* does not affect

9  the collateral estoppel analysis for Judge Martini's infringement rulings is baseless.  Micron Brief at

10  22.  Although the question of whether a product infringes a patent is a question of fact, Judge Martini's

11  non-infringement rulings are necessarily dependent on the claim construction rulings (*i.e.*, issues of

12  law), which were decided using the now-defunct *Texas Digital* methodology.

13      As Micron concedes, the starting point of Judge Martini's infringement analysis was his claim

14  construction: "Judge Martini could not have granted Infineon summary judgment without first

15  construing the claim terms[.]"  Micron Brief at 14-15.  Additionally, Judge Martini expressly stated in

16  his summary judgment opinion:

17      Infringement is a two step-process: the Court must construe the disputed terms contained
    in the asserted claims, and then compare the asserted claims as construed to the accused

18      products or processes.  Because the Court has already completed the first step by
    construing the disputed claim terms in its *Markman* Opinion and Order, the Court now

19      turns to the second step.

20  Jalali Decl. Ex. 7 at 7-8 (Summary Judgment Opinion) (citations omitted).  Indeed, the Federal Circuit

21  has repeatedly found that if claim constructions are flawed, a summary judgment ruling on

22  infringement based upon those flawed constructions must be rejected.  *See, e.g., Free Motion Fitness,*

23

24  (...Continued)

25  to exclude.'"  Jalali Supp. Decl. Ex. 21 at 50 (MOSAID Appellate Brief).  MOSAID also argued in its appellate brief that
    "[s]tarting its analysis not with the specification, but with the *Radio Shack* dictionary definition of 'latch' (as the entire

26  phrase 'latching level shifter' was not in the dictionary), led the district court inescapably astray." *Id.* at 56.  It further
    pointed out that "in *Phillips*, this Court addressed the dangers of relying on dictionary definitions – even from technical

27  dictionaries – without first confirming that they pertain to the claimed invention" (*id.* at 57-58), and "[w]hat the court
    should have done . . . was abandon its dictionary approach altogether." *Id.* at 58-59.

28

Case No. 5:02-cv-05772 JF                          9
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
DM_US\8418452

1 | *Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1353 (Fed. Cir. 2005); *Harris Corp. v. Ericsson Inc.*, 417 F.3d

2 | 1241, 1255 (Fed. Cir. 2005).  Thus, the Court should not apply collateral estoppel to Judge Martini's

3 | infringement findings because they were necessarily based upon and intertwined with the now-rejected

4 | claim construction framework used by Judge Martini.[8]

5 | **B.**    **Because Micron and ProMOS Have No Interest In The Infringement Findings,**

6 |          **The Court Should Disregard Their Arguments As To Those Rulings.**

7 |          Notwithstanding that the parties' motion to vacate the summary judgment infringement rulings

8 | should be granted because of change in law, neither Micron or ProMOS have an interest in opposing

9 | the motion to vacate the infringement findings.  Thus, the Court need not even consider Micron and

10 | ProMOS's collateral estoppel arguments with respect to Judge Martini's infringement rulings.

11 |          As a matter of law, Micron and ProMOS may not invoke collateral estoppel as to Judge

12 | Martini's infringement rulings with respect to Micron and ProMOS's products because those

13 | infringement rulings apply only to Infineon's products.  "A device not previously before the court, and

14 | shown to differ from those structures previously litigated, requires determination on its own facts."

15 | *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987) ("The district

16 | court found that type B was not identical to either type A or type C.  On this basis the district court

17 | correctly held that absent a prior determination of infringement with respect to type B, neither res

18 | judicata nor issue preclusion applied.").

19 |          Micron and ProMOS's products were not before Judge Martini when he made his infringement

20 | rulings.  That their products may be similar to Infineon's, or that ProMOS has licensed Infineon

21 | patents, is irrelevant for collateral estoppel purposes.  *See* Micron Brief at 21:18-26; ProMOS Brief at

22 | 8-9.  While Micron and ProMOS may be able to argue that the Eastern District of Texas should rule

23 |

24 | [8] As an example, after construing "latching" and determining that a "latching level shifter requires two pull-down transistors," the Court stated that "[h]ere, there is no dispute that the level shifters in Infineon's accused products cannot

25 | indefinitely retain data states in the absence of inputs; they do not contain the requisite pull-down transistors." Jalali Decl. Ex. 7 at 13 (Summary Judgment Opinion). In another example, the court construed "switching circuit . . . alternating the

26 | level" to mean "alternately connecting the second terminal of the boosting capacitor . . . *without the use of clock sources to charge the boosting capacitor.*" *Id.* at 16. Then the court determined that "Hatteras and the other [Infineon] accused

27 | products use a 'clock source' to charge the boosting capacitor . . . . As a result, the accused products do not literally infringe . . . ." *Id.* at 20.

28 |

1   the same way Judge Martini did because their products are similar to Infineon's, Micron and ProMOS

2   are not entitled to rely on collateral estoppel. *Del Mar Avionics*, 836 F.2d at 1324.  Moreover, Micron

3   and ProMOS have offered no evidence and have made no attempt to show any identity between their

4   products and any of Infineon's products.[9]

5        Thus, the only parties with an interest in Judge Martini's infringement findings are Infineon

6   and MOSAID, and they have both agreed to vacate those findings.  This Court has stated that as long

7   as third parties are not affected, MOSAID and Infineon are entirely within their rights to vacate Judge

8   Martini's rulings as part of their settlement.  Jalali Supp. Decl. Ex. 22 (June 9, 2006 Hearing

9   Transcript).  Therefore, the Court should vacate Judge Martini's infringement findings.

10  **V.    IT IS IRRELEVANT WHETHER, IN GENERAL, COLLATERAL ESTOPPEL MAY
          BE APPLIED TO CLAIM CONSTRUCTION RULINGS.**

11

12       Micron and ProMOS spend significant time in their briefs discussing whether as a general

13  matter, collateral estoppel may be applied to claim construction orders.  Micron Brief at 16-18;

14  ProMOS Brief at 10.[10]  Regardless, this Court need not address whether collateral estoppel may be

15  applied to claim construction orders generally, because even assuming that collateral estoppel may be

16  applied, as discussed above, *Phillips* is an intervening change in law that precludes the application of

17  collateral estoppel to Judge Martini's rulings.

18       Micron and ProMOS have pointed to no case in which a court applied collateral estoppel to a

19  claim construction ruling where, as in the present case, a change in law rejected the entire framework

20  the court used to decide the claim construction.  Significantly, although both Micron and ProMOS rely

21  on *TM Patents, L.P. v. International Business Machines Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999),

22  the court in that case expressly acknowledged that a change in law would prevent the application of

23  collateral estoppel to a claim construction order.  *TM Patents*, 72 F. Supp. 2d at 379.

24  _____

25  [9] Micron does not need MOSAID's infringement contentions (as it argues) to show that one or more of its DRAM products
    are identical to Infineon's.

26  [10] Notably, in response to the Court's question that "there is no clear authority as to the preclusive effect of a prior
27  Markman ruling, is there?" (Jalali Decl. Ex. 19 at 16:15-17 [October 20, 2006 Hearing Transcript]), Micron's counsel
    replied, "I think that's a fair statement, your Honor." *Id.* at 16:18-19.

28

1    *Abbott Laboratories v. Impax Laboratories, Inc.*, is the only other case cited by Micron or

2    ProMOS in which an intervening change of law is even mentioned in the collateral estoppel analysis.

3    *Abbott Labs. v. Impax Labs., Inc.*, Case Nos. 00 C 5092, 00 C 7865, 01 C 1648, 2003 WL 1563426, at

4    *4 (N.D. Ill.  Mar. 26, 2003).  Micron Brief at 8, 17.  *Abbott Laboratories* is inapposite to the present

5    action, however, because in that case, the court found the alleged intervening change in law was

6    wholly irrelevant to claim construction.  In *Abbott Laboratories*, the Court rejected the contention that

7    the Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* changed the

8    law applicable to claim construction.  *Abbott Labs.*, 2003 WL 1563426, at *13-14.  *Festo*, in fact, was

9    directed, not to claim construction, but instead to the proper application of patent prosecution history

10   estoppel as a bar to finding infringement under the doctrine of equivalents.  *Id.*  Unlike *Abbott*

11   *Laboratories*, there can be no real dispute here that *Phillips* changed the proper analysis for claim

12   construction.

13        The remainder of the cases cited by Micron and ProMOS are all distinguishable from the

14   present case, because none were decided in the context of a material change in law.[11]  The intervening

15   change in controlling legal principles set forth in *Phillips* precludes the application of collateral

16   estoppel to Judge Martini's rulings.[12]

17

---

18   [11] *See In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994); *Nichols & Co. v. United States*, 586 F.2d 826, 830 (C.C.P.A. 1978)

19   (rejecting a procedural change in law argument because there is no case law that an intervening change in procedural law
     precludes application of collateral estoppel on a substantive issue).  In *Dynacore Holding Corp. v. U.S. Philips Corp.*, 363

20   F.3d 1263, 1268 (Fed. Cir. 2004) (*cited in* Micron Brief at 17), change in law was not even an issue.  Other cases cited by
     Micron and ProMOS found no relevant intervening change in law.  *See Ernest W. Hahn, Inc. v. Codding*, Case Nos. C-75-

21   2706 RPA, C-76-2424 RPA, C-80-2974 RPA, 1981 WL 2191, at *2 (N.D. Cal. Aug. 17, 1981); *Nichols*, 586 F.2d at 830;
     *see also EEOC v. American Airlines, Inc.*, 48 F.3d 164 (5th Cir. 1995) (finding no change in controlling legal principles
     because the lower court applied the standard later adopted by the Supreme Court).

22   [12] Even if Micron and ProMOS could overcome the change in law hurdle, they have not and cannot prove that the

23   "necessary" prong of collateral estoppel four part test is met for the large majority of Judge Martini's claim construction
     rulings.  The Fifth Circuit and Federal Circuit cases have held that in order for collateral estoppel to apply to a particular

24   claim construction ruling, it must be *necessary* to a final judgment of infringement or validity.  *Studiengesellschaft Kohle v.*
     *Eastman Kodak Co.*, 616 F.2d 1315, 1332 (5th Cir. 1980); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed. Cir.

25   1983); *Jackson Jordan, Inc. v. Plasser Amer. Corp.*, 747 F.2d 1567, 1577 (Fed. Cir. 1984); *Pfaff v. Wells Elecs., Inc.*, 5
     F.3d 514, 518 (Fed. Cir. 1993); *Phonometrics, Inc. v. N. Telecom, Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998); *Kollmorgen*

26   *Corp. v. Yaskawa Elec. Corp.*, 21 Fed. Appx. 893 (Fed. Cir. 2001); *RF Delaware, Inc. v. Pac. Keystone Tech.*, 326 F.3d
     1255, 1261-62 (Fed. Cir. 2003).  In the face of substantial controlling Fifth Circuit and Federal Circuit precedent, the Court

27   should reject Microns' attempt to rely on a Southern District of New York case, which has no precedential authority here.
     Micron Brief at 14:14-20 (citing *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 72 F. Supp. 2d 370, 378 (S.D.N.Y. 1999).

28                                                                                                      (Continued...)

1  **VI.   COLLATERAL ESTOPPEL DOES NOT APPLY TO JUDGE MARTINI'S ORDER**
2       **LIMITING DAMAGES.**

3           In his summary judgment order limiting damages, Judge Martini found that MOSAID had not

4  complied with the marking statute (28 U.S.C. § 287) because it failed to mark its products with patent

5  numbers and therefore limited damages for all asserted patents to the dates of actual notice.  Jalali

6  Decl. Ex. 7 at 51-52 (Summary Judgment Opinion).  Contrary to Micron's assertion, collateral estoppel

7  will <u>not</u> apply against MOSAID in the action pending in the Eastern District of Texas (the "Texas

8  Action") with respect to Judge Martini's summary judgment order limiting damages.  *See* Micron Brief

9  at 23; *see also* ProMOS Brief at 4.  As explained below, compliance with the marking statute is

10 dependent on the particular patent claims at issue in a particular litigation.  Moreover, even if the

11 claims to be at issue in Texas are identical to those in the Infineon case, compliance with the marking

12 statue may change over time – failure to comply with the marking statute at one point in time does not

13 preclude compliance at a later date.  Judge Martini's blanket ruling that no damages may be recovered

14 for infringement prior to actual notice on all patent claims cannot be given collateral estoppel effect.[13]

15          It would be legal error to conclude that Judge Martini's finding that damages could not be

16 recovered from Infineon before actual notice *on any patents* must be applied in every other action that

17 the same patents are asserted.  In particular, compliance with the marking statute is directly dependent

18 upon the particular patent claims at issue in a particular action.  For instance, marking is not required

19 for method claim patents.  *See, e.g., Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir.

20 1983) (citing *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 56 S. Ct. 528

21

22 _____

   (...Continued)

23     Moreover, the construction of the substantial majority of the claim terms was not necessary to the Court's summary
   judgment ruling on non-infringement.  Indeed, Micron argued that only five (of the *thirty*) constructions were "necessary"
24 for the infringement ruling.  *Id.* at 14-15.  ProMOS failed to identify *any* terms as necessary for the ruling, preferring
   instead to rely on a conclusory statement that all were necessary.  ProMOS Brief at 9.

25 [13] The Court also issued findings with respect to the dates of actual notice to Infineon.  *See* Jalali Decl, Ex. 7 at 56
   (Summary Judgment Opinion).  Collateral estoppel is immaterial to Judge Martini's findings of the actual notice dates.  The
26 parties have agreed to vacate these rulings and the Court has indicated that the parties are within their rights to vacatur if no
   third parties are affected.  Micron and ProMOS simply have no interest in preventing vacatur of the findings with respect to
27 actual notice to Infineon.

28

HOWREY LLP

Case No. 5:02-cv-05772 JF
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
  DM_US\8418452

13

1  (1936)); *Hansen v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed. Cir. 1983).  Where a patent

2  contains both method and apparatus claims (as MOSAID's patents do), whether a patent owner must

3  comply with the patent marking requirement depends on the particular patent claims at issue in the

4  infringement action.  *Hansen*, 718 F.2d at 1083 (no marking required where only method claims were

5  infringed in a patent that contained both method and apparatus claims); *see also Devices for Medicine,*

6  *Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) (no marking required where only method claims

7  were asserted).[14]  Thus, the marking issue must be re-litigated in the Texas Action based upon the

8  particular facts in that action, i.e., the particular patent claims at issue against each defendant in that

9  action.

10        Moreover, assuming that for particular patents asserted in Texas it is found that MOSAID must

11  comply with the marking statute, the court in the Texas Action must determine whether, at some point

12  after Judge Martini's ruling, MOSAID began full compliance with the marking statute.  Once in

13  compliance with the provisions of the marking statute, the patentee is at least entitled to damages from

14  the date compliance began.  *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1536-37 (Fed. Cir.

15  1993); *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 599 (5th Cir. 1963).  As stated by the Federal

16  Circuit:

17        Allowing recovery of damages from the point of full compliance with the marking
       statute furthers the policy of encouraging marking to provide notice to the public, even
18       if initial marking after issuance of the patent is delayed.  The sooner one complies with
       the marking requirements, the more likely one is to maximize the period of recoverable
19       damages.  To prevent recovery of damages for failure to immediately mark, however,
       provides no incentive for a patentee who inadvertently or unavoidably fails to mark
20       initially to mark in the future.

21  *Am. Med.*, 6 F.3d at 1537.  "Therefore, once marking has begun in compliance with the statute, *in rem*

22  notice is provided and there is no reason to further limit damages on this account."  *Id.*  Thus, the court

23

24  ────────────────────
   [14] There are no *en banc* Federal Circuit cases on this issue.  As the oldest Federal Circuit case on point, *Hansen* is the
25  controlling law (not *Devices for Medicine*).  *See, e.g., Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir.
   1988), *cert. denied*, 493 U.S. 814 (1989) ("This court has adopted the rule that prior decisions of a panel of the court are
26  binding precedent on subsequent panels unless and until overturned *in banc* . . . Where there is a direct conflict, the
   precedential decision is the first.") (citations omitted); *YBM Magnex, Inc. v. Int'l Trade Comm'n*, 145 F.3d 1317, 1319 n. 2
27  (Fed. Cir. 1998) ("Even were there an apparent conflict in statements of Federal Circuit law, the earlier statement prevails
   unless or until it has been overruled *in banc*.").

28

1 | in Texas must also revisit the marking issue to determine whether MOSAID is now in compliance with

2 | the marking statute.

3 |      Accordingly, Judge Martini's finding that MOSAID was not entitled to damages prior to actual

4 | notice should not be given collateral estoppel effect. In the Texas Action, MOSAID will be entitled to

5 | a new and separate determination based on the particular patent claims at issue there and MOSAID's

6 | relevant compliance with the marking requirements.

7 | **VII.   THE EQUITIES FAVOR VACATING JUDGE MARTINI'S RULINGS.**

8 |      In ordering further briefing on the joint motion to vacate, the Court stated that vacatur is proper

9 | if Judge Martini's rulings are not entitled to preclusive effect. Jalali Decl. Ex. 1 at 6 (Order Denying

10 | Motions to Intervene) ("After considering the oral arguments made at the hearing, the Court is

11 | persuaded that vacatur is appropriate if Judge Martini's rulings are not entitled to collateral estoppel

12 | effect, and that vacatur is inappropriate if the rulings are so entitled."). Nevertheless, both Micron and

13 | ProMOS chose to revisit their arguments about the equities involved in vacating a judgment, separate

14 | from the specific issue posed by the Court. Below, MOSAID addresses those arguments.

15 |      Motions to vacate are decided under Federal Rule of Civil Procedure 60(b). In relevant part,

16 | Rule 60(b)(5) provides that a prior judgment may be vacated if "it is no longer equitable that the

17 | judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). In deciding a motion to

18 | vacate a judgment rendered moot by settlement, district courts in the Ninth Circuit must weigh the

19 | hardships resulting from a decision to vacate and the competing values of finality of judgment and the

20 | right to relitigation of unreviewed disputes. *American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d

21 | 1164, 1168 (9th Cir. 1998).

22 |      Micron and ProMOS argue that granting a motion to vacate is an extraordinary remedy.

23 | However, in contrast to an *appellate* court vacating a *district* court's judgment, a district court vacating

24 | its own judgment is *not* an extraordinary remedy. *American Games*, 142 F.3d at 1167, 1170 ("Given

25 | the fact-intensive nature of the inquiry required, it seems appropriate that a district court should enjoy

26 | greater equitable discretion when reviewing its own judgments than do appellate courts operating at a

27 | distance.")

28 |

1    Thus, the cases that ProMOS and Micron cite in support of their argument that vacatur is an

2    extraordinary remedy are inapposite.[15] They involved an *appeals court* considering vacatur of a *lower*

3    *court* judgment, or were otherwise inapplicable to the instant action. *See Ringsby Truck Lines, Inc. v.*

4    *W. Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982) (noting that the appellate court does

5    *not* reach the decision of "whether [the judgment] should be dismissed by the district court."); *U.S.*

6    *Bancorp Mortg. Co. v. Bonner Mall P'shp*, 513 U.S. 18, 19 (1994) ("The question in this case is

7    whether appellate courts in the federal system should vacate civil judgments of subordinate courts in

8    cases that are settled after appeal is filed or certiorari sought."). Notably, Micron recognizes the Ninth

9    Circuit's law on the matter as stated in *American Games* but suggests that this Court depart from the

10   established rule of this Circuit of balancing the equities. Micron Brief at 24.

11   Micron and ProMOS also mistakenly rely on *National Union Fire Insurance v. Seafirst Corp.*,

12   891 F.2d 762 (9th Cir. 1989) and *Tomlin v. McDaniel*, 865 F.2d 209 (9th Cir. 1989). Micron Brief at

13   2, 25; ProMOS Brief at 3-4. In *National Union,* a district court judgment was not vacated because of

14   its *potential* collateral estoppel effect. *Nat'l Union*, 891 F.2d at 764. This is not analogous to the

15   instant action because – unlike in *National Union* – here there is no potential collateral estoppel effect

16   to the judgment. *See* Section III, *supra* (collateral estoppel does not apply here because *Phillips* is an

17   intervening change in law). Moreover, *Tomlin* is inapposite as it addresses a different part of Rule

18   60(b)(5), which is "limited to a judgment *based on* a prior judgment reversed or otherwise vacated –

19   *based* in the sense of res judicata, or collateral estoppel, or somehow part of the same proceeding."

20   *Tomlin*, 865 F.2d at 210-11 (emphasis added). The instant motion to vacate is not based on a change in

21   law to a decision that is "somehow part of the same proceeding."

22   The equities counsel in favor of vacating Judge Martini's rulings. It would be unfair to hold

23   MOSAID to a ruling made within a legal framework – *Texas Digital* – that is now known to be

24   incorrect. As discussed above and in MOSAID's brief, Judge Martini and the parties had to view and

25   present their arguments through the prism of *Texas Digital*, which set forth the relevant legal standard

26   _____

27   [15] Micron's argument, and the cases relied upon by Micron, were previously argued by Micron and distinguished by
     MOSAID in its Opposition to the Motion to Intervene. *See* MOSAID Opp. To Motion to Intervene at 8-9.

28

1  for claim construction at the time.  MOSAID Brief at 5-6.  Thus, even if some of Judge Martini's claim

2  construction rulings *could possibly* have been issued under the *Phillips* standard, the orders should still

3  be vacated because neither party had the opportunity to argue its case under the *Phillips* standard.  In

4  other words, the particular change in law – from *Texas Digital* to *Phillips* – prevented a full and fair

5  hearing under the correct claim construction standard.  *See, e.g., Mendelovitz*, 693 F.2d at 579 (holding

6  that giving collateral estoppel effect to a prior decision, after which there had been a change in the law

7  regarding price fixing, would "deny [plaintiff] a 'full and fair opportunity to litigate' the allegation of

8  vertical price fixing under the current legal standard").

9       Micron and ProMOS cite and quote out of context extensively from an unpublished order in the

10  case *Mitchell v. Samsung Electronics Co., Ltd.*, Case No. C01-0295 SI, Document No. 293 (N.D. Cal.

11  2002).  That order, however, is also inapplicable to this case.  Because the order in *Mitchell* was issued

12  before *Phillips*, it does not address the change in claim construction law.  In explaining the reason for

13  denying the motion to vacatur, *Mitchell* notes the claim construction order's precedential value and

14  states that "[a]ny court asked to construe the [] patent in the future will do so based on the same limited

15  scope of information relied upon by this Court."[16] *Id.* at 4.  In the case at bar, the facts are entirely

16  different because here, the change in law presented in *Phillips* strips Judge Martini's orders of

17  precedential value.

18       Contrary to Micron's and ProMOS's assertions, MOSAID is not seeking to bury an adverse

19  decision but simply wishes to remove claim constructions and related summary judgment rulings based

20  on no-longer applicable law.  It follows that vacatur will not deprive the public of any benefit since

21  those rulings were based on outdated law and accordingly are of no precedential value.  Nevertheless,

22  Micron and ProMOS seek to benefit from Judge Martini's *Texas Digital*-based rulings by chaining

23  MOSAID to them without having a full and fair hearing under the correct legal standard, since *Phillips*

24  came after the rulings.  In contrast, there will be no harm to Micron or ProMOS if the motion to vacate

25

26  _____

27  [16] The *Mitchell* court emphasized the precedential value of the orders that it decides not to vacate: "Judicial precedents are presumptively correct and valuable to the legal community as a whole." *Mitchell*, Case No. C01-0295 SI, Document No. 293 at 4.

28

1   is granted – they simply will not receive the benefit of precluding MOSAID from having an

2   opportunity to address the claim constructions under the correct legal standard.  There is nothing

3   equitable about that.  Consequently, the equities in this case favor vacatur.

4   **VIII.    CONCLUSION**

5          For the foregoing reasons, MOSAID respectfully requests that the Court grant the parties' Joint

6   Motion to Vacate.

7

8   Dated:  December 15, 2006                    Respectfully submitted,

9                                                HOWREY LLP

10

11                                               By:  _____/s/ Scott Wales_____

12                                                           Scott Wales

13                                               Attorneys for Defendant
                                                 MOSAID TECHNOLOGIES
14                                               INCORPORATED

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

Case No.  5:02-cv-05772 JF                               18
DEFT'S RESPONSE TO MICRON AND PROMOS'S
MEMORANDA ON THE COLLATERAL ESTOPPEL EFFECT OF
JUDGE MARTINI'S RULINGS
  DM_US\8418452