1  Yitai Hu (California Admission Pending) (yhu@akingump.com)
   Sean P. DeBruine (SBN 168071) (sdebruine@akingump.com)
2  S.H. Michael Kim (SBN 203491) (mkim@akingump.com)
   AKIN GUMP STRAUSS HAUER & FELD LLP
3  2 Palo Alto Square
   3000 El Camino Real, Suite 400
4  Palo Alto, California  94306
   Telephone:     650-838-2000
5  Facsimile:     650-838-2001

6  Attorneys for *Amicus Curiae*
   PROMOS TECHNOLOGIES INC.

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  INFINEON TECHNOLOGIES NORTH        | **CASE NO.  C 02-05772 JF**
    AMERICA CORP.,
13                                      | **Reply Brief Of *Amicus Curiae* ProMOS**
                                        | **Technologies Inc. On Collateral**
                         Plaintiff,     | **Estoppel And Vacatur**
14
              v.                        | Date:   February 2, 2007
15                                      | Time:   9:00 AM
                                        | Courtroom: 3, 5th Floor
16  MOSAID TECHNOLOGIES, INC.,          | Judge: Hon. Jeremy Fogel

17                       Defendant.

18

19

20

21

22

23

24

25

26

27

28

1   Defendant MOSAID Technologies, Inc. ("MOSAID") has failed to show that collateral

2   estoppel should not apply to the previous rulings of this court such that those rulings should be

3   vacated.  First, MOSAID's arguments rely entirely on its contention that the discussion of claim

4   construction in *Phillips* so changed the law that the Court's noninfringement judgment, and the claim

5   construction included in that judgment, is not entitled to preclusive effect.  As established by ProMOS,

6   and as discussed in more detail below, that position is simply not supported by the facts or the law.

7   First, since *Phillips* was decided before the summary judgment order was entered, and before

8   MOSAID dismissed its appeal, *Phillips* is not an "intervening" change in the law.  Moreover, *Phillips*

9   is simply not a "change in the law," much less the "significant" or "drastic" change necessary to relieve

10  MOSAID from being bound by the prior adverse claim construction rulings.  However, this Court need

11  not even reach that issue.  There are other aspects of the rulings MOSAID would have vacated that

12  have nothing to do with claim construction, and MOSAID provides no reason whatsoever as to why

13  the entirety of the judgment should be vacated because of an imagined flaw in one part.  Moreover,

14  MOSAID's motion now directly impacts a party not before this Court, and should be denied on that

15  basis alone.

16  **I.      VACATUR WOULD PREJUDICE PARTIES NOT REPRESENTED HERE**

17          As discussed in ProMOS's opening brief, there are several factual findings in the final

18  judgment at issue here that are wholly unrelated to claim construction issues.  In particular, this Court

19  found as a matter of fact that MOSAID is not entitled to recover damages for any infringement of the

20  subject patents prior to the date it provided actual notice of its infringement claims.  April 1, 2005

21  Summary Judgment Order ("SJ Order") at 4-5; s*ee* Opening Brief of *Amicus Curiae* ProMOS

22  Technologies Inc. ("ProMOS Br.") at 1.  Notwithstanding this ruling, MOSAID was today granted

23  leave to amend its complaint in the Texas action.  Declaration of Sean P. DeBruine in Support of

24  ProMOS's Reply Brief ("DeBruine Decl."), Ex. A.  MOSAID has filed that Second Amended

25  Complaint alleging infringement of six of the patents at issue here by a new defendant, Mosel Vitelic,

26  Inc.  DeBruine Decl., Ex. B.  In that complaint, MOSAID alleges only that Mosel Vitelic has infringed

27  in the past.  *Id.* ¶ 32 (All of the parties, including defendant Mosel Vitelic, are alleged to "have

28  infringed" the '643 patent, MOSAID alleges that only Micron, PCS and ProMOS "are infringing."),

1  and ¶¶ 37, 42, 57, 68 and 73 (same).  In other words, MOSAID is seeking only past damages from

2  Mosel Vitelic.  On these facts it may be that the Court's decision that MOSAID has no claim for past

3  damages absent actual notice of infringement will provide Mosel Vitelic a complete defense to some or

4  all of MOSAID's complaint.  Yet Mosel Vitelic is not even represented here and cannot raise this

5  argument.  For this reason alone the Orders should not be vacated, and any relevant collateral estoppel

6  effect should be argued by the affected parties in the Texas case and any future litigation.

7  **II.     COLLATERAL ESTOPPEL APPLIES**

8      **A.     There is No <u>Significant</u> Change in Controlling Law to Avoid Collateral Estoppel**

9      MOSAID argues that the law of the Fifth Circuit applies to the determination whether collateral

10  estoppel will apply in the Texas action.  MOSAID's Memorandum of Points and Authorities on the

11  Collateral Estoppel Effect of Judge Martini's Rulings ("MOSAID Mem.") at 9 ("Consequently, Fifth

12  Circuit law governs whether the doctrine of collateral estoppel should be applied in the Eastern District

13  of Texas.").  MOSAID, however, avoids the plain fact that all of the elements necessary to apply

14  collateral estoppel under controlling Fifth Circuit are present in this case.  MOSAID summarizes its

15  position in the following passage:

16          Because the law is clear that collateral estoppel does not apply where

17          there has been a change in controlling legal principles, as here, MOSAID
        does not address whether the individual collateral estoppel requirements

18          have been met in the present action.  However, MOSAID in no way
        concedes that the elements of collateral estoppel are satisfied in the

19          present case under either Fifth Circuit or Ninth Circuit law.

20
21  MOSAID Mem. at 10, n.12.  In essence, MOSAID's argument is simply that collateral estoppel does

22  not apply in this case because an alleged "intervening law" <u>exception</u> prevents "fair" application of

23  collateral estoppel against it where MOSAID litigated the identical issues, lost, appealed, and then

24  attempted to settle its way out from under the burden of the valid final judgment.  MOSAID does not

25  contest that all of the other requirements of collateral estoppel are met.

26      Fifth Circuit law requires more than a mere clarification before an intervening change in the

27  law will prevent the application of issue preclusion.  The Fifth Circuit requires a drastic change or

28  actual legal conflict caused by the intervening change.  *Society of Separationists, Inc. v. Herman*, 939

1    F.2d 1207, 1214 (5th Cir. 1991) (holding that collateral estoppel applies unless there is a "drastic

2    change in applicable law" identified by an actual conflict), *overruled on other grounds*, 959 F.2d 1283

3    (5th Cir. 1992). In this case, there is no such drastic change or actual conflict.

4        MOSAID argues that the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303

5    (Fed. Cir. 2005) somehow changed the law of claim construction in patent litigation and this Court's

6    Orders are therefore not entitled to any preclusive effect in the Texas action. According to MOSAID,

7    Judge Martini construed the patents "according to the no-longer valid principles set forth in *Texas*

8    *Digital Systems, Inc. v. Telegenix, Inc.*" MOSAID Mem. at 1 (citing 308 F.3d 1193 (Fed. Cir. 2002)).

9    Therefore, argues MOSAID, this Court should vacate the final judgment in order to give MOSAID yet

10   another bite at the apple.

11        *Phillips* did not overrule *Texas Digital*. *Phillips*, 415 F.3d at 1324 ("In *Vitronics,* we did not

12   attempt to provide a rigid algorithm for claim construction, but simply attempted to explain why, in

13   general, certain types of evidence are more valuable than others. Today, we adhere to that approach

14   and reaffirm the approach to claim construction outlined in that case, in *Markman,* and in *Innova*."). In

15   fact, *Phillips* did not overrule anything. *Phillips* merely clarified the law of claim construction.

16   *Phillips*, 415 F.3d at 1312 ("We have also previously considered the use of dictionaries in claim

17   construction. What we have said in that regard requires *clarification*.") (emphasis supplied). That

18   *Phillips* was, at most, a clarification of existing law has been recognized by many courts. *See, e.g.*,

19   *Intex Recreation Corp. v. Metalast, S.A. Sociedad Unipersonal*, 400 F. Supp. 2d 123, 128 (D.D.C.

20   2005); *Pioneer Labs., Inc. v. Stryker Corp.*, 395 F. Supp. 2d 612, 617 (W.D. Mich. 2005)

21   (characterizing *Phillips* as an elaboration), *affirmed* No. 06-1142, 2006 WL 2382895, at *1 (Fed. Cir.

22   Aug. 11, 2006); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 386 F. Supp. 2d 526, 532 (S.D.N.Y. 2005)

23   (characterizing *Phillips* as a clarification). *Phillips* reaffirmed the approach to claim construction taken

24   by the previous *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) court – an

25   approach endorsed by Judge Martini. Jalali Decl., Ex. 2 at 14 (citing *Vitronics*).

26        MOSAID's criticism of Judge Martini's decision focuses on his purported reliance on

27   dictionary definitions. However, even after *Phillips*, several Federal Circuit opinions have used

28   dictionaries and treatises to assist in ascertaining the ordinary meaning of claim terms. *See Aquatex*

1   *Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1381-1382 (Fed. Cir. 2005) (construing the term

2   "fiberfill" consistently with dictionaries); *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343,

3   1348-1349 (Fed. Cir. 2005) (finding the ordinary meaning of "adjacent" by starting with dictionary

4   definitions and using intrinsic evidence to determine which definition is consistent with the use in the

5   patent); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1375 (Fed. Cir. 2005) (holding that "the

6   district court did not err by referencing dictionary definitions of 'saccharides'"); *Atofina v. Great Lakes*

7   *Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006) (agreeing with district court's construction of

8   "catalyst" from technical dictionary); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1306-1307

9   (Fed. Cir. 2006) (holding that district court erred by reading limitations from the specification into the

10  claim term and resorting to a broader dictionary definition).

11      Additionally, MOSAID's argument that *Phillips* entails such a drastic change in the law such

12  that claim construction orders relying on *Texas Digital* are not valid has been rejected by several other

13  district courts since the *Phillips* decision.  *Intex Recreation Corp.*, 400 F. Supp. 2d at 128-130

14  (characterizing *Phillips* as a clarification and refusing to alter its claim construction on reconsideration

15  despite citations to and language following *Texas Digital*); *Translogic Tech., Inc. v. Hitachi, Ltd.*, 404

16  F. Supp. 2d 1250, 1255-1256 (D. Or. 2005) (denying reconsideration based on *Phillips* because the pre-

17  *Phillips* claim construction was not "entirely divorced" from the specification); *see also Ingenio,*

18  *Filiale de Loto-Quebec, Inc. v. Gamelogic, Inc.*, 445 F. Supp. 2d 443, 447-448 and 451 (D. Del. 2006)

19  (citing *Phillips* as the law of claim construction and applying dictionary definition for "lottery game"

20  term).  Accordingly, as have other district courts presented with this argument, the Court should reject

21  MOSAID's attempt to not only characterize *Phillips* as a sweeping and drastic change in the law, but

22  also reject the attempt to relitigate those selfsame issues MOSAID litigated, lost *and* appealed.

23  **B.      MOSAID's Authority is Inapposite to the Question**

24      MOSAID states that Fifth Circuit law applies to whether collateral estoppel will apply to

25  preclude relitigation in the Texas action.[1]  Even giving full weight to MOSAID's cited Fifth Circuit

26

27  _____

    [1] Nevertheless, MOSAID then proceeds to invoke Ninth Circuit law for its conclusion.

28

1   authority, that authority simply does not stand for the proposition that *Phillips* is such an intervening

2   change in the law as to allow MOSAID to avoid the final judgment entered by this Court.

3       MOSAID cites *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), *Copeland v.*

4   *Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995), *Petro-Hunt, LLC v. United States*, 365 F.3d

5   385, 397 (5th Cir. 2004), and *Mendelovitz v. Adolph Coors Co.*, 693 F.2d 570, 579 (5th Cir. 1982) to

6   support its conclusion that it would be "unfair" to apply collateral estoppel in the Texas action.

7   MOSAID Mem. at 9.  However, *Shanbaum* is not a collateral estoppel case at all, but rather a *res*

8   *judicata* or claim preclusion case.  10 F.3d at 313 ("Mrs. Shanbaum's contention that the government

9   waived res judicata simply because it mistakenly pleaded collateral estoppel in the pretrial order is

10  unavailing.").  *Copeland*, if anything, stands for the proposition that the issue of law or fact to be

11  precluded must be identical to the one from the previous action.  47 F.3d at 1423 ("Thus, the

12  confirmation proceeding presented a different issue, analyzed using a different legal standard than that

13  presented by Copeland's individual breach of contract claim.").  Additionally, like *Copeland*, *Petro-*

14  *Hunt* stands only for the proposition that collateral estoppel will apply if and only if the questions of

15  law or fact are "identical" and were "actually litigated."  365 F.3d at 398-399 ("Because these questions

16  of law are not 'identical' to the issues raised in *Nebo Oil* and were not 'actually litigated' in *Nebo Oil*,

17  we find that the United States is not precluded, under collateral estoppel, from raising them in this

18  case.").  As discussed above, MOSAID does not dispute that the relevant issues are identical.

19      *Mendelovitz* involved the plaintiff's attempt to invoke *offensive* collateral estoppel against a

20  defendant.  693 F.2d at 579 ("D. *Offensive Collateral Estoppel*") (section heading).  Most importantly,

21  both the Fifth Circuit and the Eastern District of Texas have noted that the unfairness factor is likely

22  not applicable to issues of defensive collateral estoppel, but rather only to offensive collateral estoppel.

23  *Lindsey v. Prive Corp.*, 161 F.3d 886, 891 n.2 (5th Cir. 1998) ("We have also noted on occasion that

24  issue preclusion applies only where there is no special circumstance that would render preclusion

25  inappropriate or unfair.  This requirement originated from concerns about offensive collateral

26  estoppel.") (citations and quotations omitted); *Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658, 663 n.2

27  (E.D. Tex. 2000) ("All of these cases [*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391

28

1   (5th Cir. 1998), *Shanbaum* and *Copeland*] involved the use of offensive issue preclusion, and the

2   fourth requirement arguably only applies to such cases.").

3        For these reasons, this Court should not be swayed by MOSAID's plea to assist it in avoiding

4   the consequences of the final judgment entered by this Court.  Collateral estoppel will apply in the

5   Texas action under Fifth Circuit president, and, therefore, this Court should not vacate its final

6   judgment.

7        **C.**    **Judge Martini's Claim Construction Follows the *Phillips* Approach**

8        Judge Martini did, in fact, cite *Texas Digital* in his claim construction opinion.  However, Judge

9   Martini did not render a claim construction that is "entirely divorced" from the intrinsic evidence.

10  Absent such a showing, there is simply no basis in fact or law to disturb finality in this case.

11  Substantial principles of judicial economy and finality counsel against disturbing these Orders.

12  MOSAID, through the clever use of bullet points, argues that Judge Martini's rulings were so

13  entrenched in *Texas Digital* that they must have been erroneous.  MOSAID Mem. at 5-6 ("Judge

14  Martini cited to *Texas Digital* <u>eight</u> times and its progeny, *Brookhill-Wilk*, <u>seven</u> times.").  However, a

15  less cursory review of Judge Martini's claim construction shows the superficial nature of MOSAID's

16  argument.

17       MOSAID argues that that Judge Martini, in "The Law of Claim Construction" section of his

18  opinion, makes statements inconsistent with *Phillips*.  This is simply not the case as the following

19  quotations from his opinion show.  Judge Martini followed the *Phillips* regime by noting that in his

20  analysis "[c]laim construction begins with and remains focused on the language of the claims because

21  it is that language the patentee purposefully chose to 'particularly point[] out and distinctly claim[] the

22  subject matter which the patentee regards as his invention.'"  Jalali Decl., Ex. 2 at 12 (quoting *Texas

23  Digital*); *see Phillips*, 415 F.3d at 1312.  Judge Martini continued by noting that courts may look to the

24  intrinsic evidence, as well as appropriate extrinsic evidence, such as dictionaries.  Jalali Decl., Ex. 2 at

25  12-13; *see Phillips*, 415 F.3d at 1318.  Judge Martini recognized that context is significant in claim

26  construction.  Jalali Decl., Ex. 2 at 13; *see Phillips*, 415 F.3d at 1314.  Judge Martini's analysis noted

27  that the claims must be read in light of the specification.  Jalali Decl., Ex. 2 at 13; *see Phillips*, 415

28  F.3d at 1315.  Additionally, Judge Martini recognized that caution must be exercised when looking to

1    general purpose dictionaries for the ordinary meaning of claim terms.  Jalali Decl., Ex. 2 at 13; *see*

2    *Phillips*, 415 F.3d at 1322.  Finally, Judge Martini properly recognized that the analysis of the claims

3    starts from intrinsic evidence.  Jalali Decl., Ex. 2 at 14 ("If the ordinary meaning can be ascertained

4    from the intrinsic evidence and contemporaneous dictionaries and treatises, the Court need not look to

5    the extrinsic evidence as part of its obligation to construe the disputed claim terms."); *see Phillips*, 415

6    F.3d at 1313-1314.

7        Because Judge Martini's claim construction approach, in fact, followed the *Phillips* regime,

8    even if *Phillips* represented an drastic change in the law, there would be no need to vacate the Orders.

9    MOSAID only identifies a single claim term that allegedly received an erroneous construction –

10   "latching level shifter."  MOSAID Mem. at 6.  Judge Martini's construction of the "latching level

11   shifter" term resulted in a construction manifestly not divorced from the specification, but also

12   followed the law as subsequently articulated in *Phillips*.

13       It is important to note that the parties agreed to a definition of the term "level shifter."  Jalali

14   Decl., Ex. 2 at 43.  The only dispute regarding the term "latching level shifter" was the meaning of the

15   term "latching." *Id.*  Judge Martini's construction of the term "latching" began with the claims.  Jalali

16   Decl., Ex. 2 at 43.  Judge Martini concluded that the term was used in a technical sense, and applied a

17   technical dictionary definition to assist in finding the ordinary meaning of the term.  Jalali Decl., Ex. 2

18   at 43-44.  Significantly, MOSAID's own expert agreed with the technical dictionary definition to which

19   Judge Martini looked to help ascertain the meaning of the term "latching" to a person of skill in the art.

20   Jalali Decl., Ex. 2 at 43; *see Phillips*, 415 F.3d at 1322 (indicating a preference for technical

21   dictionaries and treatises over general purpose dictionaries).  Ultimately, Judge Martini concluded that

22   "latching level shifter" should be construed as "a level shifter including a feedback loop that will

23   indefinitely retain at least one data  state in the absence of any new control signal to change the state."

24   Jalali Decl., Ex. 2 at 44; *compare with* Jalali Decl., Ex. 2 at 43 ("'[a] feedback loop used in a

25   symmetrical digital circuit (such as a flip-flop) to retain a state'") (quoting *Radio Shack Dictionary of*

26   *Electronics*, 5th ed. 1977).  Accordingly, Judge Martini did not inappropriately rely upon a general

27   purpose dictionary definition to arrive at a construction "entirely divorced" from the specification.

28   *Phillips*, 415 F.3d at 1321; *Translogic*, 404 F. Supp. 2d at 1255-1256 (denying reconsideration of claim

construction order where the analysis noted that "the specification is the single best guide to the meaning of a disputed term.") (quotations omitted).

As noted by the Federal Circuit, there is no rigid algorithm to claim construction, and the court may use the available tools in any order it chooses. *Phillips*, 415 F.3d at 1324 ("Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence.") Judge Martini invoked all of those tools to arrive at claim construction rulings consistent with the patent and as viewed by those skilled in the art. MOSAID has not, and cannot, establish that the claims would have been construed differently after the *Phillips* decision. It has therefore failed to carry its burden of showing that collateral estoppel would not apply to Judge Martini's rulings.

## III.   CONCLUSION

MOSAID arguing that Fifth Circuit law should govern this issue relies on an exception to the application of collateral estoppel in this case because, it argues, the Federal Circuit's decision in *Phillips* marked a change in the law of claim construction. As discussed above and recognized by the Federal Circuit, *Phillips* was only a clarification of the law of claim construction, not the "drastic change" required under Fifth Circuit law. Furthermore, Judge Martini's claim construction analysis did not deviate from *Phillips*. Accordingly, this Court should find that collateral estoppel applies and the joint motion to vacate should be denied.

Dated:  December 15, 2006

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By_____/s/_____
     Sean P. DeBruine

Attorneys for Amicus Curiae
PROMOS TECHNOLOGIES INC.

6007468