ROBERT E. FREITAS (State Bar No. 80948)
MICHAEL C. SPILLNER (State Bar No. 205785)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:    650-614-7400
Facsimile:    650-614-7401
E-mail:       rfreitas@orrick.com, mspillner@orrick.com

JONATHAN M. JAMES
CHRISTOPHER N. SCHULZ
DAVID M. LASPALUTO (State Bar No. 211276)
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue
Post Office Box 400
Phoenix, AZ 85001-0400
Telephone:    602-351-8000
Facsimile:    602-648-7000
E-mail:       jjames@perkinscoie.com,
              cschultz@perkinscoie.com,
              dlaspaluto@perkinscoie.com

Attorneys for *Amicus Curiae*
Micron Technology, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INFINEON TECHNOLOGIES NORTH AMERICA CORP., <br><br> Plaintiff, <br><br> v. <br><br> MOSAID TECHNOLOGIES, INC., <br><br> Defendant. | Case No.  C 02-5772 JF (RS) <br><br> **MICRON TECHNOLOGY, INC.'S REPLY MEMORANDUM IN RESPONSE TO THE COURT'S OCTOBER 23, 2006 ORDER** <br><br> Date:   February 2, 2007 <br> Time:   9:00 AM <br><br> The Honorable Jeremy Fogel |

**TABLE OF CONTENTS**

Page

I. MOSAID, NOT MICRON, BEARS THE BURDEN OF PROOF ................................... 2

II. APPLICABLE LAW ................................................................................................... 2

III. MOSAID DOES NOT ADDRESS THE RULINGS UNRELATED TO *PHILLIPS* ISSUES ......................................................................................................................... 3

IV. *PHILLIPS* DOES NOT PREVENT THE APPLICATION OF COLLATERAL ESTOPPEL ................................................................................................................... 4

    A. *Phillips* Was Not "Intervening." ................................................................... 4

    B. MOSAID Misunderstands *Phillips* ............................................................... 5

    C. MOSAID Does Not Show That Any "Change In Law" Was Material To Any Relevant Claim Construction ................................................................. 5

        1. MOSAID Analyzes Irrelevant Claim Constructions. ......................... 6

        2. Judge Martini's Constructions Of "Connected" and "Directly" Were Consistent With *Phillips* ........................................................ 7

        3. Judge Martini's "Latching" Construction Was Consistent With *Phillips* ................................................................................................ 8

    D. MOSAID Misdescribes The "Intervening Change In Law" Standards ........ 10

V. MOSAID DOES NOT ADDRESS JUDGE MARTINI'S SUMMARY JUDGMENT AND DAMAGES RULINGS ............................................................ 12

VI. MOSAID'S PREJUDICE ARGUMENT IS CONTRARY TO THE FUNDAMENTAL POLICIES OF COLLATERAL ESTOPPEL ................................ 12

VII. CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page

## CASES

*Agfa Corp.* v. *Creo Prods., Inc.*,
   451 F.3d 1366 (Fed. Cir. 2006).................................................................................................8

*Artukovic* v. *INS*,
   693 F.2d 894 (9th Cir. 1982) ..................................................................................................11

*Atofina* v. *Great Lakes Chem. Corp.*,
   441 F.3d 991 (Fed. Cir. 2006)..................................................................................................5

*Blonder-Tongue Lab.* v. *University of Illinois Found.*,
   402 U.S. 313 (1971) ......................................................................................................... 10, 13

*Continental T.V., Inc.* v. *GTE Sylvania Inc.*,
   433 U.S. 36 (1977) ..................................................................................................................11

*Copeland* v. *Merrill Lynch & Co.*,
   47 F.3d 1415 (5th Cir. 1995) ..................................................................................................11

*Dilley* v. *Gunn*,
   64 F.3d 1365 (9th Cir. 1995) ....................................................................................................2

*Disimone* v. *Browner*,
   121 F.3d 1262 (9th Cir. 1997) ..................................................................................................4

*EEOC* v. *American Airlines, Inc.*,
   48 F.3d 164 (5th Cir. 1995) ..................................................................................................3, 5

*Ernest W. Hahn, Inc.* v. *Codding*,
   1981 WL. 2191 (N.D. Cal. 1981).........................................................................................4, 6

*Exhibitors Poster Exch., Inc.* v. *National Screen Serv. Corp.*,
   517 F.2d 110 (5th Cir. 1975) ....................................................................................................3

*Free Motion Fitness, Inc.* v. *Cybex Int'l, Inc.*,
   423 F.3d 1343 (Fed. Cir. 2005).................................................................................................5

*Hartley* v. *Mentor Corp.*,
   869 F.2d 1469 (Fed. Cir. 1989).................................................................................................4

*Kerotest Mfg. Co.* v. *C-O-Two Co.*,
   342 U.S. 180 (1952) ................................................................................................................13

*Lindsey* v. *Prive Corp.*,
   161 F.3d 886 (5th Cir. 1998) ..................................................................................................10

*Meador* v. *Oryx Energy Co.*,
   87 F. Supp. 2d 658 (E.D. Tex. 2000) ............................................................................... 10, 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Mendelovitz* v. *Adolph Coors Co.*,
    693 F.2d 570 (5th Cir. 1982) ................................................................................................. 11

*Montana* v. *United States*,
    440 U.S. 147 (1979) .............................................................................................................. 12

*Mycogen Plant Sci., Inc.* v. *Monsanto Co.*,
    252 F.3d 1306 (Fed. Cir. 2001), *vacated on other grounds*, 535 U.S. 1109 (2002) ................. 6

*Ormco Corp.* v. *Align Tech., Inc.*,
    463 F.3d 1299, 1306 & nn. 5, 6 (Fed. Cir. 2006) .................................................................... 8

*Parklane Hosiery Co.* v. *Shore*,
    439 U.S. 322 (1979) .............................................................................................................. 10

*Petro-Hunt LLC* v. *United States*,
    365 F.3d 398 (5th Cir. 2004) ................................................................................................. 11

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12

*Segal* v. *American Tel. &Tel. Co.*,
    606 F.2d 842 (9th Cir. 1978) ................................................................................................. 11

*Steen* v. *John Hancock Mut. Life Ins. Co.*,
    106 F.3d 904 (9th Cir. 1997) ................................................................................................. 12

*Texas Digital Sys., Inc.* v. *Telegenix, Inc.*,
    308 F.3d 1193 ( Fed. Cir. 2002) ............................................................................................ 1, 7

*U.S. Bancorp Mort. Co.* v. *Bonner Mall*,
    513 U.S. 18 (1994) .................................................................................................................. 2

*United States* v. *Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ............................................................................................. 10, 11

**RULES**

Fed. R. Civ. P. 54(b) .................................................................................................................. 1, 5

     MOSAID makes no attempt to establish that the elements of collateral estoppel are not satisfied by Judge Martini's claim construction and summary judgment rulings. MOSAID offers no reason to doubt that the vast majority of Judge Martini's rulings, which present no *Phillips* issues, are entitled to collateral estoppel effect. These failings make it clear that vacatur of the *Markman* order and the summary judgment order in their entirety is not appropriate, and the "intervening change in law" argument MOSAID makes is not sufficient to carry its burden to establish that vacatur of any aspect of Judge Martini's thorough rulings is in order.

- MOSAID ignores the fact that any change in the law was not "intervening." The Federal Circuit issued its decision in *Phillips* v. *AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) before the completion of district court proceedings, indeed, before MOSAID sought the entry of judgment pursuant to Rule 54(b). MOSAID could have argued *Phillips* on reconsideration to this Court or Judge Martini, and it could have prosecuted an appeal on any *Philips* issues to completion. The fundamental premise of MOSAID's brief — that it did not have "a 'full and fair opportunity to litigate' the construction of the patent claims under the proper *Phillips* standard," MOSAID Br. at 11 — is simply not true.

- MOSAID misdescribes *Phillips*, which plainly did not prohibit the use of dictionaries or prescribe any particular sequence for using dictionaries. *Phillips* did not represent a "significant change in the legal climate" sufficient to justify an exception to collateral estoppel.

- MOSAID fails to show that any change in law occasioned by *Phillips* is material to any relevant ruling by Judge Martini. MOSAID's "materiality" argument amounts to a recitation of the number of times Judge Martini used a dictionary, and the number of times he cited *Texas Digital Systems, Inc.* v. *Telegenix, Inc.*, 308 F.3d 1193 ( Fed. Cir. 2002). MOSAID Br. at 5-7. This analysis is fundamentally inadequate and it is misleading on many levels. MOSAID's dictionary and citation counts are based largely on claim constructions involving patents that are not being asserted against Micron and rulings in MOSAID's favor. Rulings favoring MOSAID cannot be relevant to the collateral estoppel analysis because MOSAID is not entitled to use "offensive" collateral estoppel against defendants who were not parties to the prior proceedings. MOSAID argues that Judge Martini used "no fewer than eight dictionaries" to

construe the claims, MOSAID Br. at 5, but the single relevant instance of dictionary usage was entirely consistent with *Phillips*.

- MOSAID does not address Judge Martini's rulings on summary judgment and damages, which are also entitled to collateral estoppel effect. The "intervening change in law" exception does not prevent application of collateral estoppel to those rulings because it does not apply to questions of fact.

- MOSAID argues that Micron would not be prejudiced by having to relitigate the claim construction issues. MOSAID Br. at 11. MOSAID misunderstands the basic purposes of collateral estoppel: finality and efficiency. Having to relitigate issues that have already been fully litigated and decided is the very type of prejudice that collateral estoppel is intended to avoid.

For all of these reasons, discussed more fully below, MOSAID's motion to vacate should be denied.

**I.     MOSAID, NOT MICRON, BEARS THE BURDEN OF PROOF.**

As a preliminary matter, MOSAID misstates the burden of proof. MOSAID argues that Micron bears the burden of proving the elements of collateral estoppel apply. MOSAID Br. at 8. MOSAID forgets the context in which the issues are presented.

MOSAID has the burden to show that vacatur is appropriate. *U.S. Bancorp Mort. Co*. v. *Bonner Mall*, 513 U.S. 18, 26 (1994). "It is [MOSAID's] burden, as the party seeking relief from the status quo of the [Infineon] judgment, to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." *Id.  See also Dilley* v. *Gunn*, 64 F.3d 1365, 1371 (9th Cir. 1995) (citing *U.S. Bancorp* burden standard). As Micron observed in its opening memorandum, if vacatur turns on the application of collateral estoppel, MOSAID bears the burden of proving that collateral estoppel does *not* apply. Micron Br. at 12. MOSAID cannot avoid its burden by redefining the issue before the Court.

**II.    APPLICABLE LAW.**

MOSAID expresses uncertainty about whether this Court should apply the law of the Ninth Circuit or the Fifth Circuit in its disposition of the motion to vacate. MOSAID Br. at 8-9 (acknowledging that Ninth Circuit law governs the motion to vacate, but suggesting that Fifth

1   Circuit law governs the collateral estoppel analysis, and ultimately applying the law of both
2   circuits).  Micron submits that although collateral estoppel obtains under either circuit's law,
3   Ninth Circuit law should govern this Court's analysis from start to finish.

4   The only matter before the Court is a motion to vacate filed in this district, and the parties
5   agree that Ninth Circuit law governs the motion to vacate.  Fifth Circuit law will apply if a
6   collateral estoppel inquiry is made in *MOSAID* v. *Micron*, but that has not yet occurred.  Micron
7   offers this clarification not because it makes a difference, but because it helps highlight what is at
8   issue:  a motion to vacate filed in a district court in the Ninth Circuit, not a motion for collateral
9   estoppel in a district court in the Fifth Circuit.

10  As Micron has noted, another reason why Fifth Circuit law should not be applied is that
11  the motion to vacate implicates interests beyond those at issue in *MOSAID* v. *Micron*.  Micron Br.
12  at 11 n.4.  MOSAID has sued a number of DRAM manufacturers on the same patents, in actions
13  that have spread across California, New Jersey, and Texas.  It is entirely possible that a future
14  MOSAID opponent, in a different jurisdiction, will seek to give collateral estoppel effect to Judge
15  Martini's rulings.  There is no reason for the Court to limit its collateral estoppel inquiry to Fifth
16  Circuit law, but the application of Fifth Circuit law would not make a difference.

17  As the opening brief of ProMOS Technologies demonstrates, Fifth Circuit law would not
18  change the result of the basic collateral estoppel inquiry.  Moreover, under Fifth Circuit law, like
19  Ninth Circuit law, any change in the law must be both "intervening" and material.  *EEOC* v.
20  *American Airlines, Inc.*, 48 F.3d 164, 170 (5th Cir. 1995); *Exhibitors Poster Exch., Inc.* v.
21  *National Screen Serv. Corp.*, 517 F.2d 110, 116 (5th Cir. 1975).  *Phillips* is neither.

22  **III.   MOSAID DOES NOT ADDRESS THE RULINGS UNRELATED TO *PHILLIPS*
23         ISSUES.**

24  Micron identified the numerous distinct claim construction and summary judgment rulings
25  individually entitled to collateral estoppel effect in its opening memorandum.  Micron Br. at 12-
26  14 (claim construction); *id*. at 20-21 (non-infringement); *id*. at 23 (damages).  Micron further
27  explained that four of the seven claim construction rulings in Infineon's favor were made without
28  reference to any dictionaries, and that, as a result, any "change in law" occasioned by *Phillips*

1  concerning the proper role of dictionaries indisputably could not be material.  Micron Br. at 8

2  (citing "double bootstrapping," "switching circuit alternately connecting," "switching circuit . . .

3  alternating the level," and "switching means" claim construction rulings).

4      MOSAID says nothing about the elements of collateral estoppel and its change in law

5  argument does not address in any way the claim constructions that did not involve the use of a

6  dictionary.  MOSAID argues only that collateral estoppel should not apply to the "*Texas Digital*-

7  based" rulings.  MOSAID Br. at 11 (title of Part III.D).  That argument cannot avoid the

8  application of collateral estoppel to rulings that are not "*Texas Digital*-based."

9  **IV.**     **_PHILLIPS_ DOES NOT PREVENT THE APPLICATION OF COLLATERAL**
10        **ESTOPPEL.**

11      **A.**     ***Phillips*** **Was Not "Intervening."**

12      A "change in law" that takes place before completion of the original district court

13  proceedings does not justify an exception to collateral estoppel.  Micron Br. at 4-5.  In such a

14  case, the purportedly aggrieved party has an opportunity to litigate under the new legal standard,

15  in the district court, or on appeal.  *Hartley* v. *Mentor Corp.*, 869 F.2d 1469, 1474 (Fed. Cir. 1989)

16  (allegedly intervening decision "was handed down more than a month before the stipulated

17  judgment was entered," and the district judge "was not asked to vacate his ruling or even

18  reconsider it in view of the [new decision]"); *Disimone* v. *Browner*, 121 F.3d 1262 (9th Cir.

19  1997) ("The fact that [EPA] chose not to [seek further review] not render the former case

20  inappropriate for application of collateral estoppel.  To hold otherwise would mean that any final

21  order would lose preclusive effect if the losing party failed to appeal or seek further review and

22  the exception would swallow the rule."); *Ernest W. Hahn, Inc.* v. *Codding*, 1981 WL 2191, *2

23  (N.D. Cal. 1981) ("Significantly, that opinion was rendered almost two years before the Court of

24  Appeals decision, and was called to the attention of the panel.  Thus, it hardly qualifies as an

25  'intervening' change in the law.").

26      MOSAID attempts to brush aside the fact that *Phillips* was decided before the entry of

27  judgment in the district court, and it barely mentions the facts spelled out on page 5 of Micron's

28  opening memorandum.  To reiterate, *Phillips* was decided a month before MOSAID sought entry

1   of judgment pursuant to Rule 54(b), three months before this Court granted MOSAID's Rule
2   54(b) motion, four months before MOSAID noticed its appeal from Judge Martini's rulings, six
3   months before this Court entered judgment, nine months before MOSAID filed an appellate brief
4   in which it barely discussed *Phillips*, and nearly a year before MOSAID abandoned its appeal. At
5   any point before any of these events MOSAID could have brought *Phillips* to someone's
6   attention, either by seeking reconsideration, or by prosecuting its appeal to completion.
7   MOSAID's contention that it did not have a full and fair opportunity to litigate under *Phillips*,
8   MOSAID Br. at 11, is not true. That any relevant *Phillips* issues were not litigated to decision
9   was a matter of choice, not circumstance.

### B.  MOSAID Misunderstands *Phillips.*

MOSAID relies on a mistaken understanding of *Phillips*. MOSAID contends that under *Phillips*, "intrinsic evidence should always be considered first." MOSAID Br. at 7. That is not what *Phillips* says. To the contrary, *Phillips* explicitly states there is no required sequence for the consideration of intrinsic and extrinsic evidence. *Phillips*, 415 F.3d at 1324 ("Nor is the court . . . required to analyze sources in any specific sequence . . . . The sequence of steps used by the judge in consulting various sources is not important. . . . In *Vitronics*, we did not attempt to provide a rigid algorithm for claim construction . . . [and] [t]oday, we adhere to that approach.").

MOSAID's repeated references to Judge Martini's consultation of dictionaries suggest MOSAID believes that *Phillips* forbids the use of dictionaries, but that is also not correct. *Phillips* and post-*Phillips* cases approve of the use of dictionaries in the manner in which Judge Martini used them. *Id.* at 1322; *Atofina* v. *Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006); *Free Motion Fitness, Inc.* v. *Cybex Int'l, Inc.*, 423 F.3d 1343, 1348-49 (Fed. Cir. 2005).

### C.  MOSAID Does Not Show That Any "Change In Law" Was Material To Any Relevant Claim Construction.

A "change in law" is not sufficient to avoid the application of collateral estoppel unless the change is material. *See, e.g.*, *EEOC* v. *American Airlines, Inc.*, 48 F.3d 164, 170 (5th Cir. 1995) ("Because *Criswell* changed no controlling legal principles relied upon by the court in

*Murnane*, there is no reason to deprive the *Murnane* determinations of their preclusive effect here."); *Ernest W. Hahn*, 1981 WL 2191, at *2 ("Even were these claimed legal changes capable of subjecting final judgments to reconsideration, however, they would not affect the decisions in this case, as any such changes were irrelevant to the results reached."). MOSAID fails to demonstrate the materiality of any aspect of *Phillips*.

### 1. MOSAID Analyzes Irrelevant Claim Constructions.

MOSAID's argument is based in part on claim constructions on which MOSAID prevailed, but collateral estoppel cannot be applied offensively to rulings in MOSAID's favor. Micron Br. at 8 n.3. Only rulings in Infineon's favor are relevant to the collateral estoppel analysis.

In the chart on page 6 and elsewhere in its brief, MOSAID mentions only six claim terms:

- "directly"
- "connected/coupled"
- "latching level shifter"
- "level shifter with latching"
- "correct level (required to turn on a selected memory cell access transistor)"
- "word line driver circuit"

Two of these phrases — "correct level (required to turn on a selected memory cell access transistor)" and "word line driver circuit" — were construed in MOSAID's favor, and thus are irrelevant. The other four phrases were construed in Infineon's favor.

The phrases "directly" and "connected/coupled" were construed in the '602 patent, which is not being asserted against Micron. *Compare* RJN Ex. C at 29-36 (Markman Op., discussion of "directly" and "connected/coupled") *with* Ex. S (First Am. Compl. in *MOSAID* v. *Micron*: '602 patent not asserted). To Micron's knowledge, these claim terms are not being asserted against Micron in any related patent. However, if these terms appear in claims in other patents asserted against Micron, or in claims asserted against others, collateral estoppel would apply. *See, e.g.*, *Mycogen Plant Sci., Inc.* v. *Monsanto Co.*, 252 F.3d 1306, 1311 (Fed. Cir. 2001), *vacated on other grounds*, 535 U.S. 1109 (2002). Of the thirteen claim constructions in

1  Infineon's favor Micron specifically identified as "identical issues" for collateral estoppel
2  purposes, *see* Micron Br. at 13-14, MOSAID discusses only "latching level shifter" and "level
3  shifter with latching."

4      MOSAID's argument that "Judge Martini cited to *Texas Digital* <u>eight</u> times and its
5  progeny, *Brookhill-Wilk*, <u>seven</u> times," MOSAID Br. at 5 (emphasis in original), is misleading
6  because *Texas Digital* was cited only once to construe a specific claim term, and that claim
7  construction was a construction in MOSAID's favor. RJN Ex. C at 41 ("word line driver
8  circuit"). Judge Martini never cited *Brookhill-Wilk* in connection with the construction of any
9  specific claim term.[1]

### 2.   Judge Martini's Constructions Of "Connected" and "Directly" Were Consistent With *Phillips*.

12      Although MOSAID's discussion of "connected" and "directly" may not be relevant to
13  *MOSAID* v. *Micron*, Judge Martini's constructions of those terms were entirely consistent with
14  *Phillips*, and collateral estoppel will apply if these terms are asserted in future litigation.

15      In *Phillips*, the court explained that some claim terms have commonly understood
16  meanings, such that it is appropriate to consult a general purpose dictionary as part of the claim
17  construction process:

18          In some cases, the ordinary meaning of claim language as
        understood by a person of skill in the art may be readily apparent

---

[1] MOSAID also asserts that Judge Martini made reference to eight dictionaries. Putting aside *Phillips's* approval of the use of dictionaries, only one of the eight dictionaries was used in the construction of a claim term among the thirteen cited in Micron's opening memorandum.

    Three of the dictionaries were used to construe terms solely in MOSAID's favor. RJN Ex. C, at 18, 40, 47 (IEEE to construe "word line driver circuit," "DC voltage supply," and "Vdd"); *id*. at 56 (American Heritage to construe "correct level"); *id*. at 56 (Webster's 9th New Coll. to construe "correct level . . ."). Three of the dictionaries were used to construe "directly" and "connected/coupled" from the '602 patent that is not being asserted against Micron. *Id*. at 30 (Webster's New World and Webster's Third New Int'l to construe "directly"); *id*. at 33 (Oxford English and Webster's Third New Int'l to construe "connected/coupled"). One of the dictionaries was used solely to construe "connected/coupled" and a term in MOSAID's favor. *Id*. at 33, 56 (Random House to construe "connected/coupled" and "correct level"). The remaining dictionary, the Radio Shack technical dictionary, was used to construe both an irrelevant term ("Vdd" in MOSAID's favor, *id*. at 17-18), and "latching level shifter." *Id*. at 43.

> even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful.

*Phillips*, 415 F.3d at 1314 (citation omitted). For example, post-*Phillips* cases have held that the use of general purpose dictionaries in the constructions of "geometry" and "stack" was consistent with *Phillips*. *Ormco Corp.* v. *Align Tech., Inc.*, 463 F.3d 1299, 1306 & nn. 5, 6 (Fed. Cir. 2006) (use of Webster's and Random House dictionaries in the construction of "geometry"); *Agfa Corp.* v. *Creo Prods., Inc.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006) (affirming district court's decision to begin its claim construction of "stack" by reference to a general purpose dictionary; "[t]his case falls squarely within those guidelines from *Phillips*.").

Judge Martini's constructions of "directly" and "connected" were in line with *Phillips*, *Ormco*, and *Agfa*. To construe "directly," Judge Martini first looked at the claim language, and held that, "[b]ased on that clear language, the word 'directly' and its context demonstrate that there simply is no room for intervening circuitry." RJN Ex. C, at 30. Judge Martini observed that "MOSAID's construction would not only read the word 'directly' out of the claim, but the words 'to' and 'through' as well." *Id.* Judge Martini then appropriately consulted Webster's, a general purpose dictionary, to support this obvious meaning. *Id.* Similarly, Judge Martini used general purpose dictionaries — Webster's, Oxford English, and Random House — in the construction of "connected," another term whose meaning is readily apparent. *Id.* at 32-33. Judge Martini proceeded to analyze the intrinsic evidence in great detail, including the language of the claims and the specification, and concluded that MOSAID's proposed definition would render the plain claim language meaningless. *Id.* at 33-36.

### 3. Judge Martini's "Latching" Construction Was Consistent With *Phillips*.

The only claim constructions MOSAID attempts to show would have been materially different in light of *Phillips* are those of "latching level shifter" and "level shifter with latching." MOSAID Br. at 6-7. MOSAID has failed to meet its burden of showing materiality as to all other claim constructions.

With respect to "latching," MOSAID argues that, "Had *Phillips* been the law, Judge Martini presumably would have recognized (1) that intrinsic evidence is the most important evidence of the meaning of a term, (2) that intrinsic evidence should always be considered first, (3) that here, even the claims themselves elaborate on the meaning of the term" level shifter with latching" . . . and (4) that extrinsic evidence such as dictionaries are given no presumption of correctness over the claims, specification or prosecution history." MOSAID Br. at 7. This is hardly an apt description of *Phillips* or the proceedings before Judge Martini.

As discussed above, *Phillips* did not hold that "intrinsic evidence should always be considered first." District courts are not required to analyze evidence in any particular sequence. *See* Part IV.B *supra*.

MOSAID is also not faithful to Judge Martini's claim construction analysis. Judge Martini did not ignore the claim language, or give dictionary definitions a "presumption of correctness over the claims, specification or prosecution history." MOSAID Br. at 7. MOSAID argues that "in construing the term 'latching level shifter,' the court began "by trying to determine the ordinary meaning of the claim language.'" *Id.* at 6. That is true, but "ordinary meaning" does not necessarily (and does not in this case) mean the "dictionary meaning." The "ordinary meaning" of a claim term is "its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. This is precisely what Judge Martini sought to determine in his construction of the terms.

Judge Martini began by consulting the claim language and determined that the terms "latching" and "latch" were being used in a technical sense. RJN Ex. C (Markman Op.) at 43. He then consulted a technical dictionary, as well as expert testimony, and concluded that the ordinary meaning was the meaning given by **MOSAID's expert**. *Id.* at 44 ("MOSAID's own expert submitted an expert report in support of its claim construction that states: 'Generally, a 'latch' is understood to refer to a circuit that retains its output state in the absence of inputs.' (Greene Expert Report at ¶ 18). Consequently, the ordinary meaning of 'latching' means 'retaining an output state in the absence of inputs.'"). *See also* RJN Ex. H (SJ Op.) at 13 n.8 ("In response to Mosaid's argument that this construction of 'latching' is technically without merit,

the Court refers Mosaid to its own expert's report where, by its submission, Mosaid represented the same to this Court. . . . Not surprisingly, Mosaid has chosen not to address this report and its pithy explanation of what a 'latch' means."). The court then further analyzed the specification in detail (particularly Figure 1), and concluded that even if MOSAID's proposed construction were plausible, "the patentee acted as her own lexicographer and broadened the meaning so that it only required one output state to be retained based on Figure 1." RJN Ex. C (Markman Op.) at 30. Finally Judge Martini held that MOSAID's proposed construction "would strip the terms 'latching' and 'latch' of any meaning," based on the "NAND gate 5" from the specification. *Id.*

When one reviews Judge Martini's analysis, it is apparent that he engaged in nothing other than the proper use of the claim construction tools endorsed by *Phillips*. He did not elevate dictionary definitions to a preeminent place above the intrinsic evidence. Of the three pages spent in the analysis of "latch," Judge Martini devoted no more than two sentences to the dictionary definition. Because the Court ultimately adopted the definition proffered by MOSAID's expert, MOSAID cannot plausibly argue that Judge Martini's construction is not the correct "meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321.

### D. MOSAID Misdescribes The "Intervening Change In Law" Standards.

MOSAID suggests that any "change in law" is sufficient to defeat the application of collateral estoppel for "fairness" reasons. MOSAID Br. at 9-10. As Micron has explained, however, the only relevant changes are intervening, significant changes that make a difference. Micron Br. at 3-11; *see also* Parts IV.A - IV.C *supra*.

MOSAID relies on the notion that collateral estoppel is appropriate only if there is "no special circumstance that would render preclusion inappropriate or unfair," *United States* v. *Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), a concept that is not applicable in defensive collateral estoppel situations. *Lindsey* v. *Prive Corp.*, 161 F.3d 886, 891 n.2 (5th Cir. 1998) (citations omitted); *Meador* v. *Oryx Energy Co.*, 87 F. Supp. 2d 658, 664 n.2 (E.D. Tex. 2000).[2]

---

[2] In *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322 (1979), the Supreme Court discussed "several reasons. . . why the two situations [offensive and defensive collateral estoppel] should be treated differently." *Id.* at 329. *See also Blonder-Tongue Lab.* v. *University of Illinois Found.*, 402 U.S.
(footnote continued on next page)

In *Meador*, the court expressly distinguished two of the cases on which MOSAID relies, *Shanbaum* and *Copeland* v. *Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995), on this basis. Thus, *Shanbaum*, *Copeland*, *Petro-Hunt LLC* v. *United States*, 365 F.3d 398 (5th Cir. 2004), and *Mendelovitz* v. *Adolph Coors Co.*, 693 F.2d 570 (1982) — all offensive collateral estoppel cases — are not applicable here. MOSAID's Ninth Circuit cases, *Segal* v. *American Telephone & Telegraph Co.*, 606 F.2d 842, 845 (9th Cir. 1978) and *Artukovic* v. *Immigration & Naturalization Service*, 693 F.2d 894 (9th Cir. 1982), are inapplicable for the same reason.[3]

In addition, three of the Fifth Circuit discussions on which MOSAID relies are dicta. *Shanbaum* was a res judicata (claim preclusion) case. *Shanbaum*, 47 F.3d at 310-13. The court mentioned a standard for collateral estoppel, but the case did not involve collateral estoppel. In *Copeland* and *Petro-Hunt*, collateral estoppel did not apply because basic elements — identity of issues, actual litigation of the issues, and necessity in *Copeland*, and actual litigation in *Petro-Hunt* — were not satisfied. *Copeland*, 47 F.3d at 1422-23; *Petro-Hunt*, 365 F.3d at 398. In MOSAID's other Fifth Circuit case, *Mendelovitz*, the intervening legal development was not only "significant" — the change in *Continental T.V., Inc.* v. *GTE Sylvania Inc.*, 433 U.S. 36 (1977), from *per se* to rule of reason analysis — it was monumental, and occurred years after the first proceeding was completed. Unlike MOSAID, the aggrieved party did not have "a full and fair opportunity" to litigate the issue under the significantly changed legal standard. *Mendelovitz*, 693 F.2d at 579. MOSAID cites no case in which a non-intervening, non-material legal development was held sufficient to defeat collateral estoppel.

---

(footnote continued from previous page)
313, 329 (1971) (discussing defensive collateral estoppel in a patent case).

[3] By its use of underlining, MOSAID apparently cites *Segal* to suggest that the Ninth Circuit recognizes an "inequitable" exception to collateral estoppel, MOSAID Br. at 10, but the quoted passage is simply a verbatim statement of the Restatement's "intervening change in law" exception.

### V. MOSAID DOES NOT ADDRESS JUDGE MARTINI'S SUMMARY JUDGMENT AND DAMAGES RULINGS.

Micron explained in its opening memorandum that Judge Martini's summary judgment and damages rulings are also entitled to collateral estoppel effect. Micron Br. at 19-23. MOSAID does not dispute the basic elements of collateral estoppel, and does not discuss the summary judgment or damages rulings other than to confirm that Judge Martini's construction of "latching" was necessary to his summary judgment ruling of non-infringement. MOSAID Br. at 7 ("In its opinion and order on summary judgment . . . the court then found non-infringement of the three Lines patents based upon its construction of the term 'latching level shifter.'").

Other than its reference to the finding of non-infringement based on the "latching" construction, MOSAID does not argue that any change in law occasioned by *Phillips* is relevant to any other summary judgment rulings, and the "change in law" exception does not apply to mixed questions of fact and law, or to questions of fact. *Steen* v. *John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 913 (9th Cir. 1997); Restatement (2d) of Judgments § 28 (2) (exception applies when "[t]he issue is one of law").

### VI. MOSAID'S PREJUDICE ARGUMENT IS CONTRARY TO THE FUNDAMENTAL POLICIES OF COLLATERAL ESTOPPEL.

As a final observation, MOSAID argues that "there will be no real harm to Micron or ProMOS if the orders are vacated," because they "of course will have an opportunity to advance its [sic] proposed claim construction positions to the court, even those adopted by the New Jersey court." MOSAID Br. at 11. This is much like an argument that there is no real harm from a double jeopardy violation because the defendant could be acquitted a second time.

MOSAID's argument reflects a fundamental misunderstanding of collateral estoppel law. Telling Micron that it can reargue the claim construction rulings misses the point. There are fundamental public policies favoring finality, closure, and efficiency that weigh against the repeated relitigation of the same issues. *Montana* v. *United States*, 440 U.S. 147, 153-54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits,

1   conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility
2   of inconsistent decisions."); *Blonder-Tongue*, 402 U.S. at 329 ("Permitting repeated litigation of
3   the same issue as long as the supply of unrelated defendants holds out reflects either the aura of
4   the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts,
5   hardly a worthy or wise basis for fashioning rules of procedure.'") (quoting *Kerotest Mfg. Co.* v.
6   *C-O-Two Co.*, 342 U.S. 180, 185 (1952)). MOSAID does not appear to recognize that the interest
7   in finality prevails in substantial part because of the burden of relitigation.

Months after *Phillips* was decided, MOSAID acknowledged that it would only have "one bite at the apple," on appeal to the Federal Circuit, to address any errors in Judge Martini's claim construction rulings. *See* Micron's Second Request for Judicial Notice, Ex. A, at 4 n.4. The law of collateral estoppel, and the law of vacatur, prevent MOSAID from seeking another now.

## VII. CONCLUSION.

For the reasons set forth above, in Micron's opening memorandum filed December 1, 2006, and in Micron's original briefing on MOSAID's and Infineon's joint Motion to Vacate, Micron respectfully requests that the Motion to Vacate be denied.

Dated: December 15, 2006           Respectfully submitted,

                                   ROBERT E. FREITAS
                                   MICHAEL C. SPILLNER
                                   ORRICK, HERRINGTON & SUTCLIFFE LLP


                                            /s/ Robert E. Freitas /s/
                                   _____
                                            Robert E. Freitas
                                       Attorneys for *Amicus Curiae*
                                         Micron Technology, Inc.

Pursuant to General Order 45, Part X.B, I attest that concurrence in the filing of the document has been obtained from Robert E. Freitas, the signatory.

                                           /s/ Michael C. Spillner /s/
                                   _____
                                           Michael C. Spillner

OHS West:260141060.2